Steven P. Rice (State Bar No. 94321)
  srice@crowell.com
Kathleen Balderrama (State Bar No. 222022)
  kbalderrama@crowell.com
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, California  92614-8505
Telephone:  (949) 263-8400
Facsimile:  (949) 263-8414

Attorneys for Defendant-in-Intervention
EVEREST NATIONAL INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ASSOCIATION OF CALIFORNIA WATER AGENCIES JOINT POWERS INSURANCE AUTHORITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, et al., <br><br> Defendants. | Case No.  8:11-CV-01124-CJC (RNBx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT-IN-INTERVENTION EVEREST NATIONAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON COMPLAINTS-IN-INTERVENTION IN THEIR ENTIRETY OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS** <br><br> Honorable Cormac J. Carney <br><br> Complaint filed:  September 26, 2012 <br> Trial Date:      August 27, 2013 <br><br> Date:     July 8, 2013 <br> Time:     1:30 p.m. <br> Courtroom:  9B |
| AND RELATED THIRD-PARTY COMPLAINTS. | |

/ / /

/ / /

/ / /

/ / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

**TABLE OF CONTENTS**

Page

I.   SUMMARY OF ARGUMENT ........................................................ 1

II.  FACTUAL BACKGROUND ......................................................... 4

     A.   The Underlying Itani Litigation ........................................... 4

     B.   Everest First Learns Of The Itani Litigation Twenty Months
          After It Commenced ......................................................... 4

     C.   Settlement Of The Itani Litigation ..................................... 5

     D.   Concealment Of The Global Settlement .............................. 7

     E.   The Agreed-Upon Trial By Judicial Reference ................... 7

     F.   Post-Judgment Demands To Everest .................................. 9

     G.   Relevant Terms Of Everest's Policy ................................... 9

III. LEGAL STANDARD ................................................................. 10

IV.  EVEREST'S POLICY DOES NOT COVER PLAINTIFFS-IN-
     INTERVENTION'S CLAIMS .................................................... 11

     A.   Because The $39 Million In Underlying Coverage Has Not Been
          Exhausted, No Payment Is Due From Everest ................... 11

     B.   Plaintiffs Breached Their Obligations By Failing To Seek or
          Obtain Everest's Consent To The Settlement And Voluntary
          Payment ........................................................................ 12

          1.   YLWD Failed To Obtain Everest's Consent To The
               Settlement Of The Itani Litigation .............................. 12

          2.   YLWD Failed To Obtain Everest's Consent Before
               Making The $10 Million Payment .............................. 13

          3.   Everest Did Not Breach Any Duty To YLWD And Has
               Not Waived Its Consent Rights .................................. 14

     C.   Plaintiffs-In-Intervention's Suit Violates The No Action Clause ....... 15

          1.   Everest Did Not Agree To The Settlement Embodied In
               The Global Agreement ............................................... 16

          2.   The Purported Judgment Is Insufficient To Impose
               Liability On Everest Because The Judicial Reference
               Trial Was Not A Contested Proceeding ...................... 16

     D.   Everest Has No Duty To Indemnify YLWD Because YLWD Is
          Not, And Never Was, "Legally Obligated To Pay" The
          "Judgment." .................................................................... 20

V.   EVEREST ACTED AT ALL TIMES IN GOOD FAITH ................. 21

     A.   Everest Has Not Breached Its Good Faith Obligations Because
          The Underlying Coverage Is Not Yet Exhausted ............... 23

     B.   The Court's Grant Of Summary Judgment To ISOP Precludes
          Any Finding Of Bad Faith By Everest ............................... 24

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1

**TABLE OF CONTENTS**
**(continued)**

**Page**

C.     Because Everest Has Not Breached Any Contractual Obligation,
It Did Not Act In Bad Faith ................................................................. 24

VI.    CONCLUSION ................................................................................................. 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

ii

Case No. 8:11-CV-01124-CJC-RNBx

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aerojet-General Corp. v. Commercial Union Ins. Co.*,
  155 Cal. App. 4th 132 (2007)..............................................................................20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ............................10, 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................................10

*Chateau Chamberay Homeowners Ass'n v. Assoc'd Int'l Ins. Co.*,
  90 Cal. App. 4th 335 (2001)................................................................................25

*Cmty. Redev. Agency v. Aetna Cas. & Sur. Co.*,
  50 Cal. App. 4th 329 (1996)................................................................................11

*Crowley Maritime Corp. v. Fed. Ins. Co.*
  Nc. C 08-00830, 2008 WL 507118 (N.D. Cal. Dec. 1, 2008) ...........................15

*Dalrymple v. United Services Auto. Assn.*,
  40 Cal. App. 4th 497 (1995)................................................................................25

*Diamond Heights Homeowner's Ass'n v. Nat'l Am. Ins. Co.*,
  227 Cal. App. 3d 563 (1991).........................................................................14, 17

*Faust v. Travelers*,
  55 F.3d 471 (9th Cir. 1995).................................................................................12

*Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.G.*,
  3 Cal. 3d 434 (1970)............................................................................................14

*Guebara v. Allstate Ins. Co.*,
  237 F.3d 987 (9th Cir. 2001)...............................................................................25

*Iolab Corp. v. Seaboard Sur. Co.*,
  15 F.3d 1500 (9th Cir. 1994)...............................................................................11

*Jamestown Builders, Inc. v. Gen. Star Indem. Co.*,
  77 Cal. App. 4th 341 (1999).........................................................................12, 13

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Low v. Golden Eagle Ins. Co.*,
110 Cal. App. 4th 1532 (2003)...................................................................................12

*Olympic Ins. Co. v. Emp'rs Surplus Lines Ins. Co.*,
126 Cal. App. 3d 593 (1981)......................................................................................11

*People ex rel. Dept. of Transport. v. Diversified Props. Co. III*,
14 Cal. App. 4th 429 (1993).......................................................................................19

*Pruyn v. Agric. Ins. Co.*,
36 Cal. App. 4th 500 (1995)........................................................................13, 15, 17

*Qualcomm, Inc. v. Certain Underwriters at Lloyds, London*,
161 Cal. App. 4th 184 (2008).....................................................................................20

*Republic W. Ins. Co. v. Fireman's Fund Ins. Co.*,
241 F. Supp. 2d 1090 (N.D. Cal. 2003)....................................................................15

*Roth v. Madison Nat'l Life Ins. Co.*,
702 F. Supp. 2d 1174 (C.D. Cal. 2010).....................................................................11

*Safeco Ins. Co. of Am. v. Certain Underwriters at Lloyds, London*,
No. BC378080, 2011 WL 1796529 (Cal. App. May 11, 2011).................................14

*Samson v. Transamerica Ins. Co.*,
30 Cal. 3d 220 (1981).................................................................................................22

*Sanchez v. Truck Ins. Exch.*,
21 Cal. App. 4th 1778 (1994).....................................................................................17

*Ticor Title Ins. Co. v. Emp'rs Ins. of Wausau*,
40 Cal. App. 4th 1699 (1995).....................................................................................15

*Waller v. Truck Ins. Exch., Inc.*,
11 Cal. 4th 1 (1995)...............................................................................................23, 25

*Wright v. Fireman's Fund Ins. Cos.*,
11 Cal. App. 4th 998 (1992)........................................................................16, 17, 19, 20

/ / /

/ / /

/ / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

iv                                                    Case No. 8:11-CV-01124-CJC-RNBx

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

1

**STATUTES**

2

California Code of Civil Procedure section 638.....................................................6

California Insurance Code section 11580.................................................9, 15, 16, 17

Fed. R. Civ. P. 56...................................................................................................10

3

4

5

6  / / /

7  / / /

8  / / /

9  / / /

10  / / /

11  / / /

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

v                                    Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

This Memorandum of Points and Authorities is submitted by Defendant-in-Intervention Everest National Insurance Company ("Everest"), a third level excess insurer, in support of its motion for summary judgment on the four Complaints-in-Intervention against Everest in their entirety, or in the alternative, for partial summary judgment on the bad faith claims.

## I.      SUMMARY OF ARGUMENT

This case presents familiar and simple contract issues in a complicated factual situation. This action was sparked by a wildfire in November 2008, which burned down numerous homes in Yorba Linda, California. During the fire, hydrants in an area known as Upper Hidden Hills allegedly ran dry, impeding firefighters' efforts to control the blaze. The homeowners and their subrogated insurers sued YLWD in Orange County Superior Court.

The parties settled that lawsuit on May 18, 2012 through an unusual arrangement described in a document titled "Global Agreement." In this settlement, YLWD agreed to pay $10 million in "seed money" to the plaintiffs and assigned to the plaintiffs its rights against two of its insurers, the Insurance Company of the State of Pennsylvania ("ISOP") and Lexington Insurance Company ("Lexington"). Despite the lack of any remaining controversy between them, the parties agreed to try the plaintiffs' claims against YLWD using an extremely abbreviated and uncontested judicial reference procedure, waiving their rights to: (a) appeal any adverse judgment, (b) trial by jury, (c) present live witnesses, and (d) cross-examination. The plaintiffs gave YLWD a "covenant not to execute" any judgment against YLWD, thereby limiting its liability to the $10 million payment. The parties agreed to "allocate" the payments they expected to receive from the coverage action such that YLWD would not recover the full amount of its "seed money" payment unless the plaintiffs obtained a judgment <u>against YLWD</u>.

In June 2012, the parties held the uncontested, non-adversarial judicial reference trial, complying with the abbreviated procedures to which they had

agreed.   During the trial, YLWD made numerous gratuitous concessions not required by the Global Agreement.   YLWD stipulated to many items of claimed damages, failed to challenge the plaintiffs' requests for an excessive rate of pre-judgment interest, and failed to object to plaintiffs' counsel's requests for an attorneys' fees award of up to 30-40 percent of the sum of economic damages and pre-judgment interest (resulting in hourly rates of up to $2,100).   The parties failed to hire a court reporter and, consequently, made no record of the proceedings, even though the parties intended to attempt to enforce the result of the trial against YLWD's insurers, including Everest.

A purported judgment was issued in the judicial reference trial on July 13, 2012, including a total award of approximately $69 million.   The parties then demanded that YLWD's insurers, including Everest, pay this judgment, but failed to disclose the Global Agreement or describe the unusual and abbreviated trial provisions they utilized.   In this coverage action, the plaintiffs in the underlying litigation attempt to assert direct action claims against YLWD's insurance carriers, including Everest, seeking payment of the inflated amount of the purported judgment.   The policyholders, YLWD and ACWA-JPIA, have not sued Everest.

Everest has no obligation to make any payments on its policy for at least the following reasons:

*First*, a condition precedent to Everest's liability is not satisfied.   As an excess insurer, Everest's indemnification obligations do not attach until after ISOP and Lexington have exhausted the full amounts of their underlying policies—$39 million—which has not yet occurred.

*Second*, Everest's insureds breached their obligations under the insurance contract, relieving Everest of its indemnification obligation.   The insureds are obligated to obtain Everest's consent before settling the claims against YLWD, or making any voluntary payments related to claims against YLWD.   They ignored both of these obligations, settling plaintiffs' claims against YLWD as described in

CROWELL
& MORING LLP
ATTORNEYS AT LAW

2                          Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

the Global Agreement, and paying $10 million in "seed money," without Everest's knowledge or consent.  Everest did not breach any contractual obligation to its insureds before these breaches, as YLWD has conceded during discovery in this case.  Consequently, Everest is relieved from any obligations under the policy.

*Third*, this suit breaches the policy's No Action clause, which only permits suits against Everest by a claimant following an "agreed settlement" (which did not exist) or a "judgment" after a contested trial.  The purported judicial reference trial was not a contested, adversarial proceeding because YLWD's liability to plaintiffs was already fixed at $10 million before the trial.  Consequently, the resulting judgment, which was solely aimed to attempt to capture insurance, is not binding on Everest.

*Fourth*, the insurance contract's plain language obligates Everest to pay only the amount that YLWD is "legally obligated to pay," if it exceeds the $39 million limits of ISOP and Lexington's policies.  Because YLWD's liability is fixed at $10 million and the underlying plaintiffs gave YLWD a covenant not to execute, YLWD will never face a legal obligation to pay any amount that would reach Everest's policy limits.

Everest is entitled to summary judgment on all claims against it on each of these separate and independent grounds.  Alternatively, Everest is entitled to summary judgment on the bad faith claims because it acted reasonably and in good faith at all times.  For example, Everest's insured admitted that it stayed "on top of its file" in connection with the case and that Everest did not owe and has not breached any duty to defend or accept a reasonable settlement.  Further, and in any event, Everest is entitled to summary judgment on the bad faith claims because its decision not to indemnify YLWD is reasonable and in good faith: (1) no exhaustion of the $39 million in underlying limits beneath Everest's policy has yet occurred; (2) this Court's prior ruling that a "reasonable dispute" regarding the application of an inverse condemnation exclusion precluded a finding of bad faith against ISOP

CROWELL
& MORING LLP
ATTORNEYS AT LAW

3                          Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

applies with equal force to Everest; and (3) the coverage issues discussed above establish, at a minimum, a good faith dispute over the existence of coverage.

## II.    FACTUAL BACKGROUND

Everest issued a Commercial Excess Liability Policy to ACWA-JPIA and its member, YLWD, for the period October 1, 2008 to October 1, 2009 ("Policy"). (Everest's Separate Statement of Uncontroverted Facts ("UF"), 1.)   The Policy provided third layer excess coverage with limits of $10,000,000 excess of: (a) ACWA-JPIA's $1,000,000 self-insured retention provided pursuant to a Memorandum of Liability Coverage ("MOLC"); (b) ISOP's $19 million in first layer coverage; and (c) Lexington's $20 million in second layer excess coverage. (UF 1, 3.)

### A.    The Underlying *Itani* Litigation.

On November 15 and 16, 2008, the Freeway Complex Fire burned certain homes in a hilltop area of Yorba Linda known as Upper Hidden Hills.  (UF 4.)  In 2009, the owners of at least nineteen homes and their subrogated insurers sued YLWD, alleging that their homes were destroyed due to a lack of water.  (UF 5.) The plaintiffs asserted a variety of claims against YLWD including negligence, misrepresentation, and inverse condemnation and sought millions in damages for lost property.  (UF 5.)  The cases were consolidated (and are referred to as the *Itani* Litigation).   Linda Bauermeister of Barber & Bauermeister served as defense counsel for YLWD.  (UF 5, 6.)

### B.    Everest First Learns Of The *Itani* Litigation Twenty Months After It Commenced.

ACWA-JPIA tendered defense of the *Itani* Litigation to ISOP, but not to Everest.  (UF 7.)  Everest first learned of the *Itani* Litigation twenty months after the lawsuits were first filed, on approximately February 18, 2011, when ACWA-JPIA's general counsel first sent Everest a notice letter. (UF 10.)  Everest responded

CROWELL & MORING LLP
ATTORNEYS AT LAW

4                                    Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

promptly with a written acknowledgment letter dated February 25, 2011.  (UF 12.)  In addition, Everest's claims representative, Michael Haliskoe, called Ms. Bauermeister by telephone to discuss the case.  (UF 13.)  Mr. Haliskoe provided his contact information and requested written status reports about the litigation, which Ms. Bauermeister then provided to him on a periodic, although, as it later developed, materially incomplete, basis.  (UF 13.)

ISOP and Lexington disclaimed potential coverage, including any duty to defend, based on, *inter alia*, the MOLC's exclusion for inverse condemnation claims.  (UF 8.)  On or about June 27, 2011, ACWA-JPIA filed the present coverage action in this Court against ISOP.  (UF 8.)  Neither ACWA-JPIA nor YLWD have sued Everest in this action regarding the *Itani* Litigation.  (UF 42.)  Indeed, Ms. Bauermeister admitted that Everest's adjuster, Mr. Haliskoe, contacted her, and she did not identify any deficiency in his handling of the matter.  To the contrary, she testified that Everest's adjuster "stayed on top of his file."  (UF 14.)

## C.   Settlement Of The *Itani* Litigation.

On May 18, 2012, YLWD, ACWA-JPIA, and the plaintiffs settled all of the claims that remained at that time against YLWD through a Global Agreement.  (UF 18.)   YLWD did not disclose this settlement to Everest at the time, much less request its consent.   (UF 23.)   The Global Agreement summarized the circumstances that led to the settlement as follows:

> "Having no defense by, or indemnification from the Water District's excess insurers, ISOP and Lexington, and having already incurred, and continuing to incur significant (over $1,000,000[)] legal expenses above and beyond ACWA JPIA's $1 million pooled self-insurance limits defending itself, YLWD was forced to try to negotiate the best possible settlement consistent with its interests, including stipulated judgments by judicial reference with a covenant not to execute."

(UF 19.)   The Global Agreement describes itself as a "global settlement agreement" and a "settlement;" it does not mention Everest.  (UF 20, 22.)

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS

IRACTIVE-5854268.2

1    The material terms of the settlement embodied in the Global Agreement are:

2    a.    YLWD "funded" "the settlement" through a payment of "seed money"

3    to the "Plaintiff Group" in the amount of $10 million.  The Plaintiff Group included

4    all homeowners and subrogated insurers with claims on the nineteen homes at issue

5    in the *Itani* Litigation.  The payment was "with no contingency whatsoever" and

6    was "non-refundable."  (UF 21a.)

7    b.    YLWD assigned to the Plaintiff Group all of its rights against ISOP

8    and Lexington, except, inter alia, the right to recover the $10 million "seed money"

9    payment.  YLWD did not assign any rights against Everest.  (UF 21c.)

10    c.    The parties agreed to a judicial reference trial under California Code of

11    Civil Procedure section 638 to be held on an expedited basis, preferably before

12    Justice Trotter.   In connection with the judicial reference trial, the parties: (i)

13    waived their rights "to take exception to the Judicial Referee's statement of

14    decision," (ii) twice waived "any right to appeal," (iii) waived any right "to

15    challenge the statement of decision or any corresponding judgment," and (iv)

16    waived "any right to seek a new trial," except the parties could request correction of

17    "mathematical errors" but only "within the first three days after issuance of the

18    statement of decision."  The parties "agreed to no live witnesses."  (UF 21d.)

19    d.    The Plaintiff Group gave YLWD a covenant not to execute on any

20    judgment against it and agreed to limit any recovery on the judgment only to

21    YLWD's insurers.  (UF 21e.)

22    e.    The Plaintiff Group and YLWD agreed to a tiered formula to apportion

23    any recovery had in this action or other litigation against ISOP and Lexington.

24    Under this formula, YLWD could recover its $10 million seed money payment if,

25    inter alia, a judgment against YLWD was entered in the judicial reference trial and

26    the parties collected at least $20 million from the insurers.  (UF 21f.)

27    f.    The parties agreed not to disclose the Global Agreement to "any other

28    person, firm or entity" before the end of the insurance coverage action in this Court

CROWELL
& MORING LLP
ATTORNEYS AT LAW

6                          Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

1   except, inter alia, as an exhibit in this action.  (UF 21g.)

2          g.      The parties agreed to "Further Assurances" binding them to, inter alia,

3   "do the things reasonably necessary to effectuate . . . the related claims for

4   insurance benefits from ICSOP and Lexington, and the assigned rights mentioned

5   above."  (UF 21h.)

6          **D.     Concealment Of The Global Settlement.**

7          Even though Everest had requested status reports and communicated with

8   underlying defense counsel concerning other settlement issues, YLWD did not

9   notify Everest of the proposed settlement—much less request or obtain Everest's

10  consent—before entering into the Global Agreement or making the $10 million

11  seed money payment.   (UF  13, 23.)   Even after entering into the Global

12  Agreement, YLWD did not tell Everest about it.  (UF  23.)  This concealment was

13  consistent with the confidentiality provision in the Global Agreement.  (UF 21g.)

14  Everest was unaware of the Global Agreement and the $10 million payment until

15  discovery in the present coverage litigation.  (UF 23.)

16         **E.      The Agreed-Upon Trial By Judicial Reference.**

17         As contemplated by their settlement agreement, the parties to the *Itani*

18  Litigation held a judicial reference trial before Justice Trotter on June 15, 26, and

19  29, 2012. *See* Global Agreement; Judgment.  There were numerous irregularities in

20  the trial by reference.

21  • Before the trial, Ms. Bauermeister agreed that the $10 million "seed money"

22     payment would not be an offset to any judgment issued and, although the issue

23     was apparently submitted to Justice Trotter, Ms. Bauermeister did not argue for

24     an offset.  (UF 25.)

25  • One plaintiff's counsel requested and received almost $7.4 million in attorney's

26     fees–more than $2,100 per hour for his firm's services.  (UF 26.)  YLWD failed

27     to make any objection, written or oral, to this request, or any of the other fee

28     requests, even though the Global Agreement did not require YLWD to agree to

CROWELL & MORING LLP
ATTORNEYS AT LAW

7                          Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

1   any award of attorneys' fees.  (UF 26.)

2   • YLWD did not challenge plaintiffs' request for 10% pre-judgment interest, even

3       though the rate of interest for inverse condemnation claims is the variable, and

4       in this case much lower, "Cal-Trans rate."  (UF 28.)

5   • The trial only lasted approximately 22 to 23 hours on all nineteen claims, even

6       though the parties were anticipating a four to six month trial if the matter had

7       not settled.  As the parties had agreed, no jury was empanelled, no live witnesses

8       were called, and no party called witnesses to cross-examine.  There were no

9       rebuttals to any expert reports.  Although not required by the Global Agreement,

10      and although the parties intended to enforce the resulting judgment against the

11      insurers, no court reporter was present to record the proceedings.  (UF 30.)

12  • YLWD stipulated to many items of damages, although not required by the

13      Global Agreement.  (UF 29.)

14      On July 13, 2012, Justice Trotter caused "Judgment" to be entered in Orange

15  County Superior Court in favor of plaintiffs[1] on twelve of the homes at issue in the

16  amount of $69 million, including approximately $39 million in economic damages

17  and approximately $30 million in pre-judgment interest ($14.6 million), attorneys'

18  fees ($15 million), and costs.  (UF 31.)  The "Judgment" provided the homeowners

19  with economic damage awards significantly above the amounts requested in their

20  trial briefs.   (UF 33.)   On average, the Judgment awarded each of the nine

21  prevailing homeowners that asserted individual claims over $300,000 more than

22  what they requested at trial, for a total of over $3 million more than requested.

23  Even though the Global Settlement permitted YLWD to challenge mathematical

24  errors, it did not exercise its right to correct any of the discrepancies between the

25  amount requested and the amount awarded to these individual plaintiffs.  (UF 33.)

26  ---
[1] Although seven homeowners did not recover as part of the "Judgment," the Global
Agreement provides that all members of the Plaintiff Group will share in any
recovery from the insurers in the coverage action, regardless of whether they
prevailed at the trial.  (UF  .)

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

8                              Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

### F.     Post-Judgment Demands To Everest.

By letter dated July 27, 2012, counsel for Fire Exchange and Mid-Century, acting on behalf of ACWA-JPIA, YLWD, and all the other plaintiffs, wrote to Everest and the other carriers demanding payment of the "Judgment."   (UF 38.) The letter enclosed a copy of the "Judgment" but failed to include a copy of the Global Agreement and failed to disclose its terms or that the "Judgment" had been issued pursuant to its procedures.  A second letter was sent on August 6, 2012.  (UF 39.)  As with the first letter, there was no mention of the Global Agreement.

On August 24, 2012, Everest, through its counsel, acknowledged receipt of the letters and explained Everest was still investigating. (UF 40.)   Additionally, Everest noted its current understanding that "there has been no resolution of the coverage issues raised by ISOP and no exhaustion of all applicable underlying limits."   (*Id.*) Before Everest or its counsel had a full opportunity to further investigate or respond to the July 27 or August 6 letters, the prevailing plaintiffs, with leave of the Court, filed Complaints-in-Intervention, which were then served on Everest (the prevailing plaintiffs are hereinafter referred to as the "Plaintiffs-in-Intervention").  (UF 41.)  The Complaints-in-Intervention assert two direct action claims pursuant to California Insurance Code section 11580 against Everest and the other excess insurers:  a first claim for breach of the policies for failure to indemnify the amounts in the Judgment, and a second claim for bad faith.  (*Id.*)

On April 9, 2013, counsel for ACWA-JPIA, YLWD, and the Plaintiffs-in-Intervention sent another letter to Everest demanding payment of the "Judgment." (UF 45.)  Once again, like its two predecessors, this letter did not attach a copy of, mention, or describe the Global Agreement.  In response to the April 9 letter, Everest sent a written acknowledgement dated April 25, 2013.  (UF 46.)  Everest sent a detailed response by letter dated May 23, 2013.  (*Id.*)

### G.     Relevant Terms Of Everest's Policy.

Everest's Policy (UF 2) contains numerous terms that preclude coverage for

CROWELL
& MORING LLP
ATTORNEYS AT LAW

9                    Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

the uncontested, non-adversarial Judgment entered pursuant to the settlement embodied in the Global Agreement without Everest's knowledge or consent.  As relevant here, the Policy provides:

- Coverage is only provided for "the amount of the 'ultimate net loss' in excess of the 'underlying limits of insurance' to which this insurance applies."  (Policy § 1.A.1.)

- Everest "will have the right, but not the duty to defend or associate in the defense of the insured against any suit seeking damages to which this insurance may apply."  (Policy § 1.A.2.)

- YLWD must obtain Everest's consent before: (1) settling any claim against it, or (2) voluntarily making any payment to any claimant against it.  (Policy §§ IV.3.(c)(7), (d).)

- Everest may only be sued "to recover on an agreed settlement or on a final judgment against an insured."  (Policy § IV.4.)

- "This insurance is excess over, and will not contribute with any 'other insurance' whether primary, excess, contingent or on any other basis."  (Policy § IV.5.)

## III.   LEGAL STANDARD

A party is entitled to summary judgment where "there is no genuine issue of material fact and the party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Courts grant summary judgment in favor of the defendant when the plaintiff is unable to make a showing sufficient to establish an element essential to that party's case, and on which that party would bear the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986).  Only disputes over material facts, or those facts that might ultimately affect the outcome of the lawsuit under governing law, will preclude entry of summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986).  A genuine issue of

material fact exists only if there is sufficient contradictory evidence such that a reasonable jury could return a verdict for the non-moving party.  *Id.*; *Roth v. Madison Nat'l Life Ins. Co*., 702 F. Supp. 2d 1174, 1176 (C.D. Cal. 2010) (granting partial summary judgment on bad faith claims). As demonstrated below, there are no disputed issues of material fact, and all of Plaintiffs-in-Intervention's claims fail as a matter of law.

## IV.  EVEREST'S POLICY DOES NOT COVER PLAINTIFFS-IN-INTERVENTION'S CLAIMS.

### A.  Because The $39 Million In Underlying Coverage Has Not Been Exhausted, No Payment Is Due From Everest.

Everest's Policy only applies to "the amount of the 'ultimate net loss' in excess of the 'underlying limits of insurance' to which this insurance applies."  *See* Policy § 1.A.1.  Because Everest's Policy provides "excess" coverage, "liability attaches only after a predetermined amount of primary coverage has been exhausted."  *Olympic Ins. Co. v. Emp'rs Surplus Lines Ins. Co*., 126 Cal. App. 3d 593, 598, 600 (1981) (holding excess insurer's obligations did not arise where primary policies were not exhausted); *Cmty. Redev. Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th 329, 339 (1996) (excess policy does not provide coverage "until *all* of the primary insurance has been exhausted."); *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1505 (9th Cir. 1994) (excess coverage does not attach until a primary insurer has exhausted coverage by paying the full amount of its policy limits).

Here, ISOP and Lexington provide coverage for the first $39 million (after ACWA-JPIA's $1 million self-insured retention).  This coverage has not been exhausted—indeed the underlying insurers have made no payments with respect to this claim.  (UF 9.)  Even if Everest's Policy provided coverage for the amounts awarded in Justice Trotter's Decision (which it does not), Everest's only obligation would be to make payments to those plaintiffs whose claims are not satisfied after the ISOP and Lexington policies are exhausted.  Without an identification of

CROWELL
& MORING LLP
ATTORNEYS AT LAW

11

Case No. 8:11-CV-01124-CJC-RNBx

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS

IRACTIVE-5854268.2

specific plaintiffs whose claims remain to be paid after ISOP and Lexington's payments, Everest is not obligated to make any payment under its Policy. This is especially true given that the Global Agreement requires the Plaintiffs-in-Intervention to share any potential recovery with the seven claimants who did not prevail at trial. Everest has no obligation to make a payment to any claimant who did not prevail at trial. Consequently, Everest has no current obligation to make a payment on its Policy.[2]

**B.     Plaintiffs Breached Their Obligations By Failing To Seek or Obtain Everest's Consent To The Settlement And Voluntary Payment.**

Everest's Policy obligates YLWD to obtain Everest's consent before: (1) settling any claim against it, or (2) voluntarily making any payment to any claimant against it. Policy §§ IV.3.(c)(7), (d). YLWD breached each of these provisions, without any excuse, which independently relieves Everest of any duty to make a payment to YLWD or its judgment creditors. No showing of prejudice is required for Everest to prevail on these consent defenses. *See Faust v. Travelers*, 55 F.3d 471, 472 (9th Cir. 1995) (there is no "prejudice requirement for enforcement of the [voluntary payment] provision"); *Low v. Golden Eagle Ins. Co.*, 110 Cal. App. 4th 1532, 1546 (2003) (no showing of prejudice is required even "where the insured tenders the defense and *then* negotiates a settlement on its own, leaving the insurer in the dark"); *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 349-50 (1999) (insurer, with no demand to defend, is not required to show prejudice in order to enforce voluntary payment provision).[3]

**1.     YLWD Failed To Obtain Everest's Consent To The Settlement Of The *Itani Litigation*.**

The Policy prohibits YLWD from making or authorizing "an admission of

---

[2] And Plaintiffs-in-Intervention's claims collectively exceed $10 million in any event, so it would be impossible for all of them to recover against Everest.

[3] Regardless, the waiver of substantive rights in the Global Agreement, including the uncontested, non-adversarial trial for which it provides, is prejudicial to Everest.

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS

IRACTIVE-5854268.2

liability or attempt to settle or otherwise dispose of any claim or 'suit' without [Everest's] written consent."  Policy § IV.3.(c)(7).  Yet, the undisputed facts show that YLWD "settled" the claims against it in the Global Agreement.  (UFs 18-21a.)  In fact, the document describes itself as a "global settlement agreement" and a settlement.  (UF 20.)  By paying the $10 million in "seed money" and  obtaining a covenant not to execute, the YLWD absolved itself of any possible additional liability regardless of the outcome of the trial by reference.

YLWD did not disclose this settlement, or any of its terms, to Everest before entering into it, and did not request or obtain Everest's consent.  (UF 21g, 23.)  Everest would not have consented if asked.  (UF 23.)  YLWD's settlement of the *Itani* Litigation without Everest's consent, "preclude[s] any recovery" against Everest.  *Pruyn v. Agric. Ins. Co.*, 36 Cal. App. 4th 500, 515-16 (1995).

## 2.    YLWD Failed To Obtain Everest's Consent Before Making The $10 Million Payment.

Not only must YLWD obtain Everest's consent before settlement, the Policy also provides that "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."  Policy § IV.3.  There is no dispute that YLWD paid the Plaintiff Group $10 million, in self-described "seed money," as provided in the Global Agreement.  (UF 21, 25.)  This payment was "with no contingency whatsoever" and was "non-refundable."  *Id*.  It is undisputed that YLWD did not obtain Everest's consent before making this voluntary payment.  (UF 23.)  Thus, YLWD breached its obligations under the Policy by making the payment.

Because of its insured's breach of the Policy, Everest is relieved of the obligation to make any payment to the Plaintiffs.  California law enforces no-voluntary-payments provisions to prevent insureds from unilaterally settling claims and seeking to hold their insurers' liable.  *Jamestown Builders, Inc.*, 77 Cal. App. 4th at 346.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

13

Case No. 8:11-CV-01124-CJC-RNBx

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

For example, in *Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.G.,* 3 Cal. 3d 434, 449-50 (1970), the California Supreme Court enforced a no voluntary payments clause, holding that the insurer was not liable to pay any portion of a claim where the insured agreed to make a voluntary payment relating to the claim.  The insurer's policy prohibited the insured from admitting any liability, settling any claim, or incurring any expenses or costs in connection with a claim.  *Id*. at 441.  As with Everest's Policy, the policy in *Gribaldo* gave the insurer the right to assume the insureds' defense, but did not impose a duty to defend.  The California Supreme Court held that, as a matter of contract, an insurer, without a duty to defend, is not obliged to contribute to a settlement where it never received a prior request for its consent.  *Id*. at 449-50 ("Having failed to make such a demand and thereby put defendants to a choice, plaintiffs should not be entitled to recover defense costs voluntarily incurred by them."); *see also Safeco Ins. Co. of Am. v. Certain Underwriters at Lloyds, London*, No. BC378080, 2011 WL 1796529 at *14 (Cal. App. May 11, 2011) (affirming summary judgment for an insurer where insured did not contact insurer and never sought its consent before settling).

It is undisputed that YLWD voluntarily paid $10 million under the Global Agreement.  Because of this breach of contract, Everest is excused from further performance under the Policy.

### 3.     Everest Did Not Breach Any Duty To YLWD And Has Not Waived Its Consent Rights.

Plaintiffs-in-Intervention may argue that, where an insurer breaches a duty to its insured, such as a duty to defend or to consent to a reasonable settlement, courts can find that the insurer waived or is estopped from asserting its consent defense. *See, e.g., Diamond Heights Homeowner's Ass'n v. Nat'l Am. Ins. Co.*, 227 Cal. App. 3d 563, 581 (1991) (holding excess insurer waived its rights under "no action" clause where excess insurer refused to accept reasonable settlement offer).

Everest has not breached any duty to YLWD.  Everest had no duty to defend

Crowell & Moring LLP
Attorneys At Law

14

Case No. 8:11-CV-01124-CJC-RNBx

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS

IRACTIVE-5854268.2

YLWD in the *Itani* Litigation.[4]   (UF 2b.)   It is undisputed that YLWD never tendered the defense to Everest.  (UF 11 ["The demand to – for defense costs solely went to" ISOP.]).  Moreover, YLWD did not reject any reasonable settlement offer in the *Itani* Litigation.  (UF 15.)  YLWD never requested Everest's participation at either the underlying mediation or settlement conference, and it failed to disclose the negotiations for or existence of the Global Agreement until discovery in this coverage action.  (UF 15, 23, 35.)  Thus, Everest did not waive its consent rights. *See Pruyn*, 36 Cal. App. 4th at 521 (explaining that an excess insurer without the duty to defend "would be free to rely on the 'no action' clause" in the policy); *Crowley Maritime Corp. v. Fed. Ins. Co.*, Nc. C 08-00830, 2008 WL 507118 *8-9 (N.D. Cal. Dec. 1, 2008) (granting summary judgment to insurer where insured breached consent obligations and insurer did not breach any duty to defend).

## C.   Plaintiffs-In-Intervention's Suit Violates The No Action Clause.

California Insurance Code section 11580(b)(2) requires insurance policies that cover property damage to include:  "A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

The "No Action" clause in Everest's Policy implements this requirement, providing that a person or organization may only sue Everest "to recover on an agreed settlement or on a final judgment against an insured."  Policy § IV.4.  Thus,

---

[4] Any refusal to defend by ISOP and Lexington does not trigger a duty for Everest to defend. *Republic W. Ins. Co. v. Fireman's Fund Ins. Co.*, 241 F. Supp. 2d 1090, 1096 (N.D. Cal. 2003) ("[A]n excess insurer has no duty to defend where the primary insurer refused the tender of defense."); *Ticor Title Ins. Co. v. Emp'rs Ins. of Wausau*, 40 Cal. App. 4th 1699, 1708-1709 (1995) (excess coverage does not drop down, even if claim exceeds primary limits, where the language of the excess policy "unambiguously" precludes coverage).  Everest's Policy unambiguously provides that Everest *never* has the duty to defend.  Policy §§ 1.A.2.

CROWELL & MORING LLP
ATTORNEYS AT LAW

15                                     Case No. 8:11-CV-01124-CJC-RNBx

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

to maintain their action against Everest, the Plaintiffs-in-Intervention must prove the existence of either: (1) an "agreed settlement," or (2) a "final judgment" against YLWD. *Wright v. Fireman's Fund Ins. Cos.*, 11 Cal. App. 4th 998, 1015 (1992) ("Under section 11580 the judgment against the insured is clearly an essential element of the claimant's right to recover against the insurer."). Neither exists in this case.

### 1. Everest Did Not Agree To The Settlement Embodied In The Global Agreement.

Plaintiffs-in-Intervention cannot rely on the Global Agreement to establish the existence of an "agreed settlement." Everest's Policy defines an "agreed settlement" as "a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative." Policy § IV.4. It is undisputed that neither YLWD nor any Plaintiff in the *Itani* Litigation even requested—much less obtained—Everest's consent to the Global Agreement. (UF 23.) To the contrary, YLWD and Plaintiffs-in-Intervention agreed to keep the Global Agreement confidential. (UF 21g.) Far from requesting Everest's consent to the settlement embodied in the Global Agreement, YLWD and the Plaintiffs-in-Intervention concealed it from Everest until discovery in this action. (UF 35.)

### 2. The Purported Judgment Is Insufficient To Impose Liability On Everest Because The Judicial Reference Trial Was Not A Contested Proceeding.

In their demands for payment to Everest, Plaintiffs-in-Intervention have relied upon the order issued by Justice Trotter on July 13, 2012 captioned "Judgment" to satisfy the No Action clause and section 11580. (UF 38, 39, 45.) However, discovery has revealed that the judicial reference trial was not a contested proceeding because YLWD had no "skin in the game"—the Global Agreement gave YLWD a "covenant not to execute" and, consequently, YLWD's maximum liability was fixed at the $10 million "seed money" payment it had already made. (UF 19, 21a.) YLWD had no potential liability to be adjudicated at trial. Instead,

CROWELL
& MORING LLP
ATTORNEYS AT LAW

16

Case No. 8:11-CV-01124-CJC-RNBx

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS

IRACTIVE-5854268.2

YLWD's chances of recovery against its insurers improved if a judgment was entered **against** it.  (UF 21f.)  Because YLWD's economic interests were aligned with the Plaintiff Group's interests, the trial necessarily lacked the adversarial nature that characterizes a contested trial.

A default judgment, stipulated judgment, or other judgment that is not "on the merits" is not, by itself, sufficient to impose liability on an insurer for purposes of section 11580.  *Wright,* 11 Cal. App. 4th at 1024 (reversing summary judgment in favor of insured holding stipulated judgment "insufficient to impose liability" in insurer pursuant to section 11580); *Pruyn*, 36 Cal. App. 4th at 521 ("an excess insurer will, in most cases, be unburdened by the claim that it has breached a duty to defend and thus would be free to rely on the 'no action' clause").

Only where the insurer breaches some contractual duty or obligation will courts bind an insurer to a judgment after an uncontested proceeding; by breaching its contractual duties to its insured, an insurer may waive its rights to challenge whether the judgment was "on the merits." *Sanchez v. Truck Ins. Exch.*, 21 Cal. App. 4th 1778, 1786 (1994) (insurer that breached its duty to defend prevented from challenging judgment entered against its insured); *Diamond Heights Homeowners Ass'n*, 227 Cal. App. 3d at 581 (an excess insurer "may waive its rights" under a no action clause by breaching its obligation to accept a reasonable settlement offer while at the same time refusing to undertake the insured's defense). *See also Wright*, 11 Cal. App. 4th at 1019 ("All of the cases in which a judgment not on the merits has been found binding on the insurer were based upon the principle an insurer who has an opportunity to defend and wrongfully fails to do so is liable on the judgment against the insured.").

As discussed above, § IV.B.3., Everest has not breached any contractual duty to ACWA-JPIA or YLWD.  Everest had no duty to defend the *Itani Litigation*, and neither ACWA-JPIA nor YLWD ever requested that it provide a defense.  Everest did not refuse consent to a reasonable settlement offer.  Indeed, YLWD failed to

CROWELL
& MORING LLP
ATTORNEYS AT LAW

17

Case No. 8:11-CV-01124-CJC-RNBx

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS

IRACTIVE-5854268.2

disclose the terms of the Global Agreement before entering into it and never requested Everest's consent to that settlement or any other settlement.  (UF 23, 35.)  ACWA-JPIA and YLWD have admitted that, during the pre-judgment period, Everest's adjuster stayed "on top of his file."  (UF 14.)  Consequently, Everest has not waived its right or become estopped from challenging the validity of the purported judgment.

There can be no reasonable dispute that the judicial reference trial was not a contested proceeding.  The provisions of the Global Agreement—especially the covenant not to execute and the allocation of recovery in this coverage case—align YLWD's interests with those of the plaintiffs, eviscerating any true contest or adversary proceeding.  (UF 20, 21a-h.)  Plaintiffs-in-Intervention have admitted that the purpose of the settlement embodied in the Global Agreement and the judicial reference trial that followed was not to adjudicate the relative rights of YLWD and the plaintiffs, but to "ultimately place responsibility where it should have been in the first place"—on the insurers.  (UF 21a.)

The use of abbreviated procedures at the judicial reference trial confirms that it was not a contested trial.  The parties waived:

- Their right to challenge the statement of decision, or seek a new trial, retaining only the right to request correction of mathematical errors.  (UF 21d.)

- Their appellate rights, despite the novelty and significance of the legal issues presented.  YLWD's counsel explained:  "everything about this case will be new and interesting[,] [n]ew law trying to be made…This would be the first case of a Water District running out of water that formed the basis for a judgment … if it went that far."  (UF 21d, 23.)

- Presentation of live witnesses or cross-examination.  (UF 30.)

- The right to try damages claims to a jury.  (UF *id*., 21d.)

In addition, YLWD stipulated to or failed to challenge important requests by plaintiffs:

CROWELL
& MORING LLP
ATTORNEYS AT LAW

18                    Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

- The parties agreed before the trial that the $10 million "seed money" payment would not be an offset to any judgment issued.  Although the issue of offset was apparently submitted to Justice Trotter, Ms. Bauermeister did not argue for an offset.  (UF 21c, 25.)

- YLWD stipulated to many items of damage. (UF 29.)

- YLWD failed to challenge the percentage of pre-judgment interest that Plaintiffs sought, despite Plaintiffs' request for a 10% interest rate far higher than the "Cal-Trans rate" typically awarded in inverse condemnation cases, constituting over $14 million of the Judgment.  (UF 28.)  *See People ex rel. Dept. of Transport. v. Diversified Props. Co. III*, 14 Cal. App. 4th 429, 450-51 (1993).

- YLWD failed to oppose the plaintiffs' attorneys' request for over $15 million in attorneys' fees even though plaintiffs' counsel sought up to 30-40 percent contingency fees, including, in some cases, an hourly rate of up to $2,100.  (UF 26, 27.)

- The Judgment awarded Plaintiffs-in-Intervention a total of over $3 million more than the amounts for which they provided *any* evidentiary support at trial.  (UF 33.)  YLWD failed to exercise its right under the Global Agreement to seek correction of these apparent mathematical errors in the Judgment.  (UF 34.)

    As a result of these abbreviated procedures, the trial of nineteen separate claims, by eight attorneys, lasted only 22 to 23 hours, even though the parties were anticipating a four to six month trial if the matter had not settled.  (UF 14d.)  A fulsome evaluation of the proceedings at trial is not possible because the parties failed to hire a court reporter for the proceedings before Justice Trotter, thereby concealing evidence of the proceedings, even though this coverage case was then pending.  (UF 30.)

    As the *Wright* court explained, the "potential for abuse and collusion" exists "when a stipulated judgment or settlement under which the insured has no personal liability binds the insurer.  With no personal exposure the insured has no incentive

CROWELL
& MORING LLP
ATTORNEYS AT LAW

19                                   Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

to contest liability or damages. To the contrary, the insureds' best interests are served by agreeing to damages in any amount as long as the agreement requires the insured will not be personally responsible for those damages." *Wright v. Fireman's Fund Ins. Cos.*, 11 Cal. App. 4th 998, 1023 (1992).  Consequently, the purported judgment in the *Itani* Litigation is insufficient to bind Everest, and the No Action clause bars Plaintiffs-in-Intervention's claims against Everest.

### D. Everest Has No Duty To Indemnify YLWD Because YLWD Is Not, And Never Was, "Legally Obligated To Pay" The "Judgment."

Everest is only obligated to pay "damages" that YLWD is "legally obligated to pay" and that exceed the $40 million limits on the coverage provided by ISOP, Lexington, and ACWA-JPIA's Self-Insured Retention.  Everest's Policy applies to "the amount of the 'ultimate net loss' in excess of the 'underlying limits of insurance' to which this insurance applies".  Policy § 1.A.1.  Ultimate net loss means "the total sum, after reduction for recoveries, salvages collectible and 'other insurance,' that the insured becomes legally obligated to pay as damages under this policy by reason of settlements, judgments, arbitration or other alternative dispute method entered into with [Everest's] consent or the 'underlying insurer's' consent." *Id*. at V.18.

Where the insured or primary insurer's liability is limited by settlement and the underlying policy is not exhausted, the excess insurer faces no liability.  *See Qualcomm, Inc. v. Certain Underwriters at Lloyds, London*, 161 Cal. App. 4th 184, 198 (2008) (settlement between insured and primary insurer below primary insurer's policy limits absolves excess insurer of liability).  Similarly, an insurer is not liable for damages where the insured itself was not obligated to pay, especially when liability is limited by a settlement.  *See Aerojet-General Corp. v. Commercial Union Ins. Co*., 155 Cal. App. 4th 132, 140-46 (2007) (holding that sums agreed to be paid as a settlement of litigation did not constitute "damages" under an excess insurance policy).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

20

Case No. 8:11-CV-01124-CJC-RNBx

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS

IRACTIVE-5854268.2

In this case, YLWD is only "legally obligated to pay" the $10 million in "seed money" that it agreed to pay in the settlement described in the Global Agreement.  YLWD received a covenant not to execute that absolves it of any liability other than this $10 million payment.  YLWD has not sued Everest seeking a return of this $10 million.  Because the maximum amount of YLWD's "ultimate net loss" is $10 million—well below Everest's $40 million attachment point, Everest does not have any obligation to make any payments to YLWD or the Plaintiffs-in-Intervention.

## V.   EVEREST ACTED AT ALL TIMES IN GOOD FAITH.

As a threshold matter, the undisputed evidence elicited in discovery demonstrates that Everest has acted in good faith at all times towards its insureds, and the Plaintiffs-in-Intervention.  Neither ACWA-JPIA and YLWD nor the Plaintiffs-in-Intervention have asserted any bad faith claims against Everest based on its conduct before the issuance of the July 13, 2012 decision.  (UF 41, 42.)

Nor could they.  Testimony by YLWD's counsel, Ms. Bauermeister, including in her role as ACWA-JPIA's 30(b)(6) witness, establishes that Everest was never requested to provide a defense in the *Itani* Litigation—much less unreasonably fail to discharge any (non-existent) duty to defend.  (UF 11.) Similarly, Ms. Bauermeister never requested Everest's adjuster to attend the two settlement conferences or consent to any settlement.  Ms. Bauermeister admitted that Everest's adjuster contacted her regarding the litigation, and she did not identify any deficiency in his handling of the matter.  Indeed, she admitted that Everest's adjuster stayed "on top of his file."  (UF 13, 15.)

Despite her open line of communication with Everest's adjuster, Ms. Bauermeister concealed the Global Agreement and its terms from Everest until long *after* the judicial reference trial, when the agreement was disclosed during discovery in this action.  (UF 23.)  She failed to disclose to Everest her consent to a reference procedure, appointment of Justice Trotter as referee, or YLWD's waiver

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

1  of its appellate and other rights.  She admitted that she provided Everest no report
2  of the proceedings during the judicial reference trial.  (UF 37.)  Further, no other
3  party to the *Itani* Litgation disclosed the Global Agreement to Everest.  (UF 21g,
4  23, 35.)

5      In light of these facts, in their Complaints, Plaintiffs-in-Intervention did not
6  plead any conduct by Everest that they claim was unreasonable or taken in bad faith
7  before the July 13, 2012 decision.  (UF 42.)  Instead, Plaintiffs-in-Intervention
8  plead a single ground for their bad faith claim against Everest—that Everest failed
9  to pay its policy limits quickly enough after entry of the purported judgment.  (Dkt.
10  Nos. 112, 113, 115, 116.)

11      Plaintiffs-in-Intervention claim that Everest breached its duty to settle *this*
12  *coverage litigation* by failing to pay its full policy limits upon entry of the
13  purported judgment.  In discovery, Plaintiffs-in-Intervention have relied on *Samson*
14  *v. Transamerica Ins. Co.*, 30 Cal. 3d 220, 243 (1981) to establish this claim.
15  *Samson* provides no support for Plaintiffs-in-Intervention's position.  The insurer in
16  *Samson* breached its duty to defend the insured in the underlying action and,
17  consequently, was bound to the judgment that was entered.   In contrast, as
18  discussed above, Everest did not have or breach any duty to defend YLWD and,
19  consequently, is not bound to the purported judgment because it did not give its
20  consent to the Global Agreement pursuant to which the trial was conducted and
21  judgment entered.

22      Moreover, Plaintiffs-in-Intervention's bad faith claim fails for three
23  additional reasons.  *First,* Everest acted reasonably in withholding payment because
24  no exhaustion of the $39 million in underlying limits beneath Everest's policy has
25  yet occurred.  *Second,* the Court in this action has already granted partial summary
26  judgment to ISOP on the issue of bad faith (Dkt. No. 204), finding a "reasonable
27  dispute" regarding the application of the inverse condemnation exclusion precluded
28  a finding of bad faith.  This ruling applies with equal force to Everest.  *Finally*, the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

22                                    Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2

coverage issues discussed above, § IV, establish, at a minimum, a good faith dispute over whether coverage exists for the claims asserted by the Plaintiffs-in-Intervention. For each of these separate and independent reasons, Everest is entitled to summary judgment on the bad faith claims against it.

### A.   Everest Has Not Breached Its Good Faith Obligations Because The Underlying Coverage Is Not Yet Exhausted.

As discussed above, § IV.A, Everest's excess coverage does not attach until ISOP and Lexington have exhausted their coverage by actually paying the full amount of their limits.  Policy § 1.A.1.  Exhaustion has not yet occurred and, consequently, no payment is presently due from Everest.

Plaintiffs-in-Intervention have not identified which specific plaintiffs Everest ought to pay.  Instead, Plaintiffs-in-Intervention have all simply asked for Everest's full limits.  (UF 38, 39, 45.)  However, the claims of the Plaintiffs-in-Intervention exceed $10 million (Everest's policy limits) and, thus, many of them can never, under any circumstances, have a claim against Everest.  Without a specific identification of the plaintiffs who should receive payment from Everest, no payment can be due as some of them can never have a claim against Everest in any event.

In addition, the Global Agreement provides that any recovery from this lawsuit will be shared among the "Plaintiff Group" that signed the agreement—including homeowners and subrogated insurers on homes that did not receive an award from Justice Trotter. Everest has no obligation to make a payment that will be given to individuals without any claim against it.

Under these circumstances, Everest has not breached its contractual obligations to indemnify YLWD, but instead has acted reasonably and in a manner consistent with the terms of the Policy.  For this reason alone, the bad faith claims asserted by Plaintiffs-in-Intervention fail.  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 35 (1995) ("because a contractual obligation is the underpinning of a bad

CROWELL & MORING LLP
ATTORNEYS AT LAW

23

Case No. 8:11-CV-01124-CJC-RNBx

MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS

IRACTIVE-5854268.2

faith claim, such a claim cannot be maintained unless policy benefits are due under the contract").

## B.   The Court's Grant Of Summary Judgment To ISOP Precludes Any Finding Of Bad Faith By Everest.

On March 29, 2013, this Court granted partial summary judgment to ISOP on Plaintiffs' bad faith claims against ISOP.   The Court held that a "reasonable dispute" existed over the "extent of coverage for inverse condemnation claims" pursuant to MOLC Exclusion R.  (Dkt. No. 204 at 15).

The Court's analysis precludes a finding that Everest acted in bad faith. Everest is an excess carrier two levels above ISOP, and its Policy "follows form" to the underlying policies, to the extent not inconsistent with the specific terms of Everest's policy.  Policy § I.A.1 ("The coverage provided by this policy will: (a) Follow the terms, definitions, conditions and exclusions that are contained in the 'first underlying insurance,' unless otherwise directed by this policy, including any attached endorsements; and (b) Not be broader than that provided by the 'first underlying insurance.'").   Everest's policy, thus, incorporates by reference the language of Exclusion R in the MOLC.  (UF 1, 3.)

The Court's prior finding that a "genuine dispute" exists about whether or not the inverse condemnation exclusion bars coverage under ISOP's policy applies with equal force to Everest.  Consequently, Everest, like ISOP, is entitled to summary judgment on Plaintiffs-in-Intervention's bad faith claims.

## C.   Because Everest Has Not Breached Any Contractual Obligation, It Did Not Act In Bad Faith.

In addition to lack of exhaustion, this motion identifies three additional reasons that Plaintiffs-in-Intervention's claims against it are not covered under its Policy.  *Supra* § IV.B (failure to obtain Everest's consent to YLWD's settlement or voluntary payment of $10 million in "seed money"); IV.C (violation of the "no action" clause where purported judgment not rendered after contested trial); & IV.D (Everest not required to indemnify amounts that YLWD is not "legally obligated to

pay"). For each of these reasons, no indemnification is due from Everest and, as a matter of law, Plaintiffs-in-Intervention's bad faith claims fail. *Waller*, 11 Cal. 4th at 35 (1995).

At a minimum, even if summary judgment is not granted on the breach of contract claims, a "genuine dispute" exists over whether Everest is obligated to cover the Judgment. As the Court held in granting ISOP's motion for partial summary judgment on bad faith, "[n]umerous Ninth Circuit and California appellate decisions support Defendant's assertion that denials of insurance coverage—even erroneous denials—do not constitute bad faith where there is a 'genuine issue' as to the insurer's liability for coverage." Order dated March 29, 2013 (Dkt. No. 204 at 15).[5] Because Everest's defenses to payment of indemnity are reasonable, Plaintiffs-in-Intervention's bad faith claims fail.

## VI. CONCLUSION

Based on the foregoing arguments, Everest respectfully requests that the Court enter summary judgment on all causes of action asserted in this matter or, in the alternative, partial summary judgment on the bad faith claims.

DATED: May 24, 2013            CROWELL & MORING LLP


                    By:   /s/Steven P. Rice
                          Steven P. Rice
                          Kathleen Balderrama
                          Attorneys for Defendant-in-Intervention
                          EVEREST NATIONAL INSURANCE
                          COMPANY

---

[5] The Court's summary is correct. *See Chateau Chamberay Homeowners Ass'n v. Assoc'd Int'l Ins. Co.*, 90 Cal. App. 4th 335, 350 (2001) (to avoid bad faith liability, insurer must show its positions were reasonable or that it "had proper cause to assert the positions that it did"); *Dalrymple v. United Services Auto. Assn.*, 40 Cal. App. 4th 497, 519-20, 523 (1995) (refusing to impose bad faith liability "where there is a genuine issue as to the insurer's liability . . . created by uncertainties in controlling case law"). *See also Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 993 (9th Cir. 2001) ("The Ninth Circuit has affirmed the dismissal of bad faith claims in numerous cases over the past 17 years because of genuine issues about liability under California law").

CROWELL & MORING LLP
ATTORNEYS AT LAW

25                    Case No. 8:11-CV-01124-CJC-RNBx
MEMORANDUM OF POINTS AND AUTHORITIES ISO EVEREST'S MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON BAD FAITH CLAIMS
IRACTIVE-5854268.2