1  Gary A. Hamblet, State Bar No. 90250
   *ghamblet@mpplaw.com*
2  Kevin M. Pollack. State Bar No. 272786
   *kpollack@mpplaw.com*
3  MORRIS POLICH & PURDY LLP
   1055 West Seventh Street, 24th Floor
4  Los Angeles, CA 90017
   Telephone:  (213) 891-9100
5  Facsimile:  (213) 488-1178

6  Attorneys for Plaintiff-in-Intervention
   David Ramocinski
7

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ASSOCIATION OF CALIFORNIA          **Case No. 8:11-CV-01124-CJC-**
    WATER AGENCIES JOINT               **(RNBx)**
12  POWERS INSURANCE
    AUTHORITY, a California Public
13  Agencies Joint Powers Authority;
    YORBA LINDA WATER                  **PLAINTIFFS OBJECTIONS**
14  DISTRICT, a California Public Water
    District,                          **TO EVEREST'S PROPOSED**
15
              Plaintiffs,              **JURY INSTRUCTIONS**
16
17  vs.

18  THE INSURANCE COMPANY OF
    THE STATE OF PENNSYLVANIA;
19  LEXINGTON INSURANCE                **Pre-Trial Conf.:   June 30, 2014**
    COMPANY, and DOES 1 TO 100,        **Time              3:00 P.M.**
20  Inclusive                          **Dept.:            9B**
              Defendants.
21                                     **Complaint Filed:  June 27, 2011**
    AND RELATED ACTIONS.               **Trial Date:       July 29, 2014**
22

23

24       Plaintiffs-In-Intervention ("PLAINTIFFS") hereby submit their tentative

25  "Objections to Everest's Proposed Jury Instructions.   PLAINTIFFS hereby

26  reserve the right to supplement these objections based on rulings by the Court and

27  other developments:

28

                              1

# JURY INSTRUCTIONS

## OBJECTED TO BY PLAINTIFFS

| PROPOSED INSTRUCTION | | OBJECTIONS |
|---|---|---|
| 300 | Breach of Contract | Contrary to the law; No evidence to support; Argumentative |
| 326 | Assignment Contested | Contrary to the law; No evidence to support; |
| 10.90 | General Damages/ Breach of Contract | No evidence to support.  Plaintiffs are not claiming general damages. |
| 2303 | Affirmative Defenses –Policy Exclusions | No evidence to support; Argumentative. |
| 2322 | Insured's Voluntary Payment | Contrary to law; no evidence to support. |
| 2330 | Implied Covenant of Good Faith Explained | Contrary to law; no evidence to support. |
| 2360 | Judgment Creditors Action Against Insurer | Contrary to law; argumentative; no evidence to support; covered by other instructions. |

| PROPOSED INSTRUCTION | OBJECTIONS |
|---|---|
| **3924**     **No Punitive Damages** | **No evidence to support.** |
| **5007**     **Removal of Claims** | **No evidence to support; argumentative.** |
| **45.18**     **Unclean Hands** | **Contrary to law; no evidence to support.** |
| **MB300B.01 - No Conflict in Extrinsic Evidence** | **Contrary to law; no evidence to support.** |
| **MB2300A.08 – Primary Insurance** | **No evidence to support.** |
| **MB2300A.09 – Excess Insurance** | **Contrary to law; argumentative** |
| **MB2300A.120 – Right of Insurer To Limit Coverage** | **Contrary to law; argumentative** |
| **MB2300A.143 – Insurer Entitled To Consider** | **Contrary to law; no evidence to support argumentative** |
| **76-3  -  Interest in Outcome** | **Argumentative** |

3

## Special Instructions

| PROPOSED INSTRUCTION | OBJECTION |
|---|---|
| **1.    Duties of Excess Insurers** | Contrary to law<br><br>No evidence to support<br><br>Argumentative |
| **2.    Fraud and Collusion** | Contrary to law<br><br>No evidence to support<br><br>Argumentative<br><br>Plaintiff's MIL No. 1 |
| **3.    Fraudulent or Collusive Judgment** | Contrary to law<br><br>No evidence to support<br><br>Argumentative<br><br>Plaintiff's MIL No. 1 |
| **4.    Fraud/Collusion – Factors to Consider** | Contrary to law;<br><br>No evidence to support;<br><br>Argumentative.<br><br>Plaintiff's MIL No. 1 |
| **5.    Genuine Dispute** | Contrary to law;<br><br>No evidence to support;<br><br>Argumentative. |

PLAINTIFFS' OBJECTIONS TO EVEREST'S JURY INSTRUCTIONS

| PROPOSED INSTRUCTION | OBJECTION |
|---|---|
| 6.  Implied Covenant Runs Both Ways | No evidence to support; Argumentative. |
| 7.  Insurer's Duty to Other Policyholders | Contrary to law; No evidence to support; Argumentative. |
| 8.  Legal Effect of Covenant Not to Execute | Contrary to law; No evidence to support; Argumentative. |
| 9.  No Duplicative Damages | Contrary to law; No evidence to support; Argumentative. |
| 10.  Plaintiffs Subject to Same Defenses | Contrary to law; No evidence to support; argumentative. |
| 11.  Settlement Without Consent | Contrary to law; no evidence to support; argumentative. |
| 12.  Breach of No Action Clause | Contrary to law; no evidence to support; argumentative |

5

| PROPOSED INSTRUCTION | OBJECTION |
|---|---|
| **13.    Legally Obligated to Pay** | **Contrary to law; no evidence to support; argumentative; duplicative of other instructions.** |
| **14.    No Duty to Pay Other Damages** | **Contrary to law; no evidence to support; argumentative.** |
| **15.    Insured's Duties Under Policy** | **Contrary to law; no evidence to support; argumentative** |

Dated:  June 23, 2014

**MORRIS POLICH & PURDY LLP**


By:___*/s/ Gary A. Hamblet*_____
Gary A. Hamblet
Kevin M. Pollack
Attorneys for Plaintiff-in-Intervention
DAVID RAMOCINSKI

**PLAINTIFFS' OBJECTIONS TO EVEREST'S JURY INSTRUCTIONS**

Judicial Council Of California Civil Jury Instruction 300, Judicial Council Of California...

CACI 300, Judicial Council Of California Civil Jury Instruction 300

Judicial Council Of California Civil Jury Instructions
Database updated March 2014
By the Judicial Council of California Advisory Committee on Civil Jury Instructions
Contracts

300 Breach of Contract—Introduction

Plaintiffs claim that Yorba Linda Water District ("YLWD") and Everest entered into an insurance contract.

Plaintiffs claim that Everest breached this contract by not paying for the reference judgment.

Plaintiffs also claim that Everest's breach of this contract caused harm to Plaintiffs for which Everest should pay.

Everest denies that it breached the insurance contract with Yorba Linda Water District. Everest also claims that the reference judgment is not covered by Everest's insurance policy with Yorba Linda Water District for the following reasons:

1.  Without Everest's consent as required by the insurance contract, YLWD made a voluntary payment to Plaintiffs, assumed obligations under the Global Agreement, and settled the underlying action with Plaintiffs via the Global Agreement.

2.  The judgment is tainted by fraud or collusion

3.  Plaintiffs are in violation of the No Action clause of the insurance policy because they do not have a final judgment after an actual trial.

4.  Plaintiffs have unclean hands because of their fraud and collusion with YLWD and therefore cannot enforce the reference judgment.

5.  The reference judgment is barred by Exclusions D and R in the insurance policy.

6.  The "other damages" included in the reference judgment are not awardable damages under California inverse condemnation law and are not covered damages under insurance policy.

7.  YLWD is not legally obligated to pay the reference judgment and thus the judgment is not covered by the insurance policy.

*New September 2003; Revised December 2007*

## Directions for Use

This instruction is designed to introduce the jury to the issues involved in the case. It should be read before the instructions on the substantive law.

## Sources and Authority

• The Supreme Court has observed that "[c]ontract and tort are different branches of law. Contract law exists to enforce

Judicial Council Of California Civil Jury Instruction 300, Judicial Council Of California...

legally binding agreements between parties; tort law is designed to vindicate social policy." (Applied Equipment Corp. v. Litton Saudi Arabia, Ltd. (1994) 7 Cal.4th 503, 514 [28 Cal.Rptr.2d 475, 869 P.2d 454].)

• "The differences between contract and tort give rise to distinctions in assessing damages and in evaluating underlying motives for particular courses of conduct. Contract damages seek to approximate the agreed-upon performance … and are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectations of the parties are not recoverable." (Applied Equipment Corp., supra, 7 Cal.4th at p. 515, internal citations omitted.)

• Certain defenses are decided as questions of law, not as questions of fact. These defenses include frustration of purpose, impossibility, and impracticability. (Oosten v. Hay Haulers Dairy Employees and Helpers Union (1955) 45 Cal.2d 784, 788 [291 P.2d 17]; Mitchell v. Ceazan Tires, Ltd. (1944) 25 Cal.2d 45, 48 [153 P.2d 53]; Autry v. Republic Productions, Inc. (1947) 30 Cal.2d 144, 157 [180 P.2d 888]; Glen Falls Indemnity Co. v. Perscallo (1950) 96 Cal.App.2d 799, 802 [216 P.2d 567].)

• "Defendant contends that frustration is a question of fact resolved in its favor by the trial court. The excuse of frustration, however, like that of impossibility, is a conclusion of law drawn by the court from the facts of a given case …." (Mitchell, supra, 25 Cal.2d at p. 48, italics added.)

• Estoppel is a "nonjury fact question to be determined by the trial court in accordance with applicable law." (DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe and Takeout III, Ltd. (1994) 30 Cal.App.4th 54, 61 [35 Cal.Rptr.2d 515].)

### Secondary Sources

1 Witkin, Summary of California Law (10th ed. 2005) Contracts, §§ 847–867

13 California Forms of Pleading and Practice, Ch. 140, Contracts, § 140.50 (Matthew Bender)

5 California Points and Authorities, Ch. 50, Contracts, § 50.10 et seq. (Matthew Bender)

1 Matthew Bender Practice Guide: California Contract Litigation, Ch. 13, Attacking or Defending Existence of Contract—Absence of Essential Element, §§ 13.03-13.17

## WEST'S EDITORIAL REFERENCES

### Direct References:

See BAJI 10.85

### Related References:

BAJI 10.03, 10.04, 10.82

### Statutory References:

Civ. Code, §§ 1549, 1550

### Library References:

Judicial Council Of California Civil Jury Instruction 300, Judicial Council Of California...

Cal. Jur. 3d, Insurance Contracts and Coverage §§ 18, 28

**Research References:**

West's Key Number Digest, Contracts ☞326, 353(1)
C.J.S., Contracts § 998

© 2014 by the Judicial Council of California. All rights reserved. See front matter for a listing of Judicial Council Task Force and Advisory Committee members who have contributed to these jury instructions.

End of Document                                          © 2014 Thomson Reuters. No claim to original U.S. Government Works.

## 326. Assignment Contested

---

[*Name of plaintiff*] **was not a party to the original contract. However,** [*name of plaintiff*] **may bring a claim for breach of the contract if [he/ she/it] proves that** [*name of assignor*] **transferred [his/her/its] rights under the contract to** [*name of plaintiff*]**. This transfer is referred to as an "assignment."**

[*Name of plaintiff*] **must prove that** [*name of assignor*] **intended to transfer [his/her/its] contract rights to** [*name of plaintiff*]**. In deciding** [*name of assignor*]**'s intent, you should consider the entire transaction and the conduct of the parties to the assignment.**

**[A transfer of contract rights does not necessarily have to be made in writing. It may be oral or implied by the conduct of the parties to the assignment.]**

---

*New February 2005*

## Directions for Use

The bracketed third paragraph should be used only in cases involving a transfer that may be made without a writing.

## Sources and Authority

- Civil Code section 1052 provides: "A transfer may be made without writing, in every case in which a writing is not expressly required by statute."

- Restatement Second of Contracts, section 324, provides: "It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee. The manifestation may be made to the other or to a third person on his behalf and, except as provided by statute or by contract, may be made either orally or by a writing."

- "While no particular form of assignment is required, it is essential to the assignment of a right that the assignor manifest an intention to transfer the right." (*Sunburst Bank v. Executive Life Insurance Co.* (1994) 24 Cal.App.4th 1156, 1164 [29 Cal.Rptr.2d 734], internal citations omitted.)

- "The burden of proving an assignment falls upon the party asserting rights thereunder. In an action by an assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue, but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee." (*Cockerell v. Title Insurance & Trust Co.* (1954) 42 Cal.2d 284, 292 [267 P.2d 16], internal citations omitted.)

- "The accrued right to collect the proceeds of the fire insurance policy is a chose

134                                                                      (Pub. 1283)

This version provided by LexisNexis® Matthew Bender®, Official Publisher, 800-533-1637, www.lexisnexis.com/bookstore, for public and internal court use.

in action, and an effective assignment thereof may be expressed orally as well as in writing; may be the product of inference; and where the parties to a transaction involving such a policy by their conduct indicate an intention to transfer such proceeds, the courts will imply an assignment thereof. In making such a determination, substance and not form controls." (*Greco v. Oregon Mutual Fire Insurance Co.* (1961) 191 Cal.App.2d 674, 683 [12 Cal.Rptr. 802], internal citations omitted.)

• "An assignor may not maintain an action upon a claim after making an absolute assignment of it to another; his right to demand performance is extinguished, the assignee acquiring such right. To 'assign' ordinarily means to transfer title or ownership of property, but an assignment, to be effective, must include manifestation to another person by the owner of his intention to transfer the right, without further action, to such other person or to a third person. It is the substance and not the form of a transaction which determines whether an assignment was intended. If from the entire transaction and the conduct of the parties it clearly appears that the intent of the parties was to pass title to the chose in action, then an assignment will be held to have taken place." (*McCown v. Spencer* (1970) 8 Cal.App.3d 216, 225 [87 Cal.Rptr. 213], internal citations omitted.)

### Secondary Sources

1 Witkin, Summary of California Law (10th ed. 2005) Contracts, §§ 707–719

6 California Forms of Pleading and Practice, Ch. 60, *Assignments*, § 60.20 (Matthew Bender)

27 California Legal Forms, Ch. 76, *Assignments of Rights and Obligations*, § 76.201 (Matthew Bender)

2 Matthew Bender Practice Guide: California Contract Litigation, Ch. 22, *Suing or Defending Action for Breach of Contract*, 22.51–22.56, 22.58, 22.59

(Pub. 1283)

This version provided by LexisNexis® Matthew Bender®, Official Publisher, 800-533-1637, www.lexisnexis.com/bookstore, for public and internal court use.

**BAJI 10.90**

GENERAL DAMAGES/BREACH OF CONTRACT


      The measure of [general] damages for the breach of a contract is that amount which will compensate the injured party for all the [detriment] [or] [loss] caused by the breach, or which in the ordinary course of things, would be likely to result therefrom. The injured party should receive those damages naturally arising from the breach, or those damages which might have been reasonably contemplated or foreseen by both parties, at the time they made the contract, as the probable result of the breach. As nearly as possible, the injured party should receive the equivalent of the benefits of performance.

      Damages must be reasonable. Plaintiff cannot recover a greater amount as damages than [he] [or] [she] could have gained by the full performance of the contract.

## BAJI 10.90

GENERAL DAMAGES/BREACH OF CONTRACT

USE NOTE

Delete the bracketed word "general," unless plaintiff is also seeking special damages. If plaintiff also claims special damages, use BAJI 10.92 as a supplement.

Plaintiff has a duty to mitigate damages. BAJI 14.68 can be adapted to a breach of contract case by substituting "who" for "whose property."

BAJI 14.60 and 14.70 should be given if future economic damages are sought.

COMMENT

Civil Code §§ 3300, 3359.

1 Witkin, Summary of California Law (10th ed. 2005), Contracts § 871

Punitive damages are not recoverable in a contract action. (Civil Code § 3294; Foley v. Interactive Data Corp. (1988) 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373.)

Ordinarily, damages are not recoverable for mental suffering resulting from a breach of contract. (Westwater v. Rector, etc., of Grace Church (1903) 140 Cal. 339, 341, 73 P. 1055.) However, when a breach causes physical injury or illness, recovery is appropriate. (Westervelt v. McCullough (1924) 68 Cal.App. 198, 228 P. 734.)

Some cases have permitted recovery of damages for mental distress without physical injury where severe mental distress was reasonably foreseeable should a breach recur. (Chelini v. Nieri (1948) 32 Cal.2d 480, 481, 196 P.2d 915 (and cases cited therein).)

"Another measure of damages is the amount of plaintiff's expenditures, together with reasonable value of his own services, in preparation and performance in reliance on the contract. This type of recovery is ... awarded when, because of uncertainty or difficulty of proof or other reason, the plaintiff is unable to establish a claim for lost profits." (1 Witkin, Summary of California Law (10th ed. 2005), Contracts § 828.)

Emotional distress damages are not recoverable in an action for breach of a contract arising out of a builders negligent construction of a home, under either a breach of contract or negligence theory. The defendant's negligence directly caused only economic injury and property damage and breached no duty independent of the contract. (Erlich v. Menezes (1999) 21 Cal.4th 543, 87 Cal.Rptr.2d 886, 981 P.2d 978.)

Absent an independent basis for a claim of negligence, such as personal injury, or for intentional infliction of emotional distress, a tenant suing a landlord for negligent infliction of emotional distress arising solely out of a purported negligent breach of the contractual relationship between them cannot recover damages for emotional distress. This is an application of the holding in Erlich v. Menezes (1999) supra. Butler-Rupp v. Lourdeaux (2005) 134 Cal.App.4th 1220, 36 Cal.Rptr.3d 685.

RESEARCH REFERENCES

West's Key Number Digest
Damages k117 to 126, 218

Primary Authority
See CACI 350 to 361

Legal Encyclopedias
C.J.S., Damages §§ 108 to 121, 149 to 151, 362

Judicial Council Of California Civil Jury Instruction 2303, Judicial Council Of California...

CACI 2303, Judicial Council Of California Civil Jury Instruction 2303

Judicial Council Of California Civil Jury Instructions
Database updated March 2014
By the Judicial Council of California Advisory Committee on Civil Jury Instructions
Insurance Litigation

2303 Affirmative Defense—Insurance Policy Exclusion

Everest is not liable for the reference judgment if it is specifically excluded under the policy. Everest claims the reference judgment is specifically excluded because YLWD's liability

1. arises out of YLWD's delivery or non-delivery of water or electricity, based on any decision made by YLWD's governing body with respect to either obtaining a supply of water or electricity for, or allocating the available supply of water or electricity, among YLWD's water or electricity users ; or
2. arises out of or is in connection with inverse condemnation, to the extent that such liability is alleged to, or does, result from deliberate, decision-making conduct by the governing body of YLWD.

Everest has the burden of proving these exclusions.

*New September 2003; Revised October 2008*

### Directions for Use

The instructions in this series assume the plaintiff is the insured and the defendant is the insurer. The party designations may be changed if appropriate to the facts of the case.

This instruction can be used in cases involving either a third party liability or a first party loss policy.

### Sources and Authority

• "The burden of bringing itself within any exculpatory clause contained in the policy is on the insurer." (Clemmer v. Hartford Insurance Co. (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098].)

• "The burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage. And, once an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." (Aydin Corp. v. First State Insurance Co. (1998) 18 Cal.4th 1183, 1188 [77 Cal.Rptr.2d 537, 959 P.2d 1213].)

• Once the insurer proves that the specific exclusion applies, the insured "should bear the burden of *establishing* the exception because 'its effect is to reinstate coverage that the exclusionary language otherwise bars.' " (Aydin Corp., supra, 18 Cal.4th at p. 1188.)

### Secondary Sources

Croskey et al., California Practice Guide: Insurance Litigation (The Rutter Group) ¶¶15:911–15:912

Judicial Council Of California Civil Jury Instruction 2303, Judicial Council Of California...

1 California Liability Insurance Practice: Claims & Litigation (Cont.Ed.Bar) Analyzing Coverage: Reading and Interpreting Insurance Policies, § 3.63

26 California Forms of Pleading and Practice, Ch. 308, *Insurance*, § 308.502 (Matthew Bender)

### WEST'S EDITORIAL REFERENCES

#### Related References:

BAJI 2.60, 12.92, 12.93

#### Statutory References:

Civ. Code. § 1649

#### Library References:

Cal. Jur. 3d. Insurance Contracts and Coverage § 505

#### Research References:

West's Key Number Digest, Insurance ☞2117, 2290, 3579
C.J.S.. Insurance §§ 54, 58, 860, 945, 1131, 1730

© 2014 by the Judicial Council of California. All rights reserved. See front matter for a listing of Judicial Council Task Force and Advisory Committee members who have contributed to these jury instructions.

**End of Document**                                                © 2014 Thomson Reuters. No claim to original U.S. Government Works.

## 2322. Affirmative Defense—Insured's Voluntary Payment

---

[*Name of defendant*] **claims that it does not have to pay** [*specify, e.g., the amount of the settlement*] **because** [*name of plaintiff*] **made a voluntary payment. To succeed on this defense,** [*name of defendant*] **must prove the following:**

1. [*Select either or both of the following:*]

   **[That** [*name of plaintiff*] **made a payment to** [*name of third party claimant*] **in [partial/full] settlement of** [*name of third party claimant*]**'s claim against** [*name of plaintiff*]**; [or]]**

   **[That** [*name of plaintiff*] **[made a payment/ [or] assumed an obligation/ [or] incurred an expense] to** [*name*] **with regard to** [*name of third party claimant*]**'s claim against** [*name of plaintiff*]**]];**

   **AND**

2. **That** [*name of defendant*] **did not give its consent or approval for the [payment/ [or] obligation/ [or] expense].**

---

*New April 2007*

### Directions for Use

The instructions in this series assume that the plaintiff is the insured and the defendant is the insurer. The party designations may be changed if appropriate to the facts of the case.

This instruction is intended for use by an insurer as a defense to a breach of contract action based on a third party liability policy. This instruction also may be modified for use as a defense to a judgment creditor's action to recover on a liability policy. This defense is not available if the insurer refused to defend before the voluntary payment was made.

A voluntary-payments clause in an insurance policy typically provides that the insured may not voluntarily make a payment, assume an obligation, or incur an expense without the insurer's consent. (See, e.g., *Truck Ins. Exchange v. Unigard Ins. Co.* (2000) 79 Cal.App.4th 966, 976 [94 Cal.Rptr.2d 516].) In element 1, select the appropriate options depending on the acts alleged. Modify, as necessary, depending on the actual language of the policy. Use the first option if the insured has made a payment in settlement of the claim. Use the second option if the insured has made a payment, assumed an obligation, or incurred an expense for other reasons, such as to an attorney for legal services, or to a creditor of the claimant, such as a provider of medical or repair services.

(Pub. 1283)

This version provided by LexisNexis® Matthew Bender®, Official Publisher, 800-533-1637, www.lexisnexis.com/bookstore, for public and internal court use.

INSURANCE LITIGATION                                             CACI No. 2322

## Sources and Authority

- "The general validity of no-voluntary-payment provisions in liability insurance policies is well established. . . . [S]uch clauses are common 'to prevent collusion as well as to invest the insurer with the complete control and direction of the defense or compromise of suits or claims.' " (*Insua v. Scottsdale Ins. Co.* (2002) 104 Cal.App.4th 737, 742 [129 Cal.Rptr.2d 138], internal citations omitted.)

- "California law enforces . . . no-voluntary-payments provisions in the absence of economic necessity, insurer breach, or other extraordinary circumstances. They are designed to ensure that responsible insurers that promptly accept a defense tendered by their insureds thereby gain control over the defense and settlement of the claim. That means insureds cannot unilaterally settle a claim before the establishment of the claim against them and the insurer's refusal to defend in a lawsuit to establish liability . . . . [T]he decision to pay any remediation costs outside the civil action context raises a 'judgment call left solely to the insurer.' In short, the provision protects against coverage by fait accompli." *Low v. Golden Eagle Ins. Co.* (2003) 110 Cal.App.4th 1532, 1544 [2 Cal.Rptr.3d 761], internal citations omitted.)

- " 'Typically, a breach of that provision occurs, if at all, before the insured has tendered the defense to the insurer.' . . . [A voluntary-payments] provision *is* [also] enforceable posttender until the insurer wrongfully denies tender. '[I]t is only when the insured has requested *and been denied a defense by the insurer* that the insured may ignore the policy's provisions forbidding the incurring of defense costs without the insurer's prior consent and under the compulsion of that refusal undertake his own defense at the insurer's expense.' " (*Low, supra,* 110 Cal.App.4th at pp. 1546–1547, original italics, internal citations omitted.)

- " '[T]he existence or absence of prejudice to [the insurer] is simply irrelevant to [its] duty to indemnify costs incurred *before* notice. The policy plainly provides that notice is a *condition precedent* to the insured's right to be indemnified; a fortiori the right to be indemnified cannot relate back to payments made or obligations incurred before notice.' . . . The prejudice requirement . . . applies only to the insurer's attempt to assert lack of notice as a *policy defense* against payment even of losses and costs incurred *after* belated notice." (*Jamestown Builders, Inc. v. General Star Indemnity Co.* (1999) 77 Cal.App.4th 341, 350 [91 Cal.Rptr.2d 514], original italics, internal citations omitted.)

- " 'There may be exceptions to the prohibition on voluntary payments, as where the insured is unaware of the identity of the insurer, the payment is necessary for reasons beyond the insured's control, or the insured faces a situation requiring an immediate response to protect its legal interests.' In a circumstance of that nature, the insured's payment is considered *involuntary*." (*Belz v. Clarendon America Ins. Co.* (2007) 158 Cal.App.4th 615, 628 [69 Cal.Rptr.3d 864], original italics, internal citation omitted.)

(Pub. 1283)

This version provided by LexisNexis® Matthew Bender®, Official Publisher, 800-533-1637, www.lexisnexis.com/bookstore, for public and internal court use.

**CACI No. 2322**                                    INSURANCE LITIGATION

*Secondary Sources*

2 Witkin, Summary of California Law (10th ed. 2005) Insurance, § 320

Croskey et al., California Practice Guide: Insurance Litigation (The Rutter Group) ¶¶ 7:439.5–7:439.10

California Liability Insurance Practice: Claims and Litigation (Cont.Ed.Bar) §§ 2.7, 3.27, 8.32, 11.14, 23.38

25 California Forms of Pleading and Practice, Ch. 300, *Indemnity and Contribution*, § 300.73[6] (Matthew Bender)

26 California Forms of Pleading and Practice, Ch. 308, *Insurance*, §§ 308.500, 308.502 (Matthew Bender)

## 2323–2329.   Reserved for Future Use

(Pub. 1283)

This version provided by LexisNexis® Matthew Bender®, Official Publisher, 800-533-1637, www.lexisnexis.com/bookstore, for public and internal court use.

Judicial Council Of California Civil Jury Instruction 2330, Judicial Council Of California...

CACI 2330, Judicial Council Of California Civil Jury Instruction 2330

Judicial Council Of California Civil Jury Instructions
Database updated March 2014
By the Judicial Council of California Advisory Committee on Civil Jury Instructions
Insurance Litigation

2330 Implied Obligation of Good Faith and Fair Dealing Explained

In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement.   However, the implied obligation of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

To fulfill its implied obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests.

To breach the implied obligation of good faith and fair dealing, an insurance company must, unreasonably or without proper cause, act or fail to act in a manner that deprives the insured of the benefits of the policy. It is not a mere failure to exercise reasonable care. But a breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment. There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.   However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.

*New September 2003; Revised December 2007*

### Directions for Use

This instruction may be used to introduce a "bad-faith" claim arising from an alleged breach of the implied covenant of good faith and fair dealing.

### Sources and Authority

• "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 658 [328 P.2d 198].)

• "For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it again must give at least as much consideration to the latter's interests as it does to its own." (Egan v. Mutual of Omaha Insurance Co. (1979) 24 Cal.3d 809, 818–819 [169 Cal.Rptr. 691, 620 P.2d 141].)

• "[T]o establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.' The actionable withholding of benefits may consist of the denial of benefits due; paying less than due; and/or unreasonably delaying payments due." (Major v. Western Home Ins. Co. (2009) 169 Cal.App.4th 1197, 1209 [87 Cal.Rptr.3d 556], internal citations omitted.)

• " '[T]he covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive.'

Judicial Council Of California Civil Jury Instruction 2330, Judicial Council Of California...

… [A]n insured plaintiff need only show, for example, that the insurer unreasonably refused to pay benefits or failed to accept a reasonable settlement offer; there is no requirement to establish *subjective* bad faith." (Bosetti v. United States Life Ins. Co. in the City of New York (2009) 175 Cal.App.4th 1208, 1236 [96 Cal.Rptr.3d 744], original italics, internal citations omitted.)

• "Bad faith may involve negligence, or negligence may be indicative of bad faith, but negligence alone is insufficient to render the insurer liable." Brown v. Guarantee Ins. Co. (1957) 155 Cal.App.2d 679, 689 [319 P.2d 69].)

• "Thus, a breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment. There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, 'but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.' " (Century Surety Co. v. Polisso (2006) 139 Cal.App.4th 922, 949 [43 Cal.Rptr.3d 468], internal citations omitted.)

• "[I]f the insurer denies benefits unreasonably (i.e., without any reasonable basis for such denial), it may be exposed to the full array of tort remedies, including possible punitive damages." (Jordan v. Allstate Ins. Co. (2007) 148 Cal.App.4th 1062, 1073 [56 Cal.Rptr.3d 312].)

• "Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." (R. J. Kuhl Corp. v. Sullivan (1993) 13 Cal.App.4th 1589, 1602 [17 Cal.Rptr.2d 425].)

• "[A]n insurer is not required to pay every claim presented to it. Besides the duty to deal fairly with the insured, the insurer also has a duty to its other policyholders and to the stockholders (if it is such a company) not to dissipate its reserves through the payment of meritless claims. Such a practice inevitably would prejudice the insurance seeking public because of the necessity to increase rates, and would finally drive the insurer out of business." (Austero v. National Cas. Co. (1978) 84 Cal.App.3d 1, 30 [148 Cal.Rptr. 653], overruled on other grounds in Egan, supra, 24 Cal.3d at p. 824 fn. 7.)

• "Unique obligations are imposed upon true fiduciaries which are not found in the insurance relationship. For example, a true fiduciary must first consider and always act in the best interests of its trust and not allow self-interest to overpower its duty to act in the trust's best interests. An insurer, however, may give its own interests consideration equal to that it gives the interests of its insured; it is not required to disregard the interests of its shareholders and other policyholders when evaluating claims; and it is not required to pay noncovered claims, even though payment would be in the best interests of its insured." (Love v. Fire Ins. Exchange (1990) 221 Cal.App.3d 1136, 1148–1149 [271 Cal.Rptr. 246], internal citations omitted.)

### *Secondary Sources*

2 Witkin, Summary of California Law (10th ed. 2005) Insurance, § 239

Croskey, et al., California Practice Guide: Insurance Litigation, Ch. 11-B, *Theories For Extracontractual Liability—In General*, ¶¶ 11:7–11:8.1 (The Rutter Group)

Croskey, et al., California Practice Guide: Insurance Litigation, Ch. 12A-A, *Definition of Terms*, ¶¶ 12:1–12:10 (The Rutter Group)

Croskey, et al., California Practice Guide: Insurance Litigation, Ch. 12A-B, *Capsule History Of Insurance "Bad Faith" Cases*, ¶¶ 12:13–12:23 (The Rutter Group)

Judicial Council Of California Civil Jury Instruction 2330, Judicial Council Of California...

Croskey, et al., California Practice Guide: Insurance Litigation, Ch. 12A-C, *Theory Of Recovery—Breach Of Implied Covenant Of Good Faith And Fair Dealing ("Bad Faith")*, ¶¶ 12:27–12:54 (The Rutter Group)

Croskey, et al., California Practice Guide: Insurance Litigation, Ch. 12A-D, *Who May Sue For Tortious Breach Of Implied Covenant (Proper Plaintiffs)*, ¶¶ 12:56–12:90.17 (The Rutter Group)

Croskey, et al., California Practice Guide: Insurance Litigation, Ch. 12A-E, *Persons Who May Be Sued For Tortious Breach Of Implied Covenant (Proper Defendants)*, ¶¶ 12:92–12:118 (The Rutter Group)

Croskey, et al., California Practice Guide: Insurance Litigation, Ch. 12A-F, *Compare—Breach Of Implied Covenant By Insured*, ¶¶ 12:119–12:121 (The Rutter Group)

1 California Liability Insurance Practice: Claims and Litigation (Cont.Ed.Bar), Overview of Rights and Obligations of Policy, §§ 2.9–2.15

2 California Insurance Law & Practice, Ch. 13, *Claims Handling and the Duty of Good Faith*, § 13.03[1][a]–[c] (Matthew Bender)

1 California Uninsured Motorist Law, Ch. 13, *Rights, Duties, and Obligations of the Parties*, § 13.23 (Matthew Bender)

2 California Uninsured Motorist Law, Ch. 24, *Bad Faith in Uninsured Motorist Law*, §§ 24.10, 24.20–24.21, 24.40 (Matthew Bender)

26 California Forms of Pleading and Practice, Ch. 308, *Insurance*, § 308.24[1] (Matthew Bender)

11 California Legal Forms, Ch. 26A, *Title Insurance*, § 26A.17[9] (Matthew Bender)

### WEST'S EDITORIAL REFERENCES

#### Direct References:

See BAJI 12.90

#### Related References:

BAJI 12.92, 12.95

#### Statutory References:

Ins. Code, § 790.03

#### Library References:

Cal. Jur. 3d, Insurance Contracts and Coverage § 550

#### Research References:

West's Key Number Digest, Insurance ☞ 1867, 3379, 3579
C.J.S., Insurance §§ 377, 1161, 1730

Next

Judicial Council Of California Civil Jury Instruction 2330, Judicial Council Of California...

© 2014 by the Judicial Council of California. All rights reserved. See front matter for a listing of Judicial Council Task Force and Advisory Committee members who have contributed to these jury instructions.

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

CACI 2360, Judicial Council Of California Civil Jury Instruction 2360

Judicial Council Of California Civil Jury Instructions
Database updated March 2014
By the Judicial Council of California Advisory Committee on Civil Jury Instructions
Insurance Litigation

2360 Judgment Creditor's Action Against Insurer—Essential Factual Elements

[*Name of plaintiff*] claims that [*name of defendant*] must pay [all or part of] a judgment against [*name of insured*]. To establish this claim, [*name of plaintiff*] must prove all of the following:

1 That [*name of plaintiff*] brought a lawsuit for [personal injury/wrongful death/property damage] against [*name of insured*] and a judgment was entered against [*name of insured*];

2 That [all or part of] [*name of insured*]'s liability under the judgment is covered by an insurance policy with [*name of defendant*]; and

3 The amount of the judgment [covered by the policy].

Plaintiffs' suit is subject to all of Everest's defenses.


*New September 2003*


### Directions for Use

The instructions in this series assume the plaintiff is the insured and the defendant is the insurer. The party designations may be changed if appropriate to the facts of the case.

This instruction is intended for a judgment creditor's action against an insurer to collect on an insurance policy pursuant to Insurance Code section 11580(b)(2). This instruction should be used only where there are factual issues on any of the above elements. This instruction may need to be augmented with instructions on specific factual findings.

Note that Insurance Code section 11580 requires that the policy be "issued or delivered to [a] person in this state." This issue should be added as an element if it is disputed in the case.

### Sources and Authority

• Insurance Code section 11580(b)(2) provides, in pertinent part, that a liability policy must contain, and will be construed as containing if it does not: "[a] provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

• "A direct action under section 11580 is a contractual action on the policy to satisfy a judgment up to policy limits." (Wright v. Fireman's Fund Insurance Co. (1992) 11 Cal.App.4th 998, 1015 [14 Cal.Rptr.2d 588].)

• "[I]t is not necessary for property damage to be caused by a vehicle or draught animal in order to bring a direct action

against an insurer under section 11580." (People ex rel. City of Willits v. Certain Underwriters at Lloyd's of London (2002) 97 Cal.App.4th 1125, 1131–1132 [118 Cal.Rptr.2d 868].)

• "Because the insurer's duties flow to its insured alone, a third party claimant may not bring a direct action against an insurance company. As a general rule, a third party may directly sue an insurer only when there has been an assignment of rights by, or a final judgment against, the insured." (Shaolian v. Safeco Insurance Co. (1999) 71 Cal.App.4th 268, 271 [83 Cal.Rptr.2d 702], internal citations omitted.)

• "Under section 11580 a third party claimant bringing a direct action against an insurer should ... prove 1) it obtained a judgment for bodily injury, death, or property damage, 2) the judgment was against a person insured under a policy that insures against [the] loss or damage ..., 3) the liability insurance policy was issued by the defendant insurer, 4) the policy covers the relief awarded in the judgment, 5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California and insures against [the] loss or damage ...." (Wright, supra, 11 Cal.App.4th at p. 1015.)

• "Under Insurance Code section 11580, a third party creditor bringing a direct action against an insurer to recover the proceeds of an insurance policy must plead and prove not only that it obtained a judgment for bodily injury, but that 'the judgment was against a person insured under a policy ...' and 'the policy covers the relief awarded in the judgment ....' " (Miller v. American Home Assurance Co. (1996) 47 Cal.App.4th 844, 847–848 [54 Cal.Rptr.2d 765], original italics, internal citation omitted.)

• "[Insurance Code Section 11580(b)(2)] and the standard policy language permit an action against an insurer only when the underlying judgment is final and 'final,' for this purpose, means an appeal from the underlying judgment has been concluded or the time within which to appeal has passed." (McKee v. National Union Fire Insurance Co. of Pittsburgh, PA. (1993) 15 Cal.App.4th 282, 285 [19 Cal.Rptr.2d 286].)

• "[W]here the insurer may be subject to a direct action under Insurance Code section 11580 by a judgment creditor who has or will obtain a default judgment in a third party action against the insured, intervention is appropriate. ... Where an insurer has failed to intervene in the underlying action or to move to set aside the default judgment, the insurer is bound by the default judgment." (Reliance Insurance Co. v. Superior Court (2000) 84 Cal.App.4th 383, 386–387 [100 Cal.Rptr.2d 807], internal citations omitted.)

• "The [standard] 'no action' clause gives the insurer the right to control the defense of the claim-to decide whether to settle or to adjudicate the claim on its merits. When the insurer provides a defense to its insured, the insured has no right to interfere with the insurer's control of the defense, and a stipulated judgment between the insured and the injured claimant, without the consent of the insurer, is ineffective to impose liability upon the insurer." (Safeco Ins. Co. of Am. v. Superior Court (1999) 71 Cal.App.4th 782, 787 [84 Cal.Rptr.2d 43], internal citations omitted.)

• A standard "no action" clause in an indemnity insurance policy "provides that [the insurer] may be sued directly if the amount of the insured's obligation to pay was finally determined either by judgment against the insured after actual trial or by 'written agreement of the insured, the claimant and the company.' " (Rose v. Royal Insurance Co. of America (1991) 2 Cal.App.4th 709, 716–717 [3 Cal.Rptr.2d 483].)

• "[A] trial does not have to be adversarial to be considered an 'actual trial' under the 'no action' clause, or to be considered binding against the insurer in a section 11580 proceeding. ... [W]e conclude that the term 'actual trial' in the standard 'no action' clause has two components: (1) an independent adjudication of facts based on an evidentiary showing; and (2) a process that does not create the potential for abuse, fraud or collusion." (National Union Fire Insurance Co. v. Lynette C. (1994) 27 Cal.App.4th 1434, 1449 [33 Cal.Rptr.2d 496].)

• "A defending insurer cannot be bound by a settlement made without its participation and without any actual commitment on its insured's part to pay the judgment, even where the settlement has been found to be in good faith for purposes of [Code of Civil Procedure] section 877.6." (Hamilton v. Maryland Casualty Co. (2002) 27 Cal.4th 718, 730 [117 Cal.Rptr.2d 318, 41 P.3d 128].)

Judicial Council Of California Civil Jury Instruction 2360, Judicial Council Of California...

• "[W]hen … a liability insurer wrongfully denies coverage or refuses to provide a defense, then the insured is free to negotiate the best possible settlement consistent with his or her interests, including a stipulated judgment accompanied by a covenant not to execute. Such a settlement will raise an evidentiary presumption in favor of the insured (or the insured's assignee) with respect to the existence and amount of the insured's liability. The effect of such presumption is to shift the burden of proof to the insurer to prove that the settlement was unreasonable or the product of fraud or collusion. If the insurer is unable to meet that burden of proof then the stipulated judgment will be binding on the insurer and the policy provision proscribing a direct action against an insurer except upon a judgment against the insured after an 'actual trial' will not bar enforcement of the judgment." (Pruyn v. Agricultural Insurance Co. (1995) 36 Cal.App.4th 500, 509 [42 Cal.Rptr.2d 295].)

### *Secondary Sources*

Croskey et al., California Practice Guide: Insurance Litigation (The Rutter Group) ¶¶15:1028–15:1077, 15:1123–15:1136

2 California Liability Insurance Practice: Claims & Litigation (Cont.Ed.Bar) Claimant's Direct Action for Recovery of Judgment, §§ 27.1–27.7, 27.17–27.27

4 California Insurance Law & Practice, Ch. 41, *Liability Insurance in General*, §§ 41.60–41.63 (Matthew Bender)

26 California Forms of Pleading and Practice, Ch. 308, *Insurance* (Matthew Bender)

12 California Points and Authorities, Ch. 120, *Insurance*, §§ 120.186, 120.198, 120.206 (Matthew Bender)

### **WEST'S EDITORIAL REFERENCES**

#### **Related References:**

BAJI 12.95, 12.96, 12.97, 12.98

#### **Statutory References:**

Ins. Code, § 11580

#### **Library References:**

Cal. Jur. 3d, Insurance Contracts and Coverage § 575

#### **Research References:**

West's Key Number Digest, Insurance ⚖—3542, 3579
C.J.S., Insurance §§ 1407, 1521, 1642, 1730

© 2014 by the Judicial Council of California. All rights reserved. See front matter for a listing of Judicial Council Task Force and Advisory Committee members who have contributed to these jury instructions.

## 3924. No Punitive Damages

---

**You must not include in your award any damages to punish or make an example of [*name of defendant*]. Such damages would be punitive damages, and they cannot be a part of your verdict. You must award only the damages that fairly compensate [*name of plaintiff*] for [his/her/its] loss.**

---

*New September 2003*

## Directions for Use

Do not use this instruction if punitive damages are being sought in the phase of the trial in which these instructions are given.

## Sources and Authority

- "Punitive damages are not permitted in wrongful death actions." (*Cortez v. Macias* (1980) 110 Cal.App.3d 640, 657 [167 Cal.Rptr. 905].)

- "The punitive damages theory cannot be predicated on the breach of contract cause of action without an underlying tort." (*Palmer v. Ted Stevens Honda, Inc.* (1987) 193 Cal.App.3d 530, 536 [238 Cal.Rptr. 363], internal citations omitted.)

- "An award of punitive damages is not supported by a verdict based on breach of contract, even where the defendant's conduct in breaching the contract was wilful, fraudulent, or malicious. Even in those cases in which a separate tort action is alleged, if there is 'but one verdict based upon contract' a punitive damage award is improper." (*Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 960 [17 Cal.Rptr.2d 242], internal citations omitted.)

- Government Code section 818 provides: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."

### Secondary Sources

6 Witkin, Summary of California Law (10th ed. 2005) Torts, § 1580

California Tort Damages (Cont.Ed.Bar) Punitive Damages, § 14.3

4 Levy et al., California Torts, Ch. 54, *Punitive Damages*, §§ 54.05, 54.08 (Matthew Bender)

15 California Forms of Pleading and Practice, Ch. 177, *Damages* (Matthew Bender)

6 California Points and Authorities, Ch. 65, *Damages* (Matthew Bender)

(Pub. 1283)

This version provided by LexisNexis® Matthew Bender®, Official Publisher, 800-533-1637, www.lexisnexis.com/bookstore, for public and internal court use.

CACI 5007, Judicial Council Of California Civil Jury Instruction 5007

Judicial Council Of California Civil Jury Instructions
Database updated March 2014
By the Judicial Council of California Advisory Committee on Civil Jury Instructions
Concluding Instructions

5007 Removal of Claims or Parties and Remaining Claims and Parties

In determining your verdict, do not consider why other insurers are not parties in this case. While the conduct of the AIG companies may be relevant to your verdict, the presence of the AIG parties in this lawsuit is not.

### Directions for Use

This instruction may be read if some of the claims and parties before the jury at the beginning of the trial (see CACI No. 101, Overview of Trial) are no longer to be resolved by the jury. The instruction then summarizes the claims and parties that remain for the jury to resolve. The advisory committee recommends that this instruction be read to the jury before reading instructions on the substantive law.

In the second part of the instruction that sets forth the remaining claims, include the optional language if there are affirmative defenses that the jury will be asked to determine.

### WEST'S EDITORIAL REFERENCES

#### Direct References:

See BAJI 15.30, 15.40, 15.56

#### Research References:

West's Key Number Digest, Trial ⇌ 253(.5)
C.J.S., Trial §§ 672 to 675

© 2014 by the Judicial Council of California. All rights reserved. See front matter for a listing of Judicial Council Task Force and Advisory Committee members who have contributed to these jury instructions.

§ 45:18.Trial, 2 Cal. Affirmative Def. § 45:18 (2d ed.)

2 Cal. Affirmative Def. § 45:18 (2d ed.)

Expert Series
California Affirmative Defenses
Database Updated March 2014
Ann Taylor Schwing

Chapter 45. Unclean Hands
IV. Manner Of Asserting Defense

§ 45:18. Trial

**West's Key Number Digest**

**West's Key Number Digest,** Equity ⟜327, 376
**West's Key Number Digest,** Trial ⟜159

**Legal Encyclopedias**

C.J.S., Trial §§ 405 **to** 408, 410, 415, 423
Although it may be error in some cases for the trial court to hold that the defense of unclean hands may not be raised at trial because it was not asserted in the pleadings,[1] the trial court has discretion to refuse to permit tardy assertion of the defense especially when the plaintiff is prejudiced by the delay.[2]

The unclean hands doctrine may be applied in the context of a nonsuit following the opening statement when the pertinent facts have been placed before the court.[3]

Although unclean hands is typically tried to the court as an equitable defense, when it is asserted in an action at law it may properly be submitted to the jury.[4]

**FORM:** *Jury instruction—Unclean hands*

Defendant has raised as an affirmative defense the allegation that plaintiff has come into court with unclean hands. The doctrine of unclean hands is invoked when a litigant seeking damages has violated a duty of good faith or has acted unconscionably in connection with the same subject matter or relationship out of which the litigant claims a right to damages. If you find such a violation of good faith or conscience, then you should find that the plaintiff or plaintiffs who have unclean hands are not entitled to recover damages in this action.[5]

The only conduct on which you may make a finding of unclean hands is that conduct directly related to the subject matter or relationship at issue in this litigation. Unclean hands does not mean that someone is a bad person in general or in some other respect; you may find unclean hands only if you find a direct connection between the alleged unclean hands conduct and the facts of this case.

Footnotes

[1]    People v. Rath Packing Co., 85 Cal.App.3d 308, 338, 149 Cal.Rptr. 431, 451 (2d Dist.1978).

[2]    Marshall v. Marshall, 232 Cal.App.2d 232, 253, 42 Cal.Rptr. 686, 699 (1st Dist.1965), **following** Stone v. Lobsien, 112 Cal.App.2d 750, 758, 247 P.2d 357, 361 (1st Dist.1952).

§ 45:18.Trial, 2 Cal. Affirmative Def. § 45:18 (2d ed.)

3      **E.g.,** Russell v. Soldinger, 59 Cal.App.3d 633, 131 Cal.Rptr. 145 (2d Dist.1976).

4      Unilogic, Inc. v. Burroughs Corp., 10 Cal.App.4th 612, 621–23, 12 Cal.Rptr.2d 741, 745–47 (6th Dist.1992); Ford v. Superior Court, 176 Cal.App.2d 754, 759, 1 Cal.Rptr. 559, 562 (3d Dist.1959) **(defense of unclean hands in breach of contract action is heard by jury).**

5      Lynn v. Duckel, 46 Cal.2d 845, 850, 299 P.2d 236, 239 (1956); Fibreboard Paper Products Corp. v. East Bay Union of Machinists, 227 Cal.App.2d 675, 727–28, 39 Cal.Rptr. 64, 96 (1st Dist.1964); Health Maint. Network v. Blue Cross of Southern Cal., 202 Cal.App.3d 1043, 1061, 249 Cal.Rptr. 220, 232 (2d Dist.1988).

6      Samuelson v. Ingraham, 272 Cal.App.2d 804, 807, 77 Cal.Rptr. 750, 751–52 (1st Dist.1969); Jeong Soon v. Beekman, 234 Cal.App.2d 33, 35, 44 Cal.Rptr. 190 (5th Dist.1965).

7      Watson v. Poore, 18 Cal.2d 302, 313, 115 P.2d 478, 484 (1941); Seligman v. Tucker, 6 Cal.App.3d 691, 700, 86 Cal.Rptr. 187, 193 (2d Dist.1970); Moriarty v. Carlson, 184 Cal.App.2d 51, 56, 7 Cal.Rptr. 282, 285 (4th Dist.1960).

**End of Document**                                                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# 1-3B California Forms of Jury Instruction MB300B.01

*California Forms of Jury Instruction* > *CHAPTER 3B Matthew Bender Interpretation of Contract Instructions*

> MB300B.01No Conflict in Extrinsic Evidence—Court Interprets Contract.

[1]  Instruction

No Conflict in Extrinsic Evidence—Court Interprets Contract

[ *PLAINTIFF'S/DEFENDANT'S*
| PROPOSED INSTR. NO. _____

The written contract admitted in evidence as Exhibit _____ governs the rights and duties of the parties. It is my job as judge to interpret the meaning of this contract, and therefore, I will tell you what the contract means. Under the contract:

1. YLWD had a duty to

    (1) "immediately send [Everest] copies of any demands . . . received in connection with the claim or 'suit'";

    (2) "[c]ooperate with [Everest] in the investigation or settlement of the claim or defense against the 'suit'";

    (3) "[t]ake all necessary steps to protect . . . [Everest's] interests";

    (4) "[n]ot at any time . . . attempt to settle or otherwise dispose of any claim or 'suit' without [Everest's] written consent"; and

    (5) not, except at its "own cost," make a voluntary payment or assume an obligation without Everest's consent.

    (6) not transfer its rights and duties under the policy without Everest's written consent.

Finally, the Policy is void "in any case of fraud by [YLWD] as it relates to th[e] [P]olicy or any claim under th[e] [P]olicy."

2. Everest had a duty to indemnify YLWD for the "ultimate net loss" in excess of the underlying policy limits, which was $40 million. Everest did not have a duty to defend YLWD in the underlying action, nor did it have a duty to settle a claim that is not covered by the policy.

*Authorities: Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861, 865, 44 Cal.Rptr. 767, 402 P.2d 839; Oceanside 84, Ltd. v. Fidelity Federal Bank (1997) 56 Cal.App.4th 1441, 1448, 1451, 66 Cal.Rptr.2d 487; Home Federal Savings & Loan Assn. v. Ramos (1991) 229 Cal.App.3d 1609, 1613, 284 Cal.Rptr. 1; Greater Middleton Assn. v. Holmes Lumber Co. (1990) 222 Cal.App.3d 980, 989–990, 271 Cal.Rptr. 917; Medical Operations Management, Inc. v. National Health Laboratories, Inc. (1986) 176 Cal.App.3d 886, 890–892, 895, 222 Cal.Rptr. 455.*

[2]  Use of Instruction

This instruction should be used only when the court determines that the written contract is integrated and the extrinsic evidence, if any was admitted, bearing on its interpretation is uncontroverted. It instructs the jury that the court will interpret the contract and then sets forth the court's interpretation. The statement of obligations under the contract must be tailored to fit the individual case [*seeHolz Rubber Co., Inc. v. American Star Ins. Co. (1975) 14 Cal.3d 45, 54, 120 Cal.Rptr. 415, 533 P.2d 1055*]. It should be limited to a statement of those obligations and conditions that are claimed to have been breached, or the performance of which are otherwise in dispute.

When the meaning of words used in a contract is disputed, the trial court engages in a three-step process. First, the court provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the contract is reasonably susceptible. If, in light of the extrinsic evidence, the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid the court in its role in interpreting the contract. When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence or when the extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. If, however, there is a conflict in the extrinsic evidence, the factual conflict is to be resolved by the jury [Wolf v. Walt Disney Pictures & Television (2008) 162 Cal.App.4th 1107, 1126–1127, 76 Cal.Rptr.3d 585].

Instructions that should be used when conflicting extrinsic evidence has been presented, thus requiring the jury to interpret the contract, are set forth in the remainder of this chapter.

Samrah Mahmoud

Error! Unknown document property name.

# 1-23A California Forms of Jury Instruction MB2300A.08

*California Forms of Jury Instruction* > *CHAPTER 23A Matthew Bender Insurance Contract Instructions* > *Part A. GENERAL INSTRUCTIONS* > *I. Definitions and Preliminary Instructions*

> **MB2300A.08 Definition of "Primary Insurance"** *

**[1]  Instruction**

|  *PLAINTIFF'S/DEFENDANT'S*
| PROPOSED INSTR. NO. _____

**"Primary"** insurance is insurance that applies immediately on the happening of the event that gives rise to a covered claim or loss.

*Authorities:* *Legacy Vulcan Corp. v. Superior Court (2010) 185 Cal.App.4th 677, 689, 110 Cal.Rptr.3d 795*; *St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co. (2003) 111 Cal.App.4th 1234, 1252–1253, 4 Cal.Rptr.3d 416*; *Century Indem. Co. v. London Underwriters (1993) 12 Cal.App.4th 1701, 1706–1707, 16 Cal.Rptr.2d 393*; *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co. (1981) 126 Cal.App.3d 593, 597, 178 Cal.Rptr. 908*.

**[2]  Use of Instruction**

This instruction should be used with the instruction in MB 2300A.09 if it is necessary to distinguish between primary and excess insurance policies.

**[3]  Comment**

A primary liability (third-party) insurance policy applies immediately on the happening of the occurrence that gives rise to liability [*Legacy Vulcan Corp. v. Superior Court (2010) 185 Cal.App.4th 677, 689, 110 Cal.Rptr.3d 795*; *St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co. (2003) 111 Cal.App.4th 1234, 1252–1253, 4 Cal.Rptr.3d 416*]. The insurer providing such coverage has the primary duty to defend and indemnify, unless specific policy language excuses or excludes that duty [*St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co. (2003) 111 Cal.App.4th 1234, 1252–1253, 4 Cal.Rptr.3d 416*].

A primary insurance policy does not specify any threshold amount that must be reached before the insurer's obligations under the policy are triggered [*Olympic Ins. Co. v. Employers Surplus Lines Ins. Co. (1981) 126 Cal.App.3d 593, 597–598, 178 Cal.Rptr. 908*; see*Century Indem. Co. v. London Underwriters (1993) 12 Cal.App.4th 1701, 1706–1707, 16 Cal.Rptr.2d 393*], although there may be a deductible amount that the insured agrees to pay on each loss. Consistent with immediate attachment of obligations, general liability policies typically specify that in resolving claims the insurer may advance the deductible on behalf of the insured, for which the insured must then reimburse the insurer.

If two or more primary policies apply to the same loss, the question of which policy pays first, and which policy or policies pay next (that is, which policies are "excess") is usually resolved by the policies' "other insurance" provisions. In some instances, statutes mandate when one primary policy will be primary and another will be "excess." If so, the statutory provisions override any policy language [see, e.g., *Ins. Code § 11580.9* (automobile liability insurance if two or more policies apply to same vehicle); *Wilshire Ins. Co., Inc. v. Sentry Select Ins. Co. (2004) 124 Cal.App.4th 27, 35, 21 Cal.Rptr.3d 60*; *Travelers Indem. Co. v. Maryland Cas. Co. (1996) 41 Cal.App.4th 1538, 49 Cal.Rptr.2d 271*; see generallyCalifornia Insurance Law and Practice, Ch. 50, § 50.13 (Matthew Bender)].

For further discussion, see California Insurance Law and Practice, Ch. 14 (Matthew Bender).

---

**LexisNexis Matthew Bender Expert Practice Tip—Primary Versus Excess Insurance:** The terms "primary" and "excess" can be confusing because they are often used in two different contexts. The first context is with regard to layers of coverage. A true primary policy provides immediate coverage, as already explained. A true excess policy provides an additional layer of coverage on top of the primary policy [see*MB 2300A.09*]. Additional excess policies can provide further layers of coverage. The second context in which the terms "primary" and "excess" are used involves two policies at the same layer that cover the same loss—for example, if there are two true primary policies, and one is deemed to be "primary" and pay first pursuant to its "other insurance" clause. In that case, the second policy will be referred to as "excess," even though it is a primary policy. *By Susan E. Firtch*

---

California Forms of Jury Instruction
Copyright 2014, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

---

\* Revised by Susan E. Firtch. Ms. Firtch is a partner at Burnham Brown in Oakland, California.

# 1-23A California Forms of Jury Instruction MB2300A.09

*California Forms of Jury Instruction* > *CHAPTER 23A Matthew Bender Insurance Contract Instructions* > *Part A. GENERAL INSTRUCTIONS* > *1. Definitions and Preliminary Instructions*

> **MB2300A.09Definition of "Excess Insurance",**

**[1]  Instruction**

| *PLAINTIFF'S/DEFENDANT'S*

| PROPOSED INSTR. NO. _____

**"Excess" insurance is insurance that provides an additional layer of coverage that does not apply until other identified insurance coverage is no longer on the risk.**
*Authorities:* St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co. (2003) 111 Cal.App.4th 1234, 1253, 4 Cal.Rptr.3d 416; Century Indem. Co. v. London Underwriters (1993) 12 Cal.App.4th 1701, 1707, 16 Cal.Rptr.2d 393; Olympic Ins. Co. v. Employers Surplus Lines Ins. Co. (1981) 126 Cal.App.3d 593, 598, 178 Cal.Rptr. 908.

**[2]  Use of Instruction**

This instruction should be used whenever the applicability of an excess insurance policy is at issue. It should be used with the instruction in MB 2300A.08 if it is necessary to distinguish between primary and excess insurance.

**[3]  Comment**

Excess insurance provides coverage after underlying primary insurance is no longer on the risk [St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co. (2003) 111 Cal.App.4th 1234, 1252, 1253, 4 Cal.Rptr.3d 416; see Padilla Constr. Co., Inc. v. Transportation Ins. Co. (2007) 150 Cal.App.4th 984, 987, 58 Cal.Rptr.3d 807]. An excess policy typically does not apply until a specified amount of losses has been paid [Century Indem. Co. v. London Underwriters (1993) 12 Cal.App.4th 1701, 1707, 16 Cal.Rptr.2d 393; Olympic Ins. Co. v. Employers Surplus Lines Ins. Co. (1981) 126 Cal.App.3d 593, 598, 178 Cal.Rptr. 908; see, e.g. Legacy Vulcan Corp. v. Superior Court (2010) 185 Cal.App.4th 677, 689, 110 Cal.Rptr.3d 795 (excess insurance provides coverage only on exhaustion of specified primary insurance); Carmel Dev. Co. v. RLI Ins. Co. (2005) 126 Cal.App.4th 502, 510, 24 Cal.Rptr.3d 588 (one policy specifically excess); American Cas. Co. v. General Star Indem. Co. (2005) 125 Cal.App.4th 1510, 1520–1521, 24 Cal.Rptr.3d 34 (umbrella policy provided no liability coverage until exhaustion of all applicable primary policies); Travelers Cas. & Sur. Co. v. Transcontinental Ins. Co. (2004) 122 Cal.App.4th 949, 959, 19 Cal.Rptr.3d 272 (excess policy stated that excess coverage triggered when specified primary insurance is exhausted)], either by the underlying insurer or by the insured. If primary insurance exists, liability under an excess policy does not attach until all primary insurance is exhausted, even if the total amount of primary insurance exceeds the amount contemplated in the excess policy [Community Redevelopment Agency v. Aetna Cas. & Sur. Co. (1996) 50 Cal.App.4th 329, 339–340, 57 Cal.Rptr.2d 755; North River Ins. Co. v. American Home Assurance Co. (1989) 210 Cal.App.3d 108, 114–115, 257 Cal.Rptr. 129; Olympic Ins. Co. v. Employers Surplus Lines Ins. Co. (1981) 126 Cal.App.3d 593, 600, 178 Cal.Rptr. 908; see also Iolab Corp. v. Seaboard Sur. Co. (9th Cir. 1994) 15 F.3d 1500, 1504].

If no primary insurance exists, the insured must pay a threshold amount, referred to as a self-insured retention (or an "SIR"). An SIR is a form of self-insurance [Nabisco, Inc. v. Transport Indem. Co. (1983) 143 Cal.App.3d 831, 835, 192 Cal.Rptr. 207; see Legacy Vulcan Corp. v. Superior Court (2010) 185 Cal.App.4th 677, 694, n.12, 110 Cal.Rptr.3d 795; Forecast Homes, Inc. v. Steadfast Ins. Co. (2010) 181 Cal.App.4th 1466, 1473–1474, 105 Cal.Rptr.3d 200; General Star Indem. Co. v. Superior Court (1996) 47 Cal.App.4th 1586, 1593, 55 Cal.Rptr.2d 322; United States Elevator Corp. v. Associated Int'l Ins. Co. (1989) 215 Cal.App.3d 636, 646, 263 Cal.Rptr. 760]. In some respects, self-insurance retentions are equivalent to primary liability insurance, and policies that are subject to SIRs are "excess policies" that have no duty to indemnify until the SIR is exhausted [see Forecast Homes, Inc. v. Steadfast Ins. Co. (2010) 181 Cal.App.4th 1466, 1474, 105 Cal.Rptr.3d 200]. However, the analogy between "primary" and "excess" insurance should not be carried too far; an SIR is not the same as primary insurance for all purposes [Forecast Homes, Inc. v. Steadfast Ins. Co. (2010) 181 Cal.App.4th 1466, 1474, 105 Cal.Rptr.3d 200], and is not considered when determining whether all primary insurance is exhausted [Montgomery Ward & Co. v. Imperial Cas. & Indem. Co. (2000) 81 Cal.App.4th 356, 369, 97 Cal.Rptr.2d 44].

In some cases, excess policies have applied even though the primary insurer was insolvent and had paid no losses at all [see, e.g. Reserve Ins. Co. v. Pisciotta (1982) 30 Cal.3d 800, 815, 180 Cal.Rptr. 628, 640 P.2d 764; Fageol Truck & Coach Co. v. Pacific Indem. Co. (1941) 18 Cal.2d 748, 751, 117 P.2d 669]. The decisions in those cases have been based on the particular language of the excess policy in question. In any given case, the actual policy language should control [Reserve Ins. Co. v. Pisciotta (1982) 30 Cal.3d 800, 814, 180 Cal.Rptr. 628, 640 P.2d 764].

For further discussion, see California Insurance Law and Practice, Ch. 14, *Excess Insurance and the Primary/Excess Relationship* (Matthew Bender).

**LexisNexis Matthew Bender Expert Practice Tip—Primary Versus Excess Insurance:** Excess insurance is a complicated issue. Additionally, the terms "primary" and "excess" can be confusing because they are often used in two different contexts. The first context

* Revised by Susan E. Firtch. Ms. Firtch is a partner at Burnham Brown in Oakland, California.

is with regard to layers of coverage. A true primary policy provides immediate coverage [*see MB 2300A.08*]. A true excess policy provides an additional layer of coverage on top of the primary policy, as already explained. Additional excess policies can provide further layers of coverage. The second context in which the terms "primary" and "excess" are used involves two policies at the same layer that cover the same loss—for example, if there are two true primary policies, and one is deemed to be "primary" and pay first pursuant to its "other insurance" clause. In that case, the second policy will be referred to as "excess," even though it is a primary policy. *By Rex Heeseman and Susan E. Firtch*

California Forms of Jury Instruction
Copyright 2014, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

# 1-23A California Forms of Jury Instruction MB2300A.120

*__California Forms of Jury Instruction__* > *__CHAPTER 23A Matthew Bender Insurance Contract Instructions__* > *__Part B. CONTRACT ISSUES__* > *__7. Exclusions__*

MB2300A.120Right of Insurer to Limit Coverage*

## [1] Instruction

| *PLAINTIFF'S/DEFENDANT'S*
| PROPOSED INSTR. NO. _____

**An insurer has the right to limit coverage in plain and understandable language, and an insurer is free to limit the character and extent of the risk that it undertakes to assume. The right of an insurer to limit its contract of coverage may not be questioned unless the limitation is prohibited by public policy or by statute.**

*Authorities: Hackethal v. National Cas. Co. (1987) 189 Cal.App.3d 1102, 1109, 234 Cal.Rptr. 853; State Farm Mut. Auto. Ins. Co. v. MacKenzie (1978) 85 Cal.App.3d 727, 732, 149 Cal.Rptr. 747.*

### [2] Use of Instruction

This instruction should be used if the insurer asserts one or more policy exclusions as a defense to coverage. It should be used together with an instruction specific to the particular exclusion or exclusions asserted. For instructions regarding specific exclusions, see *MB 2300A.121–MB 2300A.125*.

### [3] Comment

An insurance policy is a contract. Consistent with the freedom to contract in the first instance, the parties to an insurance contract are generally free to limit the obligations that the insurer assumes, provided that the agreement does not contravene public policy [*Hackethal v. National Cas. Co. (1987) 189 Cal.App.3d 1102, 1109, 234 Cal.Rptr. 853; State Farm Mut. Auto. Ins. Co. v. MacKenzie (1978) 85 Cal.App.3d 727, 732, 149 Cal.Rptr. 747; see Utley v. Allstate Ins. Co. (1993) 19 Cal.App.4th 815, 823, 24 Cal.Rptr.2d 1* (resident relative exclusion in homeowner's policy did not violate public policy)].

California Forms of Jury Instruction
Copyright 2014, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

---

* Revised by Susan E. Firtch. Ms. Firtch is a partner at Burnham Brown in Oakland, California.

# 1-23A California Forms of Jury Instruction MB2300A.143

*California Forms of Jury Instruction* > *CHAPTER 23A Matthew Bender Insurance Contract Instructions* > *Part C. BAD FAITH ISSUES* > *1. Implied Duty of Good Faith and Fair Dealing*

---

**MB2300A.143Insurer Entitled to Consider Own Interests**。

**[1]  Instruction**

[ *PLAINTIFF'S/DEFENDANT'S*

| PROPOSED INSTR. NO. _____

**An insurer is not required to pay every claim presented to it. Besides the duty to deal fairly with the insured, the insurer also has a duty to its other policyholders and to its stockholders not to waste its reserves through the payment of meritless claims.**

*Authorities: Love v. Fire Ins. Exch. (1990) 221 Cal.App.3d 1136, 1148–1149, 271 Cal.Rptr. 246; Paulfrey v. Blue Chip Stamps (1983) 150 Cal.App.3d 187, 199, 197 Cal.Rptr. 501; Austero v. National Cas. Co. (1978) 84 Cal.App.3d 1, 30, 148 Cal.Rptr. 653.*

**[2]  Use of Instruction**

This instruction should be used if the insurer has refused to pay, due to a coverage dispute. The phrase "meritless claims" has nothing to do with any underlying lawsuit against the insured. It refers instead to the insured's claim for coverage.

**[3]  Comment**

Because only unreasonable withholding of benefits due constitutes bad faith [*California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54, 221 Cal.Rptr. 171; *Austero v. National Cas. Co.* (1978) 84 Cal.App.3d 1, 31–32, 148 Cal.Rptr. 653], the mere fact that an insurer did not pay in any particular instance does not impose strict liability for breach of the implied covenant. The claim may not have been covered, and an insurer has no obligation to pay non-covered claims, even if payment would have been in the best interests of the insured [*Love v. Fire Ins. Exch.* (1990) 221 Cal.App.3d 1136, 1149, 271 Cal.Rptr. 246; *Native Sun Inv. Group v. Ticor Title Ins. Co.* (1987) 189 Cal.App.3d 1265, 1278, 235 Cal.Rptr. 34]. Moreover, if the insurer were to ignore the interests of its other policyholders and its stockholders, it would quickly dissipate its reserves, insurance rates would rise, and the insurer would eventually go out of business [*Paulfrey v. Blue Chip Stamps* (1983) 150 Cal.App.3d 187, 199, 197 Cal.Rptr. 501; *Austero v. National Cas. Co.* (1978) 84 Cal.App.3d 1, 30, 148 Cal.Rptr. 653].

California Forms of Jury Instruction
Copyright 2014, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

---

* Revised by Susan E. Firtch. Ms. Firtch is a partner at Burnham Brown in Oakland, California.

# LexisNexis(R) Forms FORM 485a-76-3
Litigation
Jury Instruction
U.S. District Court, All Districts

---

**76-3 Interest in Outcome**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his testimony.

---

Authority

**United States Supreme Court:** *Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).*

**Second Circuit:** *Duke Laboratories, Inc. v. United States, 222 F. Supp. 400 (D. Conn. 1963).*

---

**Comment**

The foregoing instruction consists of four parts: the observation that a witness may have an interest in the outcome; the warning that such an interest creates a motive to testify falsely; the admonition to consider the effect of a witness's interest on his testimony; and the balancing instruction that an interested witness can nevertheless tell the truth.

A witness's interest in the outcome of a case, like bias or prejudice may be an essential factor in determining credibility. In fact, it has been referred to as a "hornbook proposition" that personal motives must be factored in. It is wise to remind the jury, however, that personal interest does not necessarily mean false testimony and they should use their own good judgment.

Again, counsel are urged to consider weaving relevant facts into the requests to charge, by adding an appropriate sentence after the first paragraph. For example, counsel might request language to the following effect:

In this case, Smith testified that he did not inform the defendant that the source of Smith's tip to buy stock was based on inside information. You may consider in deciding whether to credit this testimony that had Smith testified that he had disclosed this fact, Smith would have exposed himself to further criminal charges of conspiracy to violate the securities laws.

All of the relevant pattern jury instructions include interest in the outcome as a factor in determining credibility.

Modern Federal Jury Instructions-Civil
Copyright 2014, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

*Draft Instruction Exchanged 6/12/14*

## Duties of Excess Insurer (SPECIAL)

Everest had a contract to provide the ACWA/JPIA and its members with an "excess" layer of insurance coverage for losses over $40 million (the policy limits of the lower layers of insurance).  Excess insurance policies are much less costly than primary insurance policies because they subject the excess insurer to less risk and impose substantially less obligations on the excess insurer.  The Everest excess insurance contract did not include any obligation to defend YLWD in the underlying litigation.

Support: *Olympic Ins. Co. v. Emp'rs Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 598, 600 (1981) (holding excess insurer's obligations did not arise where primary policies were not exhausted); *Cmty. Redev. Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th 329, 339 (1996) (excess policy does not provide coverage "until all of the primary insurance has been exhausted."); *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1505 (9th Cir. 1994) (excess coverage does not attach until a primary insurer has exhausted coverage by paying the full amount of its policy limits).

*Draft Exchanged June 12, 2014*

## Fraudulent or Collusive Judgment or Settlement (SPECIAL)

Everest asserts that the settlement between YLWD and Plaintiffs and the resulting judgment were tainted by fraud or collusion and therefore unenforceable against Everest.

To establish fraud and collusion in this context, Everest must show the following:

1. A combination, conspiracy, or concern of action;

2. Between two or more persons;

3. For fraudulent, deceitful, or collusive purposes.

Everest does not need to prove a misrepresentation of material fact to establish collusion.

If you find that YLWD colluded with Plaintiffs, directly or through their counsel, then Everest cannot be held liable for the settlement and resulting judgment in the underlying state court action and that judgment should be given no effect.

Source: *Andrade v. Jennings*, 54 Cal. App. 4th 307, 327 (1997); *Span, Inc. v. Assoc. Int'l. Ins. Co.*, 227 Cal. App. 3d 463, 484 (1991).

*Draft Exchanged June 12, 2014*

<u>Fraud or Collusion</u> (SPECIAL)

Fraud or collusion may be inferred from the totality of the circumstances and need not be proven by direct evidence.  There is no single definition of fraud or collusion.  Thus, intent can be inferred from statements and conduct.

<u>Source</u>: *See Span, Inc. v. Associated Int'l Ins. Co.*, 227 Cal. App. 3d 463, 484 (1991) (noting various definitions of fraud and collusion and stating that "what constitutes collusion will differ with each fact situation.")

*Draft Exchanged June 12, 2014*

<u>Fraudulent or Collusive Judgment or Settlement—Factors to Consider (SPECIAL)</u>

In determining whether the settlement between Plaintiffs and YLWD and the resulting judgment were the product of fraud or collusion you may consider any of the following factors:

1. whether the agreement and resulting judgment involved a covenant not to execute.

2. whether YLWD failed to present valid defenses to liability or damages in the reference proceeding;

3. whether YLWD and Plaintiffs concealed the existence of and/or the substance of negotiations leading up to their settlement and the ultimate terms of the settlement from Everest;

4. whether YLWD or its attorneys had an opportunity to profit financially from the judgment entered against it in this later action against Everest;

5. whether the settlement and the damages awarded in the resulting reference judgment are unreasonably high in comparison with damages awarded in similar cases;

6. whether the insured and underlying plaintiff took steps to ensure that any judgment would be covered by applicable insurance when it would otherwise have been excluded.

This list is not exclusive and you may consider any additional evidence.

<u>Source</u>:

<u>Factor 1</u>: *Andrade v. Jennings*, 54 Cal. App. 4th 307, 333 n.20 (1997); *Wright v. Fireman's Fund Ins. Cos.*, 11 Cal. App. 4th 998, 1023 (1992) ("With no personal exposure the insured has no incentive to contest liability or damages. To the contrary, the insureds' best interests are served by agreeing to damages in any amount as long as the agreement requires the insured will not be personally responsible for those damages.").

<u>Factor 2</u>: *Andrade*, 54 Cal. App. 4th at 333, n. 19, n. 20; *see also Span, Inc. v. Assoc. Int'l, Ins. Co.,* 227 Cal. App. 3d 463, 484 (1991) ("However, the transcript indicates the trial also lacked the attributes of an adversary proceeding in a case which involved damages in excess of $1 million.")

<u>Factor 3</u>: *Andrade*, 54 Cal. App. 4th at 333.

<u>Factor 4</u>: *Ekeh v. Hartford Fire Ins. Co.*, 39 F. Supp. 2d 1216, 1221 (1999) (noting that a pay-back provision allowing the insured to recoup money from a judgment against the insurer indicates collusion).

<u>Factor 5</u>: *Andrade*, 54 Cal. App. 4th at 332-33, 335.

*Draft Exchanged June 12, 2014*

<u>Factor 6:</u> *See Carlson v. Century Sur. Co.*, No. C 1100356 SI, 2012 WL 1029662 (N.D. Cal. Mar. 26, 2012) (finding that a settlement and resulting judgment were the product of fraud where the insured provided the underlying plaintiff with knowingly false declarations that ensured coverage for the plaintiff's judgment).

*Draft Exchanged June 12, 2014*

<u>Genuine Dispute Defense to Claims of Insurer Bad Faith</u>

     An insurer denying or delaying payment of policy benefits due to the existence of a genuine dispute as to the existence of coverage liability is not liable in bad faith, even if it may have breached the contract.

<u>Source</u>: *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001).

*Draft Exchanged June 12, 2014*

### Implied Covenant of Good Faith and Fair Dealing Runs Both Ways (SPECIAL)

There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.  This covenant binds the insured as well as the insurer.

An insured's duty of good faith and fair dealing depends on the nature and purposes of the underlying contracts and the insurer's legitimate expectations.  Collusive assistance in the procurement of a judgment is a breach of the insured's covenant of good faith and fair dealing.

<u>Support</u>: Croskey, et al., California Practice Guide: Insurance Litigation, 12A-F § 12:119 (The Rutter Group); *Andrade v. Jennings*, 54 Cal. App. 4th 307, 327-28 (1997); *Span, Inc. v. Associated Intern. Ins. Co., Inc.*, 227 Cal. App. 3d 463, 484-485 (1991); *Kaiser Found. Hosp. v. North Star Reinsurance Corp.*, 90 Cal. App. 3d 786 (1979).

*Draft Exchanged June 12, 2014*

<u>Insurers Duty to Other Policyholders (SPECIAL)</u>

An insurer is not required to pay every claim presented to it. Besides the duty to deal fairly with the insured, the insurer also has a duty to its other policyholders and to the stockholders (if it is such a company) not to dissipate its reserves through the payment of meritless claims. Such a practice inevitably would prejudice the insurance seeking public because of the necessity to increase rates, and would finally drive the insurer out of business.

<u>Source</u>: *Austero v. National Cas. Co.*, 84 Cal. App. 3d 1, 30 (1978), *overruled on other grounds in Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 824 fn. 7 (1979).

*Draft Exchanged June 12, 2014*

## Legal Effect of a Covenant Not to Execute (SPECIAL)

The legal effect of Plaintiffs' agreement not to execute on the assets of YLWD was to release YLWD from all liability to Plaintiffs, because it left Plaintiffs with no remedy against YLWD. This is called a covenant not to execute.

California law recognizes that a covenant not to execute leaves the insured with no incentive to contest liability or damages. The existence of a covenant not to execute does not, by itself, establish fraud or collusion between YLWD and Plaintiffs, but it is one factor for you to consider in determining whether YLWD's and Plaintiffs' settlement and the resulting judgment were the product of fraud or collusion between Plaintiffs and YLWD, directly or through their attorneys.

Source: *Smith v. State Farm Mut. Auto. Ins. Co.,* 5 Cal. App. 4th 1104, 1114 (1992); *Wright v. Fireman's Fund Ins. Cos.*, 11 Cal. App. 4th 998, 1015 (1992).

*Draft Exchanged June 19, 2014*

### NO DUPLICATIVE DAMAGES [SPECIAL]

Some items of damages recoverable for breach of contract, such as unpaid policy benefits or damages for harm that at the time the contract was made both parties knew or could reasonably have foreseen was likely to occur in the ordinary course of events as a result of a breach of contract, may also be recoverable for breach of the implied obligation of good faith and fair dealing. However, you may not award any such item of damages twice. A plaintiff is not entitled to a double recovery or duplicative damages. Any such item of damages may be awarded only once.

Authority: *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 701-05 (2009); *see also* CACI 3934 Damages on Multiple Legal Theories.

*Draft Exchanged June 12, 2014*

<u>Plaintiffs Are Subject to the Same Defenses as YLWD [SPECIAL]</u>

Plaintiffs are subject to the same defenses as YLWD.  If YLWD is barred from seeking indemnification under its insurance policy with Everest then Plaintiffs also are barred from seeking relief from Everest.

<u>Source</u>: *See* Cal. Ins. Code. § 11580(b)(2) (judgment creditor is "subject to [the policy's] terms and limitations"); *Marie Y. v. Gen. Star Indem. Co.*, 110 Cal. App. 4th 928, 955 (2003) (assignees stand in the shoes of the insured and are subject to all defenses applicable to the insured).

*Draft Exchanged June 12, 2014*

<u>Insured's Settlement Without Insurer's Consent (SPECIAL)</u>

Under Everest's policy with ACWA, YLWD is prohibited from assuming an obligation or attempting to settle or otherwise dispose of a claim or suit without Everest's consent.  If you find that YLWD

1.  assumed an obligation or attempted to settle or otherwise dispose of the underlying litigation

2.  without Everest's consent

then YLWD has breached its obligations under the policy and Everest is not required to pay for the settlement and subsequent judgment obtained pursuant to the settlement.

Support: Everest Policy § IV(3)(7), IV(4); *Low v. Golden Eagle Ins. Co.*, 110 Cal. App. 4th 1532, 1546 (2003) (no showing of prejudice is required even "where the insured tenders the defense and *then* negotiates a settlement on its own, leaving the insurer in the dark").

*Draft Exchanged June 17, 2014*

## Breach of No Action Clause (SPECIAL)

To bring suit against Everest under Everest's policy with ACWA, Plaintiffs must show that they have a final judgment after an actual trial. The term "judgment after actual trial" assumes a contest of issues leading up to a final determination by court or jury, in contrast to resolving these same issues by agreement of the parties.  If you find that the reference judgment was not a final judgment after an actual trial, then Everest is not required to pay for the reference judgment.

Support: *Wright v. Fireman's Fund Ins. Cos.*, 11 Cal. App. 4th 998, 1015 (1992); *Rose v. Royal Ins. Co.*, 2 Cal. App. 4th 709, 716 (1991).

*Draft Exchanged June 17, 2014*

<u>Legally Obligated to Pay</u>

Everest is only obligated to pay "damages" that YLWD "becomes legally obligated to pay."  If you find that YLWD is not legally obligated to pay the reference judgment because of any of Everest's other defenses, then Everest is not liable for the reference judgment.

<u>Source</u>:  Everest Policy §§ I.A.1, V.18.



*Draft Exchanged June 17, 2014*

<u>No Duty to Pay "Other Damages" (SPECIAL)</u>

       Under its policy with YLWD, Everest is obligated to pay on behalf of YLWD the "ultimate net loss" in excess of the underlying limits of insurance.  "Ultimate Net Loss" is defined under the policy as "the total sum . . . that the insured becomes legally obligated to pay as damages under this policy . . . ."  In the underlying litigation, Plaintiffs were awarded a category of "other damages" which Plaintiffs contend was to compensate for their inconvenience.  These "other damages" were undefined, unsupported by the evidence, and not the type of damages recoverable in inverse condemnation actions under California law. Thus, these "other damages" are not legitimate damages covered under the definition of "ultimate net loss" in the Everest policy, and Everest is therefore not obligated to pay for the "other damages" awarded in the reference judgment.

       <u>Source</u>:  Everest Policy § V(18).

*Draft Exchanged June 17, 2014*

<u>Insured's Duties Under Policy (SPECIAL)</u>

As part of its contract with Everest, YLWD was required to:

1. immediately send Everest copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

2. cooperate with Everest in the investigation or settlement of the claim or defense against the suit;

3. take all necessary steps to protect Everest's interests;

4. cooperate with all underlying insurers as required by their terms and conditions;

5. not at any time make or authorize  an admission of liability or attempt to settle or otherwise dispose of any claim or suit without Everest's consent; or

6. make a voluntary payment, assume any obligation, or incur any expense other than for first aid, without our consent.

<u>Support</u>: Everest Policy § IV(3).