**EXHIBIT 1**

**Plaintiffs' Disputed Jury Instruction No. 1**

**TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

You should decide the case as to each Plaintiff separately.  Unless otherwise stated, the instructions apply to all parties.

**Authority**: 9th Circuit Model Civil Instruction 1.5

### Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 1

Everest objects to Plaintiffs' Disputed Jury Instruction No. 1 on the basis that all Plaintiffs have presented their case jointly from its initiation and have not distinguished among the Plaintiffs.   Plaintiffs have made joint demands for payment since July 2012 (stating that they had an allocation agreement among themselves), filed a Joint Opposition to Everest's Motion for Summary Judgment, filed a Joint Memorandum of Contentions of Fact and Law, and have never otherwise indicated any distinction among the Plaintiffs.

Further, as purported judgment creditors and assignees, Plaintiffs legal rights are no greater than those of YLWD's.  This instruction is likely to confuse the jury, and may lead the jury to evaluate the case against Plaintiffs without consideration of YLWD's actions, which would be incorrect under California law. See Cal. Ins. Code § 11580(b)(2) (judgment creditor is "subject to [the policy's] terms and limitations"); *Marie Y. v. Gen. Star Indem. Co.*, 110 Cal. App. 4th 928, 955 (2003) (assignees stand in the shoes of the insured and are subject to all defenses applicable to the insured).

**Plaintiffs' Disputed Jury Instruction No. 2**

## ASSIGNMENT NOT CONTESTED

Plaintiffs were not parties to the original contract. However, they may bring a claim for breach of contract because YLWD transferred the rights under the contract to Plaintiffs.  This transfer is referred to as an "assignment."

**Authority:** Judicial Council of California Civil Jury Instructions ("CACI") 327

**Everest's Alternative to Plaintiffs' Disputed Jury Instruction No. 2**

## ASSIGNMENT CONTESTED

Plaintiffs were not parties to the original contract. However, Plaintiffs may bring a claim for breach of the contract if they prove that YLWD transferred its rights under the contract to Plaintiffs. This transfer is referred to as an "assignment."

Plaintiffs must prove that YLWD intended to transfer its contract rights to Plaintiffs.  In deciding YLWD's intent, you should consider the entire transaction and the conduct of the parties to the assignment.

**Authority**: CACI 326

### Everest's Reasoning for its Alternative to Plaintiffs' Disputed Jury Instruction No. 2

Everest contends that YLWD did not properly assign its Policy rights to Plaintiffs in the Global Agreement.  The Global Agreement only references an assignment of rights against AIG.  In 2013, Plaintiffs and YLWD proffered a partially executed addendum to the Global Agreement purportedly assigning to Plaintiffs YLWD's rights against Everest, which Everest does not believe was an effective assignment.

**Plaintiffs' Disputed Jury Instruction No. 3**

**AFFIRMATIVE DEFENSE—INSURANCE POLICY EXCLUSION**

Everest claims that the Judgment is not covered because it is specifically excluded under the policy.  To succeed, Everest must prove that the Judgment resulted from deliberate, decision-making conduct by the governing body of the Yorba Linda Water District.

**Authority**: CACI 2303

**Everest's Alternative to Plaintiffs' Disputed Jury Instruction No. 3**

**AFFIRMATIVE DEFENSE—INSURANCE POLICY EXCLUSION**

Everest is not liable for the reference judgment if coverage is excluded under the policy. Everest claims the reference judgment is specifically excluded because YLWD's liability

1. arises out of YLWD's delivery or non-delivery of water or electricity, based on any decision made by YLWD's governing body with respect to either obtaining a supply of water or electricity for, or allocating the available supply of water or electricity, among YLWD's water or electricity users; or

2. arises out of or is in connection with inverse condemnation, to the extent that such liability is alleged to, or does, result from deliberate, decision-making conduct by the governing body of YLWD.

Everest has the burden of proving these exclusions by a preponderance of evidence. Any defense applicable to YLWD applies to Plaintiffs.

**Authority:** CACI 2303 (Modified); *see also* Memorandum of Liability Coverage ("MOLC") Exclusions D and R.

### Everest's Reasoning for Its Alternative to Plaintiffs' Disputed Jury Instruction No. 3

Everest's version of CACI 2303 directly quotes the language used in Exclusions D and R of the MOLC.  Plaintiffs have not explained their objections to this alternative version of the instruction.  Plaintiffs version does not include one of the Exclusions, and misstates the other Exclusion.

Everest's instruction also clarifies that the burden of proof is preponderance of the evidence.

**Plaintiffs' Disputed Jury Instruction No. 4**

**PLAINTIFFS' SPECIAL INSTRUCTION NO. 1**

When an excess insurer is on notice that the underlying insurers have denied the insured's defense, an increased duty to inquire of the insured's claim arises.

**Authority:** *Span, Inc. v. Associated Internat. Ins. Co.* 227 Cal. App.3d 463, 483 (1991) ("Where the excess insurer is on notice the primary insurer is insolvent, an increased duty to inquire arises because the ordinary presumption that the primary carrier will 'provide an experienced defense' [citations omitted] no longer applies. Because Associated failed to make prudent inquiry, it cannot now complaint it received proper notice.")

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 4**

Plaintiffs' Special Instruction is an inaccurate statement of the law and is inapposite in a case where—as here—the parties insert false information into the court file and the insured's attorney writes to the insurer that it can "rest assured" that she will keep it "apprised of all further developments."

*Span* states that an excess insurer has an increased duty to inquire where the primary insurer is *insolvent*. *Span*, 227 Cal. App. 3d at 483. Here, the primary insurer was not insolvent, and the insured was being represented by Ms. Bauermeister, a seemingly experienced attorney hired by ACWA/JPIA. Neither Ms. Bauermeister—nor the insured—ever asked for Everest's assistance in the underlying action in contributing to a settlement demand or otherwise assisting in YLWD's defense.

Plaintiffs' instruction is particularly inappropriate here where YLWD and Plaintiffs concealed their settlement negotiations and the terms and existence of the Global Agreement by, among other things, making material misrepresentations in state court. Plaintiff State Farm's attorney, with the agreement of YLWD and some plaintiff counsel, made material misrepresentations to the State Court in an ex parte request to continue the trial date so that the parties would have more time to complete the settlement agreement. Rather than disclose that the parties were engaged in settlement negotiations, counsel misrepresented in a court pleading that he needed more time to depose expert witnesses. In fact, the parties were focused on completing the settlement.

This was all done while Ms. Bauermeister assured all insurers that they could "rest assured" that she would keep them "apprised of all further developments." When Everest was notified of the underlying action in February 2011, Everest's claims handler Michael Haliskoe asked Ms. Bauermeister to send him all prior and future status reports. Ms. Bauermeister agreed to this request and thereafter sent numerous lengthy and detailed status reports purporting to keep Everest apprised of the underlying action. Ms. Bauermeister did not disclose the ongoing settlement negotiations, the existence and terms of the Global Agreement, or the reference proceeding.

Though Plaintiffs claim that Everest could have figured out the details of the reference proceeding by monitoring the docket, this argument turns the policy on its head and ignores that Everest justifiably relied on YLWD's representations. Everest's policy required YLWD to "[i]mmediately send [Everest] copies of any demands . . . received in connection with the claim or 'suit,'" "[c]ooperate with

14

[Everest] in the investigation or settlement of the . . . defense against the 'suit,'" and "[t]ake all necessary steps to protect . . . [Everest's] interests." (Policy §§ IV.3.c.(1),(3),(5).)    To require Everest to monitor the docket in the face of representations by the insured that the insured would keep Everest informed and, absent a request from YLWD to participate in the underlying action, would nullify important Policy obligations and YLWD's duty of good faith.

**Plaintiffs' Disputed Jury Instruction No. 5**

**PLAINTIFFS' SPECIAL INSTRUCTION NO. 2**

Everest's knowledge of the *Itani* action and the underlying insurers' coverage denial placed it on inquiry notice of the contents of the superior court file in the *Itani* action.

**Authority**: *Span, Inc. v. Associated Internat. Ins. Co.*  227 Cal. App.3d 463, 483 (1991) ("We therefore conclude, as a matter of law, that Associated's knowledge *Ledesma* action and insolvency of the primary carrier placed it on inquiry notice of the contents of the superior court file in the *Ledesma* action.  Simple review thereof would have alerted Associated that Ledesma had filed a statement of damages seeking $1 million in general and $1 million in special damages, a demand for settlement in the amount of $650,000, and that Ledesma's damages had been described as 'extensive' in an arbitration conference.").

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 5**

Plaintiffs' Special Instruction No. 2 is redundant of Special Instruction No. 1 and objectionable for the same reasons.  Plaintiffs' Special Instruction is an inaccurate statement of the law and is inapposite in a case where—as here—the parties insert false information into the court file and the insured's attorney writes to the insurer that it can "rest assured" that she will keep it "apprised of all further developments."

*Span* states that an excess insurer has an increased duty to inquire where the primary insurer is *insolvent*.  *Span,* 227 Cal. App. 3d at 483.  Here, the primary insurer was not insolvent, and the insured was being represented by Ms. Bauermeister, a seemingly experienced attorney hired by ACWA/JPIA.  Neither Ms. Bauermeister—nor the insured—ever asked for Everest's assistance in the underlying action in contributing to a settlement demand or otherwise assisting in YLWD's defense.

Plaintiffs' instruction is particularly inappropriate here where YLWD and Plaintiffs concealed their collusive settlement negotiations and the terms and existence of the Global Agreement by, among other things, making material misrepresentations in state court.  Plaintiff State Farm's attorney, with the agreement of YLWD and some plaintiff counsel, made material misrepresentations to the State Court in an ex parte request to continue the trial date so that the parties would have more time to complete the settlement agreement.  Rather than disclose that the parties were engaged in settlement negotiations, counsel misrepresented in a court pleading that he needed more time to depose expert witnesses.  In fact, the parties were focused on completing the settlement.

This was all done while Ms. Bauermeister assured all insurers that they could "rest assured" that she would keep them "apprised of all further developments."  When Everest was notified of the underlying action in February 2011, Everest's claims handler Michael Haliskoe asked Ms. Bauermeister to send him all prior and future status reports.   Ms. Bauermeister agreed to this request and thereafter sent numerous lengthy and detailed status reports purporting to keep Everest apprised of the underlying action.   Ms. Bauermeister did not disclose the settlement negotiations, the existence and terms of the Global Agreement, or the reference proceeding.

Though Plaintiffs claim that Everest could have figured out the details of the reference proceeding by monitoring the docket, this argument turns the policy on its head and ignores that Everest justifiably relied on YLWD's representations.

Everest's policy required YLWD to "[i]mmediately send [Everest] copies of any demands . . . received in connection with the claim or 'suit,'" "[c]ooperate with [Everest] in the investigation or settlement of the . . . defense against the 'suit,'" and "[t]ake all necessary steps to protect . . . [Everest's] interests." (Policy §§ IV.3.c.(1),(3),(5).)   ''To require Everest to monitor the docket in the face of representations by the insured that the insured would keep Everest informed and, absent a request from YLWD to participate in the underlying action, would nullify important Policy obligations and YLWD's duty of good faith.

## Plaintiffs' Disputed Jury Instruction No. 6

## JUDGMENT CREDITOR'S ACTION AGAINST INSURER—ESSENTIAL FACTUAL ELEMENTS

Plaintiffs claim that Everest must pay [all or part of] a judgment against YLWD. To establish this claim, Plaintiffs must prove all of the following:

1 That Plaintiffs brought a lawsuit for property damage against YLWD and a judgment was entered against YLWD;

2 That [all or part of] YLWD's liability under the judgment is covered by an insurance policy with Everest; and

3 The amount of the judgment [covered by the policy].

**Authority**: CACI 2360

**Everest's Alternative to Plaintiffs' Disputed Jury Instruction No. 6**

## JUDGMENT CREDITOR'S ACTION AGAINST INSURER—ESSENTIAL FACTUAL ELEMENTS

Plaintiffs claim that Everest must pay part of a judgment against YLWD.  To establish this claim, Plaintiffs must prove all of the following by a preponderance of the evidence:

1 That Plaintiffs brought a lawsuit for property damage against Everest and a judgment was entered against YLWD;

2 That part of YLWD's liability under the judgment is covered by an insurance policy with Everest; and

3 The amount of the judgment covered by the policy.

Plaintiffs' suit is subject to all of Everest's defenses.

**Authority:** CACI 2360 (Modified); *see* Cal. Ins. Code. § 11580(b)(2) (judgment creditor is "subject to [the policy's] terms and limitations"); *Hall v. Travelers Ins. Co.*, 15 Cal. App. 3d 304, 308 (1971) ("In a suit by an injured party who has obtained a judgment against its insured, an insurer may assert defenses based upon a breach by the insured of a condition of the policy . . . .").

### Everest's Reasoning for its Alternative to Plaintiffs' Disputed Jury Instruction No. 6

Everest's version of CACI 2360 is modified in that the following language is added at the bottom of the form instruction: "Plaintiffs' suit is subject to all of Everest's defenses."  This is an accurate statement of the law as established by the authority cited above.  It will ensure that the jury is not confused as to whether defenses that would bar YLWD from recovering under the Policy would also bar Plaintiffs' recovery.

Everest's version of CACI 2360 also is modified to clarify that the burden of proof is preponderance of the evidence.

**Plaintiffs' Disputed Jury Instruction No. 7**

**IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING EXPLAINED**

In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement.

To fulfill its implied obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests.

To breach the implied obligation of good faith and fair dealing, an insurance company must, unreasonably or without proper cause, act or fail to act in a manner that deprives the insured of the benefits of the policy. It is not a mere failure to exercise reasonable care. However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.

**Authority**: CACI 2330

**Everest's Alternative to Plaintiffs' Disputed Jury Instruction No. 7**

## IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING EXPLAINED

In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement. However, the implied obligation of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

To fulfill its implied obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests.

To breach the implied obligation of good faith and fair dealing, an insurance company must, unreasonably or without proper cause, act or fail to act in a manner that deprives the insured of the benefits of the policy. It is not a mere failure to exercise reasonable care.  A breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment. There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.  However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.

**Authority:** CACI 2330, 325 (Breach of Covenant of Good Faith and Fair Dealing—Essential Factual Elements); *see also Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006).

### Everest's Reasoning for its Alternative to Plaintiffs' Disputed Jury Instruction No. 7

Everest's alternative instruction is an accurate statement of the law that merely combines CACI 2330, language cited in the Sources and Authority section to CACI 2330, and CACI 325. The following language added to the end of first full paragraph of the instruction is a direct quote from CACI 325 titled Breach of the Covenant of Good Faith and Fair Dealing—Essential Factual Elements: "However, the implied obligation of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract."  And the following language is a near direct quote, save for some grammatical modifications, from *Century Surety Co.*, 139 Cal. App. 4th at 949, which is cited in the Sources and Authority section of CACI 2330:

> Thus, a breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment. There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.
> (Internal citations omitted)

Everest's instruction provides a more complete explanation of the duty of good faith and fair dealing based on the facts and issues of this case.

**Plaintiffs' Disputed Jury Instruction No. 8**

**REFUSAL TO ACCEPT REASONABLE SETTLEMENT WITHIN POLICY LIMITS**

Plaintiffs claim that they were harmed by Everest's breach of the obligation of good faith and fair dealing because Everest failed to accept a reasonable settlement demand in a lawsuit against YLWD. To establish this claim, Plaintiffs must prove all of the following:

1. That Plaintiffs brought a lawsuit against YLWD for a claim that was covered by Everest's insurance policy;

2. That Everest failed to accept a reasonable settlement demand for an amount within policy limits; and

3. That a monetary judgment was entered against YLWD for a sum greater than the policy limits.

"Policy limits" means the highest amount available under the policy for the claim against YLWD.

A settlement demand is reasonable if Everest knew or should have known at the time the settlement demand was rejected that the potential judgment was likely to exceed the amount of the settlement demand based on Plaintiffs' injuries or loss and YLWD's probable liability.

**Authority**: CACI 2334

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 8**

Everest objects to the duty to settle instruction as irrelevant, misleading and unnecessary and it will confuse the jury.

Further, Everest was never asked by ACWA/YLWD to contribute any money to a settlement of the *Itani* litigation or participate in the *Itani* litigation prior to the entry of judgment on July 13, 2012.  (May 1, 2013 Bauermeister Depo. 46:8-12). Accordingly, this instruction will serve only to mislead and confuse the jury.

An excess insurer has no duty to settle until there has been exhaustion by the primary and underlying layers.  In *Valentine v. Aetna Ins. Co.*, 564 F.2d 292 (9th Cir. 1977), the Ninth Circuit held that "[u]nder California law an excess carrier is not obligated to contribute to a settlement until the limit of the primary carrier's coverage has been exhausted."  *Id.* at 296 (internal citations omitted).  This position has been widely adopted.  *See Highlands Ins. Co. v. Cont'l Cas. Co.*, 64 F.3d 514, 519 (9th Cir. 1995) (holding "Highlands never had a duty or right to participate in the negotiations" where the underlying policies had not been exhausted).

**Plaintiffs' Disputed Jury Instruction No. 9**

# FACTORS TO CONSIDER IN EVALUATING INSURER'S CONDUCT

In determining whether [*name of defendant*] acted unreasonably or without proper cause, you may consider whether the defendant did any of the following:

[(a) Misrepresented to [*name of plaintiff*] relevant facts or insurance policy provisions relating to any coverage at issue.]

[(b) Failed to acknowledge and act reasonably promptly after receiving communications about [*name of plaintiff*]'s claim arising under the insurance policy.]

[(c) Failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under its insurance policies.]

[(d) Failed to accept or deny coverage of claims within a reasonable time after [*name of plaintiff*] completed and submitted proof-of-loss requirements.]

[(e) Did not attempt in good faith to reach a prompt, fair, and equitable settlement of [*name of plaintiff*]'s claim after liability had become reasonably clear.]

[(f) Required [*name of plaintiff*] to file a lawsuit to recover amounts due under the policy by offering substantially less than the amount that [he/she/it] ultimately recovered in the lawsuit, even though [*name of plaintiff*] had made a claim for an amount reasonably close to the amount ultimately recovered.]

[(g) Attempted to settle [*name of plaintiff*]'s claim for less than the amount to which a reasonable person would have believed he or she was entitled by referring to written or printed advertising material accompanying or made part of the application.]

[(h) Attempted to settle the claim on the basis of an application that was altered without notice to, or knowledge or consent of, [*name of plaintiff*], [his/her/its] representative, agent, or broker.]

[(i) Failed, after payment of a claim, to inform [*name of plaintiff*] at [his/her/its] request, of the coverage under which payment was made.]

[(j) Informed [*name of plaintiff*] of its practice of appealing from arbitration awards in favor of insureds or claimants for the purpose of forcing them to accept settlements or compromises less than the amount awarded in arbitration.]

31

[(k) Delayed the investigation or payment of the claim by requiring [*name of plaintiff*], [or [his/her] physician], to submit a preliminary claim report, and then also required the submission of formal proof-of-loss forms, both of which contained substantially the same information.]

[(l) Failed to settle a claim against [*name of plaintiff*] promptly once [his/her/its] liability had become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.]

[(m) Failed to promptly provide a reasonable explanation of its reasons for denying the claim or offering a compromise settlement, based on the provisions of the insurance policy in relation to the facts or applicable law.]

[(n) Directly advised [*name of plaintiff*] not to hire an attorney.]

[(o) Misled [*name of plaintiff*] as to the applicable statute of limitations, that is, the date by which an action against [*name of defendant*] on the claim had to be filed.]

[(p) Delayed the payment or provision of hospital, medical, or surgical benefits for services provided with respect to acquired immune deficiency syndrome (AIDS) or AIDS-related complex for more than 60 days after it had received [*name of plaintiff*]'s claim for those benefits, doing so in order to investigate whether [*name of plaintiff*] had the condition before obtaining the insurance coverage. However, the 60-day period does not include any time during which [*name of defendant*] was waiting for a response for relevant medical information from a healthcare provider.]

The presence or absence of any of these factors alone is not enough to determine whether [*name of defendant*]'s conduct was or was not unreasonable or without proper cause. You must consider [*name of defendant*]'s conduct as a whole in making this determination.

**Authority**: CACI 2337

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 9**

Everest objects to Plaintiffs' Disputed Jury Instruction No. 9 because the factors are either irrelevant based on the facts of this case or are not applicable to an excess insurer.  Because Plaintiffs have not indicated which factors they intend to include, Everest cannot respond substantively to any particular factors.

**Plaintiffs' Disputed Jury Instruction No. 10**

**SPECIAL BASED ON *EGAN***

An insurer has a duty to fully inquire into possible bases that might support the insured's claim; an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial.

**Authority**: *Egan v. Mut. of Omaha Ins. Co.,* 24 Cal.3d, 809, 819 (1979) ("To protect these interests it is essential that an insurer fully inquire into possible bases that might support the insured's claim. . . .  [A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial.").

## Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 10

Everest objects to this instruction as untimely, inaccurate, and redundant.  Everest
received this instruction at 2:30 p.m. on the day this filing was due, with no
forewarning or indication that Plaintiffs would be seeking a special instruction on
this subject and contrary to the agreed upon joint drafting schedule.   While
Plaintiffs' untimely submission makes it difficult for Everest to substantively
object to this instruction in a complete manner, Everest notes that Plaintiffs'
instruction is inaccurate.  *Egan* is a first-party disability insurance contract case
and it is inapplicable here.  The *Egan* Court made the statements that Plaintiffs
quote in the context of, and directly after, discussing the importance of disability
insurance: "As insurers are well aware, the major motivation for obtaining
disability insurance is to provide funds during periods when the ordinary source of
the insured's income—his earnings—has stopped.  The purchase of such insurance
provides peace of mind and security in the event the insured is unable to work. . . .
To protect these interests, it is essential that an insurer fully inquire into possible
bases that might support the insured's claim . . . ." *Egan,* 24 Cal. 3d at
819.  Indeed, *Egan* is cited as support for CACI 2332 which is titled Bad Faith
(*First Party*)—Failure to Properly Investigate Claim.  Further, Plaintiffs have cited
no authority that applies this standard to an excess insurer in a third-party liability
context.

Finally, this instruction is unnecessary and duplicative of CACI 2330 on the
Implied Obligation of Good Faith and Fair Dealing, which Plaintiffs have
requested and to which Everest has offered a modified version.

## Plaintiffs' Disputed Jury Instruction No. 11

## DAMAGES FOR BAD FAITH

If you decide that [*name of plaintiff*] has proved [his/her/its] claim against [*name of defendant*], you also must decide how much money will reasonably compensate [*name of plaintiff*] for the harm. This compensation is called "damages."

The amount of damages must include an award for all harm that was caused by [*name of defendant*], even if the particular harm could not have been anticipated.

[*Name of plaintiff*] must prove the amount of [his/her/its] damages. However, [*name of plaintiff*] does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by [*name of plaintiff*]:

1 [Mental suffering/anxiety/humiliation/emotional distress;] [and]

2 [The cost of attorney fees to recover the insurance policy benefits;] [and]

3 [*Insert other applicable item of damage.*]

[No fixed standard exists for deciding the amount of damages for [*insert item of mental or emotional distress*]. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.]

[To recover for future [*insert item of mental or emotional distress*], [*name of plaintiff*] must prove that [he/she] is reasonably certain to suffer that harm.]

[To recover attorney fees [*name of plaintiff*] must prove that because of [*name of defendant*]'s breach of the obligation of good faith and fair dealing it was reasonably necessary for [him/her/it] to hire an attorney to recover the policy benefits. [*Name of plaintiff*] may recover attorney fees [he/she/it] incurred to obtain policy benefits but not attorney fees [he/she/it] incurred for other purposes.]

**Authority**: CACI 2350

### Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 11

Everest objects to this instruction on the ground that there are no bad faith damages for the jury to determine.  The parties have agreed to bifurcate "*Brandt*" attorneys' fees, and Plaintiffs have stated that they are not seeking emotional distress damages.  Plaintiffs have not identified what other bad faith damages they would seek through this instruction.

## Plaintiffs' Disputed Jury Instruction No. 12

## PUNITIVE DAMAGES

If you find for the plaintiff, you may, but are not required to, award punitive damages.  The purposes of punitive damages are to punish a defendant and to deter similar acts in the future.  Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by [a preponderance of the evidence] [clear and convincing evidence] that punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff.  Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case.  You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case].

[In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.]

[Punitive damages may not be awarded against.] [You may impose punitive damages against one or more of the defendants and not others, and may award different amounts against different defendants.] [Punitive damages may be

awarded even if you award plaintiff only nominal, and not compensatory, damages.]

**Authority:** 9th Circuit Model Civil Instruction 5.5

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 12**

Everest objects to the punitive damages instruction on the basis of notice, due process and a failure to plead facts to sustain a finding of punitive damages.  "A complaint must allege enough facts to state a claim to relief that is plausible on its face."  *GBTI, Inc. v. Ins. Co. of Pa.*, CV F 09-1173 LJO DLB, 2009 WL 2365409 at *3 (E.D. Cal. July 29, 2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)).

Here, Plaintiffs not only failed to request punitive damages in their prayer for relief and in their responses to Everest's interrogatories, but they also failed to plead sufficient facts to sustain a claim for punitive damages.  Instead, Plaintiffs pled only that Everest "acted unreasonably and without proper cause."  Plaintiffs did not advise Everest they intended to seek punitive damages until the Rule 16 discussions on the eve of trial.

California law permits an award of punitive damages where "[i]n an action for the breach of an obligation not arising from contract . . . it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."  Cal. Civ. Code § 3294.  Just pleading bad faith is insufficient to justify submitting a matter to a jury on the issue of punitive damages.

Courts will dismiss a claim for punitive damages for insufficiency even where bad faith is also alleged.  *See, e.g., Hawker v. Bancinsurance, Inc.*, CV F 12-1261 LJO SAB, 2013 WL 1281573 at *13 (E.D. Cal. Mar. 26, 2013) ("Bancinsure is correct that the complaint seeks punitive damages based on insufficient facts that Bancinsure acted with requisite malice, oppression or fraud to support punitive damages claims. The complaint's bad faith claims, without more, fail to substantiate misconduct subject to punitive damages. The complaint lacks sufficient allegations of Bancinsure's wrongdoing to impose punitive damages on Bancinsure"); *GBTI,* 2009 WL 2365409 at *8 (internal citations and quotations omitted) ("Although the bad faith claim includes a list of alleged breaches and claims mishandling issues, the bad faith claim lacks sufficient allegations to support punitive damages. The complaint includes platitudes and a conclusory paragraph which essentially summarizes section 3294 elements. The complaint lacks ultimate facts of defendants' purported malice, oppression or fraud. The complaint fails to put defendants on notice of alleged wrongdoing to impose punitive damages on them.").

Everest has been prejudiced by Plaintiffs' failure to put Everest on notice of the punitive damages they sought.  "Under California law, a punitive damages award must be based on three factors: (1) the reprehensibility of the defendant's conduct; (2) the amount of compensatory damages awarded to or actual harm suffered by the plaintiff; and (3) the defendant's financial condition."  *Behr v. Redmond*, 193 Cal. App. 4th 517, 535 (2011).  Everest did not conduct discovery on how Plaintiffs intend to prove these factors at trial.  And Everest would likely have sought summary adjudication of any punitive damages claim had Plaintiffs indicated in their pleadings, disclosures, or discovery responses that they were seeking these damages.  Finally, Everest's trial preparation was premised on the absence of a claim for punitive damages and would be disrupted by this late addition. *See Georges v. Novartis Pharm. Corp.*, CV 06-05207 SJO VBKX, 2013 WL 5217158 (C.D. Cal. Apr. 4, 2013).

**Plaintiffs' Disputed Jury Instruction No. 1**

**TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

You should decide the case as to each Plaintiff separately.  Unless otherwise stated, the instructions apply to all parties.

**Authority**: 9th Circuit Model Civil Instruction 1.5

## Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 1

Everest objects to Plaintiffs' Disputed Jury Instruction No. 1 on the basis that all Plaintiffs have presented their case jointly from its initiation and have not distinguished among the Plaintiffs.   Plaintiffs have made joint demands for payment since July 2012 (stating that they had an allocation agreement among themselves), filed a Joint Opposition to Everest's Motion for Summary Judgment, filed a Joint Memorandum of Contentions of Fact and Law, and have never otherwise indicated any distinction among the Plaintiffs.

Further, as purported judgment creditors and assignees, Plaintiffs legal rights are no greater than those of YLWD's.  This instruction is likely to confuse the jury, and may lead the jury to evaluate the case against Plaintiffs without consideration of YLWD's actions, which would be incorrect under California law. See Cal. Ins. Code § 11580(b)(2) (judgment creditor is "subject to [the policy's] terms and limitations"); *Marie Y. v. Gen. Star Indem. Co.*, 110 Cal. App. 4th 928, 955 (2003) (assignees stand in the shoes of the insured and are subject to all defenses applicable to the insured).

**Plaintiffs' Disputed Jury Instruction No. 2**

**ASSIGNMENT NOT CONTESTED**

Plaintiffs were not parties to the original contract. However, they may bring a claim for breach of contract because YLWD transferred the rights under the contract to Plaintiffs.  This transfer is referred to as an "assignment."

**Authority:** Judicial Council of California Civil Jury Instructions ("CACI") 327

**Everest's Alternative to Plaintiffs' Disputed Jury Instruction No. 2**

**ASSIGNMENT CONTESTED**

Plaintiffs were not parties to the original contract. However, Plaintiffs may bring a claim for breach of the contract if they prove that YLWD transferred its rights under the contract to Plaintiffs. This transfer is referred to as an "assignment."

Plaintiffs must prove that YLWD intended to transfer its contract rights to Plaintiffs.  In deciding YLWD's intent, you should consider the entire transaction and the conduct of the parties to the assignment.

**Authority**: CACI 326

### Everest's Reasoning for its Alternative to Plaintiffs' Disputed Jury Instruction No. 2

Everest contends that YLWD did not properly assign its Policy rights to Plaintiffs in the Global Agreement.  The Global Agreement only references an assignment of rights against AIG.  In 2013, Plaintiffs and YLWD proffered a partially executed addendum to the Global Agreement purportedly assigning to Plaintiffs YLWD's rights against Everest, which Everest does not believe was an effective assignment.

**Plaintiffs' Disputed Jury Instruction No. 3**

**AFFIRMATIVE DEFENSE—INSURANCE POLICY EXCLUSION**

Everest claims that the Judgment is not covered because it is specifically excluded under the policy.  To succeed, Everest must prove that the Judgment resulted from deliberate, decision-making conduct by the governing body of the Yorba Linda Water District.

**Authority**: CACI 2303

**Everest's Alternative to Plaintiffs' Disputed Jury Instruction No. 3**

**AFFIRMATIVE DEFENSE—INSURANCE POLICY EXCLUSION**

Everest is not liable for the reference judgment if coverage is excluded under the policy. Everest claims the reference judgment is specifically excluded because YLWD's liability

1. arises out of YLWD's delivery or non-delivery of water or electricity, based on any decision made by YLWD's governing body with respect to either obtaining a supply of water or electricity for, or allocating the available supply of water or electricity, among YLWD's water or electricity users; or

2. arises out of or is in connection with inverse condemnation, to the extent that such liability is alleged to, or does, result from deliberate, decision-making conduct by the governing body of YLWD.

Everest has the burden of proving these exclusions by a preponderance of evidence. Any defense applicable to YLWD applies to Plaintiffs.

**Authority:** CACI 2303 (Modified); *see also* Memorandum of Liability Coverage
("MOLC") Exclusions D and R.

### Everest's Reasoning for Its Alternative to Plaintiffs' Disputed Jury Instruction No. 3

Everest's version of CACI 2303 directly quotes the language used in Exclusions D
and R of the MOLC.  Plaintiffs have not explained their objections to this
alternative version of the instruction.  Plaintiffs version does not include one of the
Exclusions, and misstates the other Exclusion.

Everest's instruction also clarifies that the burden of proof is preponderance of the
evidence.

**Plaintiffs' Disputed Jury Instruction No. 4**

**PLAINTIFFS' SPECIAL INSTRUCTION NO. 1**

When an excess insurer is on notice that the underlying insurers have denied the insured's defense, an increased duty to inquire of the insured's claim arises.

**Authority:** *Span, Inc. v. Associated Internat. Ins. Co.* 227 Cal. App.3d 463, 483 (1991) ("Where the excess insurer is on notice the primary insurer is insolvent, an increased duty to inquire arises because the ordinary presumption that the primary carrier will 'provide an experienced defense' [citations omitted] no longer applies. Because Associated failed to make prudent inquiry, it cannot now complaint it received proper notice.")

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 4**

Plaintiffs' Special Instruction is an inaccurate statement of the law and is inapposite in a case where—as here—the parties insert false information into the court file and the insured's attorney writes to the insurer that it can "rest assured" that she will keep it "apprised of all further developments."

*Span* states that an excess insurer has an increased duty to inquire where the primary insurer is *insolvent*. *Span,* 227 Cal. App. 3d at 483. Here, the primary insurer was not insolvent, and the insured was being represented by Ms. Bauermeister, a seemingly experienced attorney hired by ACWA/JPIA. Neither Ms. Bauermeister—nor the insured—ever asked for Everest's assistance in the underlying action in contributing to a settlement demand or otherwise assisting in YLWD's defense.

Plaintiffs' instruction is particularly inappropriate here where YLWD and Plaintiffs concealed their settlement negotiations and the terms and existence of the Global Agreement by, among other things, making material misrepresentations in state court. Plaintiff State Farm's attorney, with the agreement of YLWD and some plaintiff counsel, made material misrepresentations to the State Court in an ex parte request to continue the trial date so that the parties would have more time to complete the settlement agreement. Rather than disclose that the parties were engaged in settlement negotiations, counsel misrepresented in a court pleading that he needed more time to depose expert witnesses. In fact, the parties were focused on completing the settlement.

This was all done while Ms. Bauermeister assured all insurers that they could "rest assured" that she would keep them "apprised of all further developments." When Everest was notified of the underlying action in February 2011, Everest's claims handler Michael Haliskoe asked Ms. Bauermeister to send him all prior and future status reports. Ms. Bauermeister agreed to this request and thereafter sent numerous lengthy and detailed status reports purporting to keep Everest apprised of the underlying action. Ms. Bauermeister did not disclose the ongoing settlement negotiations, the existence and terms of the Global Agreement, or the reference proceeding.

Though Plaintiffs claim that Everest could have figured out the details of the reference proceeding by monitoring the docket, this argument turns the policy on its head and ignores that Everest justifiably relied on YLWD's representations. Everest's policy required YLWD to "[i]mmediately send [Everest] copies of any demands . . . received in connection with the claim or 'suit,'" "[c]ooperate with

14

[Everest] in the investigation or settlement of the . . . defense against the 'suit,'" and "[t]ake all necessary steps to protect . . . [Everest's] interests." (Policy §§ IV.3.c.(1),(3),(5).)   To require Everest to monitor the docket in the face of representations by the insured that the insured would keep Everest informed and, absent a request from YLWD to participate in the underlying action, would nullify important Policy obligations and YLWD's duty of good faith.

**Plaintiffs' Disputed Jury Instruction No. 5**

**PLAINTIFFS' SPECIAL INSTRUCTION NO. 2**

Everest's knowledge of the *Itani* action and the underlying insurers' coverage
denial placed it on inquiry notice of the contents of the superior court file in the
*Itani* action.

16

**Authority**: *Span, Inc. v. Associated Internat. Ins. Co.*  227 Cal. App.3d 463, 483
(1991) ("We therefore conclude, as a matter of law, that Associated's knowledge
*Ledesma* action and insolvency of the primary carrier placed it on inquiry notice of
the contents of the superior court file in the *Ledesma* action.  Simple review thereof
would have alerted Associated that Ledesma had filed a statement of damages
seeking $1 million in general and $1 million in special damages, a demand for
settlement in the amount of $650,000, and that Ledesma's damages had been
described as 'extensive' in an arbitration conference.").

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 5**

Plaintiffs' Special Instruction No. 2 is redundant of Special Instruction No. 1 and objectionable for the same reasons. Plaintiffs' Special Instruction is an inaccurate statement of the law and is inapposite in a case where—as here—the parties insert false information into the court file and the insured's attorney writes to the insurer that it can "rest assured" that she will keep it "apprised of all further developments."

*Span* states that an excess insurer has an increased duty to inquire where the primary insurer is *insolvent*. *Span,* 227 Cal. App. 3d at 483. Here, the primary insurer was not insolvent, and the insured was being represented by Ms. Bauermeister, a seemingly experienced attorney hired by ACWA/JPIA. Neither Ms. Bauermeister—nor the insured—ever asked for Everest's assistance in the underlying action in contributing to a settlement demand or otherwise assisting in YLWD's defense.

Plaintiffs' instruction is particularly inappropriate here where YLWD and Plaintiffs concealed their collusive settlement negotiations and the terms and existence of the Global Agreement by, among other things, making material misrepresentations in state court. Plaintiff State Farm's attorney, with the agreement of YLWD and some plaintiff counsel, made material misrepresentations to the State Court in an ex parte request to continue the trial date so that the parties would have more time to complete the settlement agreement. Rather than disclose that the parties were engaged in settlement negotiations, counsel misrepresented in a court pleading that he needed more time to depose expert witnesses. In fact, the parties were focused on completing the settlement.

This was all done while Ms. Bauermeister assured all insurers that they could "rest assured" that she would keep them "apprised of all further developments." When Everest was notified of the underlying action in February 2011, Everest's claims handler Michael Haliskoe asked Ms. Bauermeister to send him all prior and future status reports. Ms. Bauermeister agreed to this request and thereafter sent numerous lengthy and detailed status reports purporting to keep Everest apprised of the underlying action. Ms. Bauermeister did not disclose the settlement negotiations, the existence and terms of the Global Agreement, or the reference proceeding.

Though Plaintiffs claim that Everest could have figured out the details of the reference proceeding by monitoring the docket, this argument turns the policy on its head and ignores that Everest justifiably relied on YLWD's representations.

Everest's policy required YLWD to "[i]mmediately send [Everest] copies of any demands . . . received in connection with the claim or 'suit,'" "[c]ooperate with [Everest] in the investigation or settlement of the . . . defense against the 'suit,'" and "[t]ake all necessary steps to protect . . . [Everest's] interests."  (Policy §§ IV.3.c.(1),(3),(5).)   ''To require Everest to monitor the docket in the face of representations by the insured that the insured would keep Everest informed and, absent a request from YLWD to participate in the underlying action, would nullify important Policy obligations and YLWD's duty of good faith.

## Plaintiffs' Disputed Jury Instruction No. 6

## JUDGMENT CREDITOR'S ACTION AGAINST INSURER—ESSENTIAL FACTUAL ELEMENTS

Plaintiffs claim that Everest must pay [all or part of] a judgment against YLWD. To establish this claim, Plaintiffs must prove all of the following:

1 That Plaintiffs brought a lawsuit for property damage against YLWD and a judgment was entered against YLWD;

2 That [all or part of] YLWD's liability under the judgment is covered by an insurance policy with Everest; and

3 The amount of the judgment [covered by the policy].

**Authority**: CACI 2360

**Everest's Alternative to Plaintiffs' Disputed Jury Instruction No. 6**

## JUDGMENT CREDITOR'S ACTION AGAINST INSURER—ESSENTIAL FACTUAL ELEMENTS

Plaintiffs claim that Everest must pay part of a judgment against YLWD.  To establish this claim, Plaintiffs must prove all of the following by a preponderance of the evidence:

1 That Plaintiffs brought a lawsuit for property damage against Everest and a judgment was entered against YLWD;

2 That part of YLWD's liability under the judgment is covered by an insurance policy with Everest; and

3 The amount of the judgment covered by the policy.

Plaintiffs' suit is subject to all of Everest's defenses.

**Authority:** CACI 2360 (Modified); *see* Cal. Ins. Code. § 11580(b)(2) (judgment creditor is "subject to [the policy's] terms and limitations"); *Hall v. Travelers Ins. Co.*, 15 Cal. App. 3d 304, 308 (1971) ("In a suit by an injured party who has obtained a judgment against its insured, an insurer may assert defenses based upon a breach by the insured of a condition of the policy . . . .").

### Everest's Reasoning for its Alternative to Plaintiffs' Disputed Jury Instruction No. 6

Everest's version of CACI 2360 is modified in that the following language is added at the bottom of the form instruction: "Plaintiffs' suit is subject to all of Everest's defenses." This is an accurate statement of the law as established by the authority cited above. It will ensure that the jury is not confused as to whether defenses that would bar YLWD from recovering under the Policy would also bar Plaintiffs' recovery.

Everest's version of CACI 2360 also is modified to clarify that the burden of proof is preponderance of the evidence.

**Plaintiffs' Disputed Jury Instruction No. 7**

**IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING EXPLAINED**

In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement.

To fulfill its implied obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests.

To breach the implied obligation of good faith and fair dealing, an insurance company must, unreasonably or without proper cause, act or fail to act in a manner that deprives the insured of the benefits of the policy. It is not a mere failure to exercise reasonable care. However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.

**Authority**: CACI 2330

**Everest's Alternative to Plaintiffs' Disputed Jury Instruction No. 7**

## IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING EXPLAINED

In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement. However, the implied obligation of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

To fulfill its implied obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests.

To breach the implied obligation of good faith and fair dealing, an insurance company must, unreasonably or without proper cause, act or fail to act in a manner that deprives the insured of the benefits of the policy. It is not a mere failure to exercise reasonable care.  A breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment. There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.  However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.

**Authority:** CACI 2330, 325 (Breach of Covenant of Good Faith and Fair Dealing—Essential Factual Elements); *see also Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006).

### Everest's Reasoning for its Alternative to Plaintiffs' Disputed Jury Instruction No. 7

Everest's alternative instruction is an accurate statement of the law that merely combines CACI 2330, language cited in the Sources and Authority section to CACI 2330, and CACI 325. The following language added to the end of first full paragraph of the instruction is a direct quote from CACI 325 titled Breach of the Covenant of Good Faith and Fair Dealing—Essential Factual Elements: "However, the implied obligation of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract."  And the following language is a near direct quote, save for some grammatical modifications, from *Century Surety Co.*, 139 Cal. App. 4th at 949, which is cited in the Sources and Authority section of CACI 2330:

> Thus, a breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment. There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.
> (Internal citations omitted)

Everest's instruction provides a more complete explanation of the duty of good faith and fair dealing based on the facts and issues of this case.

**Plaintiffs' Disputed Jury Instruction No. 8**

**REFUSAL TO ACCEPT REASONABLE SETTLEMENT WITHIN POLICY LIMITS**

Plaintiffs claim that they were harmed by Everest's breach of the obligation of good faith and fair dealing because Everest failed to accept a reasonable settlement demand in a lawsuit against YLWD. To establish this claim, Plaintiffs must prove all of the following:

1. That Plaintiffs brought a lawsuit against YLWD for a claim that was covered by Everest's insurance policy;

2. That Everest failed to accept a reasonable settlement demand for an amount within policy limits; and

3. That a monetary judgment was entered against YLWD for a sum greater than the policy limits.

"Policy limits" means the highest amount available under the policy for the claim against YLWD.

A settlement demand is reasonable if Everest knew or should have known at the time the settlement demand was rejected that the potential judgment was likely to exceed the amount of the settlement demand based on Plaintiffs' injuries or loss and YLWD's probable liability.

**Authority**: CACI 2334

## Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 8

Everest objects to the duty to settle instruction as irrelevant, misleading and unnecessary and it will confuse the jury.

Further, Everest was never asked by ACWA/YLWD to contribute any money to a settlement of the *Itani* litigation or participate in the *Itani* litigation prior to the entry of judgment on July 13, 2012.  (May 1, 2013 Bauermeister Depo. 46:8-12). Accordingly, this instruction will serve only to mislead and confuse the jury.

An excess insurer has no duty to settle until there has been exhaustion by the primary and underlying layers.  In *Valentine v. Aetna Ins. Co.*, 564 F.2d 292 (9th Cir. 1977), the Ninth Circuit held that "[u]nder California law an excess carrier is not obligated to contribute to a settlement until the limit of the primary carrier's coverage has been exhausted."  *Id.* at 296 (internal citations omitted).  This position has been widely adopted.  *See Highlands Ins. Co. v. Cont'l Cas. Co.*, 64 F.3d 514, 519 (9th Cir. 1995) (holding "Highlands never had a duty or right to participate in the negotiations" where the underlying policies had not been exhausted).

## Plaintiffs' Disputed Jury Instruction No. 9

## FACTORS TO CONSIDER IN EVALUATING INSURER'S CONDUCT

In determining whether [*name of defendant*] acted unreasonably or without proper cause, you may consider whether the defendant did any of the following:

[(a) Misrepresented to [*name of plaintiff*] relevant facts or insurance policy provisions relating to any coverage at issue.]

[(b) Failed to acknowledge and act reasonably promptly after receiving communications about [*name of plaintiff*]'s claim arising under the insurance policy.]

[(c) Failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under its insurance policies.]

[(d) Failed to accept or deny coverage of claims within a reasonable time after [*name of plaintiff*] completed and submitted proof-of-loss requirements.]

[(e) Did not attempt in good faith to reach a prompt, fair, and equitable settlement of [*name of plaintiff*]'s claim after liability had become reasonably clear.]

[(f) Required [*name of plaintiff*] to file a lawsuit to recover amounts due under the policy by offering substantially less than the amount that [he/she/it] ultimately recovered in the lawsuit, even though [*name of plaintiff*] had made a claim for an amount reasonably close to the amount ultimately recovered.]

[(g) Attempted to settle [*name of plaintiff*]'s claim for less than the amount to which a reasonable person would have believed he or she was entitled by referring to written or printed advertising material accompanying or made part of the application.]

[(h) Attempted to settle the claim on the basis of an application that was altered without notice to, or knowledge or consent of, [*name of plaintiff*], [his/her/its] representative, agent, or broker.]

[(i) Failed, after payment of a claim, to inform [*name of plaintiff*] at [his/her/its] request, of the coverage under which payment was made.]

[(j) Informed [*name of plaintiff*] of its practice of appealing from arbitration awards in favor of insureds or claimants for the purpose of forcing them to accept settlements or compromises less than the amount awarded in arbitration.]

31

[(k) Delayed the investigation or payment of the claim by requiring [*name of plaintiff*], [or [his/her] physician], to submit a preliminary claim report, and then also required the submission of formal proof-of-loss forms, both of which contained substantially the same information.]

[(l) Failed to settle a claim against [*name of plaintiff*] promptly once [his/her/its] liability had become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.]

[(m) Failed to promptly provide a reasonable explanation of its reasons for denying the claim or offering a compromise settlement, based on the provisions of the insurance policy in relation to the facts or applicable law.]

[(n) Directly advised [*name of plaintiff*] not to hire an attorney.]

[(o) Misled [*name of plaintiff*] as to the applicable statute of limitations, that is, the date by which an action against [*name of defendant*] on the claim had to be filed.]

[(p) Delayed the payment or provision of hospital, medical, or surgical benefits for services provided with respect to acquired immune deficiency syndrome (AIDS) or AIDS-related complex for more than 60 days after it had received [*name of plaintiff*]'s claim for those benefits, doing so in order to investigate whether [*name of plaintiff*] had the condition before obtaining the insurance coverage. However, the 60-day period does not include any time during which [*name of defendant*] was waiting for a response for relevant medical information from a healthcare provider.]

The presence or absence of any of these factors alone is not enough to determine whether [*name of defendant*]'s conduct was or was not unreasonable or without proper cause. You must consider [*name of defendant*]'s conduct as a whole in making this determination.

**Authority**: CACI 2337

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 9**

Everest objects to Plaintiffs' Disputed Jury Instruction No. 9 because the factors are either irrelevant based on the facts of this case or are not applicable to an excess insurer.  Because Plaintiffs have not indicated which factors they intend to include, Everest cannot respond substantively to any particular factors.

## Plaintiffs' Disputed Jury Instruction No. 10

## SPECIAL BASED ON *EGAN*

An insurer has a duty to fully inquire into possible bases that might support the insured's claim; an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial.

**Authority**: *Egan v. Mut. of Omaha Ins. Co.,* 24 Cal.3d, 809, 819 (1979) ("To protect these interests it is essential that an insurer fully inquire into possible bases that might support the insured's claim. . . . [A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial.").

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 10**

Everest objects to this instruction as untimely, inaccurate, and redundant.  Everest received this instruction at 2:30 p.m. on the day this filing was due, with no forewarning or indication that Plaintiffs would be seeking a special instruction on this subject and contrary to the agreed upon joint drafting schedule.   While Plaintiffs' untimely submission makes it difficult for Everest to substantively object to this instruction in a complete manner, Everest notes that Plaintiffs' instruction is inaccurate.  *Egan* is a first-party disability insurance contract case and it is inapplicable here.  The *Egan* Court made the statements that Plaintiffs quote in the context of, and directly after, discussing the importance of disability insurance: "As insurers are well aware, the major motivation for obtaining disability insurance is to provide funds during periods when the ordinary source of the insured's income—his earnings—has stopped.  The purchase of such insurance provides peace of mind and security in the event the insured is unable to work. . . . To protect these interests, it is essential that an insurer fully inquire into possible bases that might support the insured's claim . . . ." *Egan,* 24 Cal. 3d at 819.  Indeed, *Egan* is cited as support for CACI 2332 which is titled Bad Faith (*First Party*)—Failure to Properly Investigate Claim.  Further, Plaintiffs have cited no authority that applies this standard to an excess insurer in a third-party liability context.

Finally, this instruction is unnecessary and duplicative of CACI 2330 on the Implied Obligation of Good Faith and Fair Dealing, which Plaintiffs have requested and to which Everest has offered a modified version.

## Plaintiffs' Disputed Jury Instruction No. 11

### DAMAGES FOR BAD FAITH

If you decide that [*name of plaintiff*] has proved [his/her/its] claim against [*name of defendant*], you also must decide how much money will reasonably compensate [*name of plaintiff*] for the harm. This compensation is called "damages."

The amount of damages must include an award for all harm that was caused by [*name of defendant*], even if the particular harm could not have been anticipated.

[*Name of plaintiff*] must prove the amount of [his/her/its] damages. However, [*name of plaintiff*] does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by [*name of plaintiff*]:

1 [Mental suffering/anxiety/humiliation/emotional distress;] [and]

2 [The cost of attorney fees to recover the insurance policy benefits;] [and]

3 [*Insert other applicable item of damage.*]

[No fixed standard exists for deciding the amount of damages for [*insert item of mental or emotional distress*]. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.]

[To recover for future [*insert item of mental or emotional distress*], [*name of plaintiff*] must prove that [he/she] is reasonably certain to suffer that harm.]

[To recover attorney fees [*name of plaintiff*] must prove that because of [*name of defendant*]'s breach of the obligation of good faith and fair dealing it was reasonably necessary for [him/her/it] to hire an attorney to recover the policy benefits. [*Name of plaintiff*] may recover attorney fees [he/she/it] incurred to obtain policy benefits but not attorney fees [he/she/it] incurred for other purposes.]

38

**Authority**: CACI 2350

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 11**

Everest objects to this instruction on the ground that there are no bad faith damages for the jury to determine.  The parties have agreed to bifurcate "*Brandt*" attorneys' fees, and Plaintiffs have stated that they are not seeking emotional distress damages.  Plaintiffs have not identified what other bad faith damages they would seek through this instruction.

## Plaintiffs' Disputed Jury Instruction No. 12

## PUNITIVE DAMAGES

If you find for the plaintiff, you may, but are not required to, award punitive damages.  The purposes of punitive damages are to punish a defendant and to deter similar acts in the future.  Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by [a preponderance of the evidence] [clear and convincing evidence] that punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff.  Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case.  You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case].

[In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.]

[Punitive damages may not be awarded against.] [You may impose punitive damages against one or more of the defendants and not others, and may award different amounts against different defendants.] [Punitive damages may be

awarded even if you award plaintiff only nominal, and not compensatory, damages.]

**Authority:** 9th Circuit Model Civil Instruction 5.5

**Everest's Objection to Plaintiffs' Disputed Jury Instruction No. 12**

Everest objects to the punitive damages instruction on the basis of notice, due process and a failure to plead facts to sustain a finding of punitive damages. "A complaint must allege enough facts to state a claim to relief that is plausible on its face." *GBTI, Inc. v. Ins. Co. of Pa.*, CV F 09-1173 LJO DLB, 2009 WL 2365409 at *3 (E.D. Cal. July 29, 2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)).

Here, Plaintiffs not only failed to request punitive damages in their prayer for relief and in their responses to Everest's interrogatories, but they also failed to plead sufficient facts to sustain a claim for punitive damages. Instead, Plaintiffs pled only that Everest "acted unreasonably and without proper cause." Plaintiffs did not advise Everest they intended to seek punitive damages until the Rule 16 discussions on the eve of trial.

California law permits an award of punitive damages where "[i]n an action for the breach of an obligation not arising from contract . . . it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294. Just pleading bad faith is insufficient to justify submitting a matter to a jury on the issue of punitive damages.

Courts will dismiss a claim for punitive damages for insufficiency even where bad faith is also alleged. *See, e.g., Hawker v. Bancinsurance, Inc.*, CV F 12-1261 LJO SAB, 2013 WL 1281573 at *13 (E.D. Cal. Mar. 26, 2013) ("Bancinsure is correct that the complaint seeks punitive damages based on insufficient facts that Bancinsure acted with requisite malice, oppression or fraud to support punitive damages claims. The complaint's bad faith claims, without more, fail to substantiate misconduct subject to punitive damages. The complaint lacks sufficient allegations of Bancinsure's wrongdoing to impose punitive damages on Bancinsure"); *GBTI,* 2009 WL 2365409 at *8 (internal citations and quotations omitted) ("Although the bad faith claim includes a list of alleged breaches and claims mishandling issues, the bad faith claim lacks sufficient allegations to support punitive damages. The complaint includes platitudes and a conclusory paragraph which essentially summarizes section 3294 elements. The complaint lacks ultimate facts of defendants' purported malice, oppression or fraud. The complaint fails to put defendants on notice of alleged wrongdoing to impose punitive damages on them.").

Everest has been prejudiced by Plaintiffs' failure to put Everest on notice of the punitive damages they sought.  "Under California law, a punitive damages award must be based on three factors: (1) the reprehensibility of the defendant's conduct; (2) the amount of compensatory damages awarded to or actual harm suffered by the plaintiff; and (3) the defendant's financial condition."  *Behr v. Redmond*, 193 Cal. App. 4th 517, 535 (2011).  Everest did not conduct discovery on how Plaintiffs intend to prove these factors at trial.  And Everest would likely have sought summary adjudication of any punitive damages claim had Plaintiffs indicated in their pleadings, disclosures, or discovery responses that they were seeking these damages.  Finally, Everest's trial preparation was premised on the absence of a claim for punitive damages and would be disrupted by this late addition. *See Georges v. Novartis Pharm. Corp.*, CV 06-05207 SJO VBKX, 2013 WL 5217158 (C.D. Cal. Apr. 4, 2013).