1  Gary A. Hamblet, State Bar No. 90250
   ghamblet@mpplaw.com
2  Kevin M. Pollack. State Bar No. 272786
   kpollack@mpplaw.com
3  MORRIS POLICH & PURDY LLP
   1055 West Seventh Street, 24th Floor
4  Los Angeles, CA 90017
   Telephone:  (213) 891-9100
5  Facsimile:   (213) 488-1178

6  Attorneys for Plaintiff-in-Intervention
   DAVID RAMOCINSKI

7

8              **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

11 ASSOCIATION OF CALIFORNIA          Case No. 11-CV-01124-CJC (RNBx)
   WATER AGENCIES JOINT
12 POWERS INSURANCE
   AUTHORITY, a California Public     **PLAINTIFFS' JOINT MOTION**
13 Agencies Joint Powers Authority;   **FOR PARTIAL SUMMARY**
   YORBA LINDA WATER                  **JUDGMENT ON EVEREST'S**
14 DISTRICT, a California Public Water **FRAUD AND COLLUSION**
   District,                          **DEFENSE**
15
           Plaintiffs,               [Filed concurrently with Separate
16                                   Statement of Undisputed Material Facts
   vs.                               and Conclusion of Law in Support of
17                                   Motion for Partial Summary Judgment
   THE INSURANCE COMPANY OF          Re: Fraud and Collusion Defense and
18 THE STATE OF PENNSYLVANIA;        [Proposed] Order
   LEXINGTON INSURANCE
19 COMPANY, and DOES 1 TO 100,       Honorable Cormac J. Carney
   Inclusive
20           Defendants.             Date:        October 7, 2014
                                     Time:        9:00 a.m.
21                                   Courtroom:   9B
   AND RELATED ACTIONS.
22                                   Complaint Filed:  June 27, 2011
                                     Trial Date:       None
23

24 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

25       **PLEASE TAKE NOTICE** that on October 7, 2014 at 9:00 a.m. in

26 Courtroom 9B of the above-entitled Court, located at 411 West Fourth Street, Santa

27 Ana, CA 92701 PLAINTIFFS-IN-INTERVENTION ("Plaintiffs") will jointly move

28 for partial summary judgment on the issue of Defendant-in-Intervention Everest

                                    1

National Insurance Company's ("Everest") fraud and collusion defense, however pleaded, denominated or subsumed within any of its various affirmative defenses.

The motion will be made pursuant to Federal Rule of Civil Procedure 56 and Central District of California Local Rule 56-1 on the grounds that no triable issue of fact remains to be litigated and that Plaintiffs are entitled to partial summary judgment as a matter of law.

This motion is based upon the following grounds:

- After a three and one-half day evidentiary hearing, Everest has failed to meet its burden to produce substantial evidence establishing that the underlying judgment rendered by the Honorable Justice John K. Trotter (Ret.) in the *Itani* action was the product of fraud or collusion.

- The evidence presented to this Court during the evidentiary hearing demonstrated that the Judgment rendered in the *Itani* action was the result of a: (1) contested proceeding, and (2) was based upon Justice Trotter's independent determination of liability and damages.

- As such, the undisputed evidence demonstrates that the Judgment in the *Itani* action was not the product of fraud or collusion as a matter of law. Therefore, Everest is precluded from presenting its fraud and collusion defense to the jury during the trial of this action.

While this motion is filed by co-counsel for David Ramocinski, the motion is being filed on behalf of all Plaintiffs-in-Intervention jointly.

Dated: August 22, 2014                    Respectfully submitted,

                                          **MORRIS POLICH & PURDY LLP**


                                          By:___/s/ *Gary A. Hamblet*_____
                                               Gary A. Hamblet
                                               Kevin M. Pollack
                                          Attorneys for Plaintiff-in-Intervention
                                          DAVID RAMOCINSKI

2

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................1

II.  STATEMENT OF FACTS ....................................................2

III. EVEREST HAS THE BURDEN OF PRESENTING SUBSTANTIAL EVIDENCE THAT THE JUDGMENT SIGNED BY JUSTICE TROTTER WAS A SHAM. ...................6

    A.   Everest Has The Burden Of Proving Fraud And Collusion.......................................................6

    B.   Everest Must Present "Substantial" Evidence Of Fraud Or Collusion Not Merely A Basis For Speculation Or Suspicion. ..................................................7

IV.  JUSTICE TROTTER'S INDEPENDENT DETERMINATION OF LIABILITY AND DAMAGES CONCLUSIVELY NEGATES ANY CAUSAL CONNECTION BETWEEN WHAT THE ATTORNEYS THOUGHT OR SAID PRIOR TO THE TRIAL AND THE JUDGMENT WHICH JUSTICE TROTTER SIGNED ON JULY 13, 2012. ......................8

    A.   The General Rule In California Is That There Can Be No Fraud or Collusion Where An Independent Fact Finder Is Involved – Even Where The Proceedings Are Uncontested. ...............................................10

    B.   The Only Recognized Exception To The General Rule Was When The Insurer Proved That The Parties Secretly Agreed To Conceal Material Evidence From The Independent Fact Finder. ..................................14

    C.   This Case Is Not *Andrade* – Justice Trotter Was Not Duped; Everest Presented No Evidence Of An Agreement To Conceal Important Evidence. ..............15

    D.   Evidence Of Mistakes By Linda Bauermeister Or By Justice Trotter Do Not Constitute Evidence Of Fraud Or Collusion. .................................................16

V.   THERE IS NO SUBSTANTIAL EVIDENCE OF A FRAUDULENT OR DECEITFUL AGREEMENT BETWEEN THE PLAINTIFFS AND THE YORBA LINDA WATER DISTRICT. .................................................18

    A.   An "Agreement" Is Fraudulent Or Collusive Only If It Has An Unlawful Or Deceitful Purpose. .....................18

    B.   The Water District Owed No Duty To Keep A Non-Defending Excess Insurer Such As Everest Informed Of Settlement Negotiations. ...................................18

PLAINTIFFS' JOINT MOTION FOR PARTIALSUMMARY JUDGMENT ON EVEREST'S FRAUD AND COLLUSION DEFENSE

1           1.    Everest Is Charged With Constructive Notice Of The Date, Time, And Location Of The Trial ...........................19

2.    Even If Everest Would Ordinarily Have Been Entitled To Continuing Status Reports, Everest's Decision To Close Its File Conclusively Eliminates Any Causal Connection Between The Reports It Received (Or Did Not Receive) And the Judgment. ...............21

C.    The Global Agreement Does Not Give Rise To An Inference Of Fraud Or Collusion.......................................21

D.    An Agreement To Maintain The Confidentiality Of Settlement Negotiations Does Not Give Rise To An Inference Of Fraud And Collusion......................................22

VI.    EVEREST WAIVED ANY CLAIM OF SURPRISE OR EXCUSABLE NEGLECT BY FAILING TO INTERVENE IN THE UNDERLYING ACTION AND FILE A MOTION UNDER C.C.P. §473 IN THE ORANGE COUNTY SUPERIOR COURT........................................................23

VII.    CONCLUSION.........................................................25

PLAINTIFFS' JOINT MOTION FOR PARTIALSUMMARY JUDGMENT ON EVEREST'S FRAUD AND COLLUSION DEFENSE

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ................................................7

*Andrade v. Jennings,*
    54 Cal.App.4th 307 (1997) .......................... passim

*Assurance Co. of Am. v. Haven*,
    32 Cal.App.4th 78 (1995) ......................................17

*Belz v. Clarendon Am. Ins. Co.*,
    158 Cal.App.4th 615 (2007) ..................................19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...............................................7

*Clemmer v. Hartford Ins. Co.*,
    22 Cal.3d 865 (1978) ....................................... 23, 24

*Critz v. Farmers Ins. Group*,
    230 Cal.App.2d 788 (1964) ...................................22

*Eigner v. Worthington*,
    57 Cal.App.4th 188 (1997) ....................................16

*Eisenberg v. Alameda Newspapers, Inc.,*
    74 Cal.App.4th 1359 (1999) ..................................23

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ................................................10

*Exec. Risk Indem., Inc. v. Jones*,
    171 Cal. App. 4th 319 (2009) ...................... 16, 18, 24

*Glenbrook Homeowners Ass'n v. Scottsdale Ins. Co.,*
    858 F.Supp. 986 (N.D. Cal. 1994) ............ 2, 10, 13, 16

*Home Indem. Co. v. King*,
    34 Cal.3d 803 (1983) ............................................19

*Johansen v. California State Auto. Assn. Inter-Ins. Bureau,*
    15 Cal.3d 9 (1975) ................................................22

*Kohn v. Jaymar-Ruby, Inc.*,
    23 Cal.App.4th 1530 (1994) ..................................22

*Kruger v. California Highway Indem. Exch.*,
    201 Cal. 672 (1927) ..............................................19

*National Union Fire Ins. Co. v. Lynette C.*,
    27 Cal.App.4th 1434 (1994) ...................... 1, 10, 16

*Nat'l Steel Corp. v. Golden Eagle Ins. Co.*,
    121 F.3d 496 (9th Cir. 1997) ...................................................................7

*Nat'l Union Fire Ins. Co. v. Gen. Star Indem. Co.*,
    216 Fed.Appx. 273 (3d Cir. 2007) ..........................................................20

*Pengilly Masonry v. Pengilly Masonry, Inc. v. Aspen Ins. UK Ltd.*,
    674 F.Supp.2d 1150 (E.D.Cal. 2009) ............................................. 2, 7, 12

*Pioneer Cas. Co. v. Jefferson*,
    456 S.W.2d 410 (1970).............................................................................16

*Pruyn v. Agric. Ins. Co.*,
    36 Cal.App.4th 500 (1995) ..................................................................6, 12

*Rogan v. City of Boston*,
    267 F.3d 24 (1st Cir. 2001) .......................................................................8

*Safeco Ins. Co. of Am. v. Parks*,
    170 Cal.App.4th 992 (2009) .......................................................... passim

*Samson v. Transamerica Ins. Co.*,
    30 Cal.3d 220 (1981) ...................................................................... passim

*Span, Inc. v. Associated Int'l. Ins. Co.*,
    227 Cal.App.3d 463 (1991) ........................................... 8, 18, 20, 21

*Stalberg v. W. Title Ins. Co.*,
    230 Cal.App.3d 1223 (1991) ....................................................................16

*Steadfast Ins.Co. v. Dobbas*,
    2008 WL 324023 (E.D.Cal. 2008) ................................................ 13, 16

*Triton Energy Corp. v. Square D Co.*,
    68 F.3d 1216 (9th Cir. 1995) .....................................................................8

*Vernon v. City of Los Angeles*,
    47 F.3d 1385 (9th Cir. 1994) ....................................................................10

*Zander v. Texaco, Inc.*,
    259 Cal.App.2d 793 (1968) ............................................................. 1, 8, 12

**Statutes**

28 U.S.C. 652(d) .............................................................................................23

California Code of Civil Procedure § 473 ............................................ 23, 24

California Code of Civil Procedure § 1036 ..................................................17

California Evidence Code § 1119 ..................................................................23

California Evidence Code § 1152(a)..............................................................23

**Other Authorities**

*California Practice Guide Insurance: Litigation*, (Rutter Group 2014) Ch. 12B-D ¶ 12:586 ....................................................................................17

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   <u>INTRODUCTION</u>

Everest made the provocative claim during its opening statement that it would prove Plaintiffs conspired to create the "appearance of a trial – when there was none."  [RT: (7/29/14) p.36:2-5].  Ultimately, this claim proved to be nothing more than a smear campaign supported by innuendo and speculation rather than by admissible evidence.  Despite having been graciously given more than three court days to marshall its evidence, Everest proved nothing except that it has *no respect* for the truth and *no regard* for the reputations of eight legal professionals, including a former Justice of the Court of Appeal, all of whom were falsely and irresponsibly accused of fraud and collusion.

Everest's defense collapsed like a house of cards when Justice John K. Trotter (Ret.) testified (over Everest's shameless objection[1]) that the trial by  reference over which he presided was a "hotly contested" proceeding at the conclusion of which he, not the lawyers, made an independent determination of both liability and damages.

Based on Justice Trotter's testimony standing alone, Plaintiffs are entitled to judgment on Everest's fraud/collusion defense as a matter of law.  *Samson v. Transamerica Ins. Co*., 30 Cal.3d 220, 240-42 (1981) (summary judgment on collusion where underlying judgment was determined by a judicial officer); *Safeco Ins. Co. of Am. v. Parks*, 170 Cal.App.4th 992, 1013 (2009) (jury instruction on collusion rejected due to insufficient evidence); *National Union Fire Ins. Co. v. Lynette C.*, 27 Cal.App.4th 1434, 1450 (1994) (summary judgment); *Zander v. Texaco, Inc.*, 259 Cal.App.2d 793, 806 (1968) (judgment on the pleadings); *Pengilly Masonry v. Pengilly Masonry, Inc. v. Aspen Ins. UK Ltd.*, 674 F.Supp.2d 1150, 1158

---

[1] How could a party with the burden of proving fraud or collusion, in good conscience, object to the testimony of a witness who was a neutral observer of  the proceedings?  Only a party hoping to conceal the truth would do so.

(E.D.Cal. 2009) (partial summary judgment); *Glenbrook Homeowners Ass'n v. Scottsdale Ins. Co.,* 858 F.Supp. 986, 987-988 (N.D. Cal. 1994) (a judgment the trial judge entered after a one hour trial is a "conclusive judicial determination").

A careful review of these six cases reveals a simple, bright line principle of law: the presence of a neutral, judicial officer, who makes an independent determination of liability and damages, **conclusively negates any causal connection** between the conduct of counsel prior to the proceedings and the judgment which is ultimately rendered. Evidence of what the attorneys or the parties hoped, believed, expected or agreed prior to the trial is irrelevant. The judgment is valid and binding on the insurer if it was *independently rendered by a judicial officer*, rather than by agreement of the parties or their attorneys.

The only case recognizing an exception to this principle of law  --  *Andrade v. Jennings,* 54 Cal.App.4th 307 (1997) ("*Andrade*")  -- is a case in which an insurer *proved* that the parties to the proceedings entered into *a secret agreement to conceal material evidence* from the judicial officer, resulting in a judgment *dramatically disproportionate* to the actual damages. *Andrade* does not apply here, where the parties submitted to Justice Trotter all available evidence bearing on the issues of liability and damages. Nothing was withheld, much less intentionally concealed, as in *Andrade.* Furthermore, the damages Justice Trotter awarded were in the same ballpark as the amount Plaintiffs claimed long before trial.

Accordingly, under well-established California case law, Plaintiffs are entitled to judgment on Everest's fraud and collusion defenses as a matter of law.

## II.   **STATEMENT OF FACTS**

On Feb. 18, 2011, Everest National Insurance Company ("Everest"), an excess insurer, was given notice of multiple, coordinated claims for inverse condemnation against Everest's insured, the Yorba Linda Water District ("Water District") in the matter of *Itani et al. v. Yorba Linda Water District* Orange County

Superior Court Case No. 30-2009-00124906.  [SSUMF No. 2].  Everest was informed that the claims had the potential to reach Everest's layer of coverage, that a mediation was being scheduled, and that Everest should be prepared to contribute financially.  [SSUMF No. 3]  Everest was also notified that Plaintiffs were claiming over $60 million in damages, an amount in excess of Everest's policy limits.  [Exhibit 240].

Over the following year, Everest learned that its insured had exhausted its $1 million primary layer of coverage [SSUMF No.5]; that insurers below it in the tower had denied coverage [SSUMF No. 6]; that a trial date was approaching; and that the insured was reluctantly considering proposals from the Plaintiffs to stipulate to judgment.  [SSUMF No. 4].  Despite this knowledge, Everest did *absolutely nothing*.  Everest did not provide the Water District with assurances that it would provide coverage if needed; it did not intervene or offer to defend the Water District; and it did not retain counsel to monitor the proceedings.  In fact, once Everest received notice that ISOP and Lexington had denied coverage, Everest simply followed suit by closing its file without informing the Water District that it was doing so.  [SSUMF No. 7-8].

The Water District, having been abandoned by Everest and its other insurers as it was facing a 4-6 month trial and the specter of possible bankruptcy, was forced to make the best bargain possible in order to protect its interests.  [RT: (7/30/14) p. 44:9-11, 21-23; p. 46:11-15].  The Water District refused multiple requests by Plaintiffs to enter into a stipulated judgment and, instead, proposed a trial by reference under C.C.P. §638.  [SSUMF No. 9].

On May 24, 2012, the Honorable Steven L. Perk, Judge of the Orange County Superior Court, issued an order pursuant to C.C.P. § 638 appointing Justice Trotter to oversee the trial and to decide all issues necessary to resolve every legal and factual dispute in the *Itani* action. [*See*, Exhibit 107].

PLAINTIFFS' JOINT MOTION FOR PARTIALSUMMARY JUDGMENT ON EVEREST'S FRAUD AND COLLUSION DEFENSE

1   The trial before Justice Trotter not only had the *appearance* of a real trial, *it*

2   *was a real trial*.  Justice Trotter reviewed each trial brief, supplemental trial brief

3   and motion *in limine*.  [RT: (7/30/14) p. 132:3-10].  He considered trial notebooks,

4   including separate binders, separate evidence and trial briefs for each house.  [RT:

5   (7/30/14) p. 131:15-20].  The Plaintiffs and the Water District presented their cases

6   through maps, explanatory documents, exhibits and demonstrative evidence.  [RT:

7   (7/30/14) p.135:3-8].  Plaintiffs also gave Justice Trotter a copy of the Global

8   Agreement before the trial began.  [SSUMF No. 13].

9   The issue of whether inverse condemnation applied to the particular facts of

10  the case was extensively developed and argued to Justice Trotter.  [RT: (7/30/14) p.

11  188:14-21].  Justice Trotter recalled "extensive and vigorous argument" on the law

12  and facts, including defense presentations with respect to each individual house,

13  each individual claim and each component of damages.  [RT: (7/30/14) p. 132:15-

14  133:2; 134:19-25; 186:18-21].  Justice Trotter described counsel for the Water

15  District as "very passionate" about her case.  [RT: (7/30/14) p.133:4-11].  In addition

16  to trial counsel for the Water District, Justice Trotter allowed a Water District

17  representative to argue and Justice Trotter thought the representative and counsel

18  were "very, very strong in their position that they didn't think was an inverse case."

19  [RT: (7/30/14) p.133:4-18].  Justice Trotter concluded that they were "very zealous"

20  and passionate about their position.  In fact, the Water District fought so zealously,

21  Justice Trotter formed the impression that "they truly believed that this was not a

22  case for inverse".  [RT: (7/30/14) p.133:4-18].  In short, Justice Trotter described the

23  trial as a "hotly contested case;" he testified there was no question that the Water

24  District did not want to lose the case because it was a very important case to them,

25  and they contested it, very heatedly.  [RT: (7/30/14) p. 187:3-11].

26  Upon the conclusion of the trial, Justice Trotter made his own findings as set

27  forth in the Judgment.  [SSUMF Nos. 16-19].  Contrary to Everest's position, the

28  parties did not just hand a judgment to Justice Trotter and tell him to find against

4

certain plaintiffs.  [RT: (7/30/14) p.137:15-138:12].  Instead, Justice Trotter made his own determination as to liability and causation and found that as to the plaintiffs' who lost at trial, their homes "would have been claimed by the fire whether the Water District's system had failed or not."  [SSUMF Nos. 16; RT: (7/30/14) p.137:15-138:11].  Justice Trotter gave the parties ample time to present their arguments and recalled giving one lawyer an extension of time to argue on behalf of one of the homes he ultimately ruled against.  [RT: (7/30/14) p.138:13-23].

Justice Trotter made a determination of damages on each of the homes as well.  [SSUMF No. 17].  Contrary to Everest's position that the Water District did not contest damages, Justice Trotter testified that the Water District did contest damages—almost too much.  Justice Trotter recalled that when the Water District argued that the insurers over paid on some of the losses, he responded that he never heard of an insurance company overpaying and he did not give much credit to the argument.  [RT: (7/30/14) p.139:15-22].  In the end, after argument by the attorneys, Justice Trotter exercised his own independent judgment as to whom should be awarded liability and damages [SSUMF No. 16-17] including the decision on interest [SSUMF No. 18] and the award of attorney fees.  [SSUMF No. 19].  He did not just accept what the attorneys wanted.  [RT: (7/30/14) p.141:25-142:9].  In fact, Justice Trotter ruled against Plaintiffs with respect to seven of the nineteen homes, including the Lindholm claim (which alone had a value of more than $5 million dollars).

Critically, Justice Trotter testified that the findings set forth in the Judgment were his findings; he did not just include what the lawyers requested; he made his own independent decisions.  [RT: (7/30/14) p.136:25-137:2].

Finally, and most importantly, Justice Trotter testified that he complied with his obligation under Canon 6d of the Canons of Judicial Ethics to insure that the proceedings were fair:

Q:    And did you do your job . . . to make sure that the attorneys were not colluding or otherwise engaging in a fraud, to the extent you could tell?

A:    Yes.  I saw absolutely no evidence of that."

Q:    Everest Insurance Company has stated in their opening statement in this case that the Plaintiffs colluded . . . to create the appearance of a trial which there was none.  Is that true?

A:    That's not true, and that's not what I observed.  I observed a legitimate, hard-fought, contested issue case."

[RT: (7/30/14) p. 143:1-12].

Since Everest has repeatedly stated they are not contending Justice Trotter was guilty of any wrongdoing, this testimony was the death knell[2] for Everest's fraud and collusion defense.

## III.    EVEREST HAS THE BURDEN OF PRESENTING SUBSTANTIAL EVIDENCE THAT THE JUDGMENT SIGNED BY JUSTICE TROTTER WAS A SHAM.

### A.    Everest Has The Burden Of Proving Fraud And Collusion

The *Itani* judgment is afforded a presumption of validity and will be binding upon Everest unless Everest can establish, through substantial evidence, that it was the product of fraud and collusion.  *Pruyn v. Agric. Ins. Co*., 36 Cal.App.4th 500, 509, 530 (1995).  Everest bears the burden of proof on this issue.  *Id.*

As the moving party, Plaintiffs may carry their initial burden on summary judgment by showing that Everest lacks sufficient evidence to carry its ultimate burden of persuasion at trial.  In other words, Plaintiffs can carry their burden by

---

[2] A death knell is the ancient custom of ringing a church bell at the time of death.

establishing that Everest has not presented any evidence from which a jury could find an essential element of its fraud/collusion defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case *necessarily renders all other facts immaterial.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis added).

## B.      Everest Must Present "Substantial" Evidence Of Fraud Or Collusion Not Merely A Basis For Speculation Or Suspicion.

Conclusory or speculative accusations of fraud or collusion are insufficient as a matter of law. *Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997). To present its collusion defense to the jury, Everest must introduce substantial evidence that the *Itani* judgment: (1) was the product of fraud and collusion and (2) was disproportionate to the actual damages sustained. *Safeco Ins. Co. of Am. v. Parks*, 170 Cal.App.4th 992, 1013 (2009) (only when there is "substantial evidence" of collusion does the issue become a question of fact for the jury to determine); *Pengilly Masonry, Inc. v. Aspen Ins. UK Ltd.*, 674 F.Supp.2d 1150, 1158 (E.D.Cal. 2009) (insurer's burden is proof is by "substantial evidence").

The "mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury **could reasonably find for [the opposing party]**." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (emphasis added). The opposing evidence must be sufficiently probative to permit a reasonable trier of fact to find in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 250. The test is whether the opposing party "has come forward with sufficiently 'specific' facts from which to draw **reasonable inferences**

7

about other material facts that are necessary elements of the [opposing party's] claim." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995) (emphasis added); *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir. 2001) (obligation cannot be satisfied by "conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative").

**IV.   JUSTICE TROTTER'S INDEPENDENT DETERMINATION OF LIABILITY AND DAMAGES CONCLUSIVELY NEGATES ANY CAUSAL CONNECTION BETWEEN WHAT THE ATTORNEYS THOUGHT OR SAID PRIOR TO THE TRIAL AND THE JUDGMENT WHICH JUSTICE TROTTER SIGNED ON JULY 13, 2012.**

Everest has repeatedly represented to this Court that Justice Trotter is guilty of no wrongdoing and that he was merely an "instrumentality" of the fraud. Yet Everest has failed to prove a link between the allegedly collusive communications among counsel and the judgment Justice Trotter independently rendered. In the absence of such a causal link, Everest's defense must fail as a matter of law.

A careful review of the case law addressing the fraud and collusion defense reveals that Everest must present substantial evidence to support three necessary elements of the defense: (1) that Plaintiffs engaged in deceitful conduct, (2) which was a **substantial factor in causing a judgment** (3) which was disproportionate to the actual damages sustained. *Span, Inc. v. Associated Int'l. Ins. Co.,* 227 Cal.App.3d 463, 484 (1991); *Andrade v. Jennings*, 54 Cal.App.4th 307, 327, 334 (1997); *Zander v. Texaco, Inc.*, 259 Cal.App.2d 793, 806 (1968).

Everest has focused almost entirely on the pre-trial communications among counsel, offering e-mails and other evidence that the attorneys hoped, believed and expected that Plaintiffs would ultimately join forces with the Water District in the pending bad faith litigation against the Water District's insurers. Such evidence is

insufficient to create a triable issue of fact as to the existence of a "deceitful

agreement."  Particularly where an insured public agency is forced to pay $10

million to protect itself against possible bankruptcy, it is neither fraudulent nor

collusive to agree to a covenant not to execute or an assignment of rights which

contemplates the joint prosecution of a bad faith lawsuit against the insurers.

*Samson v. Transamerica Ins.Co*., 30 Cal.3d 220, 240 (1981).

But even if Everest had demonstrated a triable issue as to the parties intentions

prior to trial, Everest has failed to prove the second element of **causation** -- namely,

that those communications **were a substantial factor in causing the judgment.**

There can be no abstract fraud or collusion "in the air;" the wrongful agreement

must have some demonstrable effect on the judgment.  A judgment is binding on an

insurer unless the insurer proves that the deceitful conduct of the parties was a

**substantial factor in causing a judgment** disproportionate the actual damages

sustained. *See e.g., Andrade v. Jennings*, 54 Cal.App.4th 307, 334 (1997) ("the jury

reasonably concluded the federal judgment **result[ing] from** the collusive settlement

was the **product of** collusion between Andrade's counsel and Jorge's counsel.")

This is why Justice Trotter's testimony was the **death knell** for any fraud and

collusion defense Everest could have asserted.  Because Justice Trotter

independently adjudicated liability and damages based on the evidence, Everest

cannot establish the existence of **a causal link** between the allegedly "collusive"

pre-trial communications among counsel and the judgment which was subsequently

rendered.  Justice Trotter's independent determination of liability and damages

conclusively **negated any causal connection** between what the attorneys thought or

said or agreed prior to the trial and the Judgment which Justice Trotter ultimately

rendered.

///

///

///

9

### A.   **The General Rule In California Is That There Can Be No Fraud or Collusion Where An Independent Fact Finder Is Involved – Even Where The Proceedings Are Uncontested.**

The California courts[3] have consistently held that a judgment which arises from an "independent adjudication of facts based on an evidentiary showing" does not create the potential for abuse, fraud or collusion because it involves a sufficient degree of judicial participation to obviate the risk. *National Union Fire Ins. Co. v. Lynette C.*, 27 Cal.App.4th 1434, 1450 (1994) ("*Lynette C.*") (no collusion as a matter of law); *Safeco Ins. Co. of Am. v. Parks*, 170 Cal.App.4th 992 (2009)(arbitration before a retired superior court judge obviates risk of collusion); *Glenbrook Homeowners Ass'n v. Scottsdale Ins. Co.,* 858 F.Supp. 986, 988 (N.D. Cal. 1994) (uncontested proceeding before a judge).

The California Supreme Court first addressed the merits of an insurer's collusion defense more than 30 years ago in *Samson v. Transamerica Ins. Co.*, 30 Cal.3d 220 (1981).  In that case, the Supreme Court affirmed the grant of summary judgment in favor of the insured, concluding that the insurer's collusion defense was meritless where a sitting judge had awarded damages and entered judgment based upon consideration of evidence presented in an uncontested proceeding.  *Id.* at 242. The *Samson* opinion confirms that the California Supreme Court views collusion as an appropriate issue for summary judgment, at least where the judgment was rendered by a judicial officer.

Cases which followed *Samson* have emphasized the crucial role of the independent fact finder in mitigating the risk of fraud and collusion.  In *Lynette C.,* an insurer sought to avoid paying a judgment by arguing that it was unenforceable

---

[3] This Court must, of course, determine what the California Supreme Court would do if faced with this issue of law.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938).  In doing so, the Court may consider state appellate court opinions, statutes and even treatises. *Vernon v. City of Los Angeles*, 47 F.3d 1385, 1391 (9th Cir. 1994).

because the insured had received a covenant not to execute in exchange for an agreement not to contest the trial.  The parties in the underlying action had resolved the issues of liability and damages in a court proceeding that lasted less than two hours.  An "array of evidence" regarding liability and damages were presented.  27 Cal.App.4th at 1451.  Specifically, Lynette established liability and damages by presenting various depositions and expert reports.  *Id*. at 1450.  The parties were concerned that the insurer would later try to characterize the proceeding as fraudulent and collusive:

> "In explaining to the trial court in the Lopes action how the parties
> had arrived at an uncontested proceeding, Lynette's counsel,
> Robert Davis, did acknowledge that the parties had discussed a
> damage figure of $1.25 million.  In his next breath, however, Davis
> stated he had not placed 'that kind of a limit on it because again I
> don't want the insurance company at a later on date to come in and
> say this judgment was conclusive [sic] and fraudulent.'"  *Id.* at
> 1450.

The parties "ask[ed] the Court to look at the evidence and make its own independent decision as to what [was] fair and reasonable compensation in th[at] matter."  *Id.*  Based on the parties' request, the trial court took the matter under submission, agreeing to "read all of the material presented" and to issue a written ruling.  *Id.*  Based on the record before it, the California Court of Appeal held, as a matter of law, that the underlying judgment was valid and binding on the insurer because the trial proceeding involved an "independent adjudication of facts based on an evidentiary showing" which "did not create the potential for abuse, fraud or collusion."  *Id.*at 1450-51.

Similarly in *Safeco Ins. Co.of Am. v. Parks* 170 Cal.App.4th 992 (2009) ("Parks"), the Court of Appeal held that the insured's decision to submit a dispute to "binding arbitration" before a retired superior court judge did not provide sufficient evidence of collusion to create a triable issue of fact for the jury.  The insurer's

evidence of collusion was that: (i) the insured assigned her bad faith claims to the plaintiff before the arbitration occurred, (ii) the insured's codefendants settled before the arbitration, and (iii) the arbitration award was very large. *Id.* at 1013-14.

The *Parks* court held that the trial court had correctly refused to give the jury an instruction on collusion, reasoning as follows:

> "The matter was submitted to binding arbitration before a neutral arbitrator, a retired superior court judge. This fact alone lends credibility to the award and distinguishes the present case from those cited by Safeco, each of which involved a settlement. *If there had been collusion between Miller and Parks at the arbitration, we presume that the retired superior court judge would have perceived as much and ruled accordingly.*" *Id.* at 1014 (emphasis added).

The *Parks* court concluded that insurer's alleged evidence of collusion was insufficient to create a triable issue of fact for the jury.[4]

Other California courts have also reached the conclusion that where there is "independent adjudicatory action" by a judge, the risk of fraud or collusion is mitigated as a matter of law. *E.g., Pruyn v. Agric. Ins. Co.*, 36 Cal.App.4th 500, 516-17 (1995); *Zander v. Texaco, Inc.*, 259 Cal.App.2d 793, 806 (1968)(fact that insured allowed judgment to be entered by the trial court "uncontested" does not establish fraud or collusion).

Federal courts, in attempting to predict how the California Supreme Court would rule on the issue, have consistently found there was no fraud or collusion as a matter of law when the judgment was based upon a court's independent determination of liability and damages. *See Pengilly Masonry, Inc. v. Aspen Ins. UK*

---

[4] The California Supreme Court denied a Petition for Review of the *Parks* case and did not order the opinion depublished.

1  *Ltd.,* 674 F.Supp.2d 1150, 1158-59 (E.D. Cal. 2009) ("Because this case involved

2  significant independent adjudicatory action by the [trial] court, this [U.S. District]

3  court *cannot find collusion.*") (emphasis added); *Glenbrook Homeowners Ass'n v.*

4  *Scottsdale Ins. Co.,* 858 F.Supp. 986, 988 (N.D. Cal. 1994); *Steadfast Ins.Co. v.*

5  *Dobbas*, 2008 WL 324023 (E.D.Cal. 2008) (fraud and collusion defense disposed of

6  on summary judgment where an independent arbitrator rendered a decision based

7  upon the evidence presented.)

8      In *Glenbrook,* the U.S. District Court rejected an insurer's attempt to avoid the

9  preclusive effect of a judgment entered against its insured based on the insurer's

10  contention that the judgment entered by the Sonoma County Superior Court was in

11  effect a stipulated judgment following a sham trial or prove-up hearing.  To support

12  its position, the insurer relied on the fact that: (i) the trial lasted less than an hour;

13  (ii) that the insured did not cross-examine the plaintiff's witnesses; and (iii) that the

14  insured did not present any evidence in its defense.  858 F.Supp. at 988.

15      The Court rejected the insurer's argument that an inference of collusion could

16  be drawn from these facts.  The Court reasoned that the trial court heard testimony

17  on the amount of damages and entered judgment "*pursuant to its consideration of*

18  *the evidence rather than the agreement of the parties*."  *Id.*  Given the judicial

19  officer's independent review of the evidence, even though not contested, the

20  judgment was found to be non-collusive and enforceable as a matter of law.

21      The evidence presented in the present case demonstrates that the Judgment in

22  the *Itani* action was based upon Justice Trotter's *independent* review of the evidence

23  and his *independent* adjudication of liability and damages. As such, under the

24  controlling case law there can be no collusion as a matter of law.

25  ///

26  ///

27  ///

28  ///

**B.** **The Only Recognized Exception To The General Rule Was When The Insurer Proved That The Parties Secretly Agreed To Conceal Material Evidence From The Independent Fact Finder.**

The only California case in which an insurer was found to have presented a triable issue of fact as to fraud and collusion was *Andrade v. Jennings*, 54 Cal.App.4th 307 (1997) ("*Andrade*"). The facts of the *Andrade* case are profoundly and fundamentally different from this case.

*Andrade* was a personal injury case in which Andrade alleged that he slipped and fell on some spilled aviation fuel while climbing down a ladder. Andrade entered into a settlement agreement with defendant prior to trial under which they agreed, among other things, that the defendant would not present evidence, or otherwise oppose the prove-up proceeding before a federal magistrate judge. Due to that agreement, the following material evidence was intentionally concealed from the magistrate:

- That no one had actually observed any aviation fuel on the ladder at the time of Andrade's injury. *Andrade* at 332, fn. 15.

- That Andrade was a drinker, who "habitually drank on duty" and was drinking at the time of the slip and fall. *Andrade* at 332, fn. 16.

- That Andrade's treating physician did not feel Andrade was permanently disabled. *Andrade* at 333, fn. 18.

The evidence in *Andrade* further established that because the parties had concealed material evidence, the magistrate rendered a judgment that was 6 to 10 times higher than the reasonable settlement value of Andrade's case. Finally, the parties' pre-trial settlement agreement, including an assignment of rights and a covenant not to execute, was withheld from the magistrate.

Thus, *Andrade* stands for a very narrow exception to the general rule - that when an independent judicial officer is involved in the proceedings leading to a judgment, an insurer can establish a triable issue of facts as to fraud and collusion if it presents substantial evidence that (a) the parties entered into an agreement to

14

conceal material evidence from the court, and (b) the deceitful agreement caused the Court to issue a judgment (c) which was dramatically disproportionate to the actual damages sustained.

### C. This Case Is Not *Andrade* – Justice Trotter Was Not Duped; Everest Presented No Evidence Of An Agreement To Conceal Important Evidence.

Everest has presented no evidence of a secret agreement between the parties to conceal material evidence from Justice Trotter.  In fact, the evidence in this case proves just the opposite.  In this case, unlike *Andrade,* Justice Trotter was given extensive trial briefs, deposition transcripts, expert reports, video excerpts from depositions, as well as other documentary evidence by both sides.  [RT: (7/30/14) p. 130:24- p. 133:2; p. 135:1- p. 136:1]. Unlike in *Andrade,* Justice Trotter was given the Global Agreement, was aware of the covenant not to execute, and knew that the Water District paid $10,000,000.00 to secure the covenant not to execute.  [RT: (7/30/14) p. 140:17- p. 141:3; 147:4- p. 148:2; 167: 18-19; p. 174:1-24].

Because nothing was hidden from Justice Trotter, Everest contends that the clever attorneys gave Justice Trotter *too much* evidence for him to review and evaluate.  This is absurd.  Justice Trotter was not limited as to the documents or depositions he could review and was not given any time limits for completing that review.  It should be *presumed*, as it is after any court trial, that the trial judge read and considered the materials he felt were necessary in order to render a fair and impartial judgment.  Even if Justice Trotter reviewed nothing more than the documents and video deposition clips shown to him during the two and one half days of testimony, his failure to do so does not constitute evidence of fraud or collusion.[5]

---

[5] Everest has repeatedly stated that they are not claiming Justice Trotter was involved in the alleged fraud or collusion.  At worst, Everest has shown that Justice Trotter made a mistake.   A mistake is not fraud.

### D.     <u>Evidence Of Mistakes By Linda Bauermeister Or By Justice Trotter Do Not Constitute Evidence Of Fraud Or Collusion.</u>

Everest's position that the Water District's failure to actively oppose Plaintiffs' claims for attorneys' fees and prejudgment interest should be considered evidence of fraud and collusion also lacks merit. There is a major distinction between stipulating to an element of damages, on the one hand, and taking no position on the issue and leaving the issue to the discretion of an experienced jurist on the other hand. The mere failure to actively oppose an element of damages is not evidence of fraud or collusion.

Numerous cases have found *uncontested* proceedings (where one party presented evidence and the other party did not oppose the evidence) to be non-collusive as a matter of law where there was significant judicial participation. See *e.g. Lynette C.* 27 Cal.App.4th 1434, and *Glenbrook,* 858 F.Supp 986; s*ee, also. Scottsdale Ins. Co. v. Sessions*, 331 F.Supp.2d 479, 488 (N.D. Tex. 2003) (default judgment is enforceable); *Pioneer Cas. Co. v. Jefferson,* 456 S.W.2d 410, 413 (1970) (judgment after the insured waived jury and admitted liability); *Steadfast Ins. Co. v. Dobbas*, 2008 WL 324023 (E.D.Cal. 2008) (Insurer's evidence of "lackluster representation" by the defense is insufficient to demonstrate fraud or collusion).

When "an insurer wrongfully refuses to defend, the insured is relieved of his or her obligation to allow the insurer to manage the litigation and may proceed in whatever manner is deemed appropriate." *Eigner v. Worthington*, 57 Cal.App.4th 188, 196 (1997); *See also Stalberg v. W. Title Ins. Co*., 230 Cal.App.3d 1223, 1233 (1991) (an insurer that wrongfully refuses to defend the insured forfeits its right to control the defense, including its rights to select defense counsel and litigation strategy). This rule applies with equal force to excess carriers such as Everest that have a right, but not a duty to defend. *Exec. Risk Indem., Inc. v. Jones*, 171 Cal. App. 4th 319, 332 (2009). Therefore, when an insurer abandons its insured, it has no right later to complain or object that the insured failed to oppose the injured

party's claims effectively.[6]  *California Practice Guide Insurance: Litigation*, (Rutter Group 2014) Ch. 12B-D ¶ 12:586.

Even if Ms. Bauermeister's tactical decision was to focus her attention on the issue of liability and damages and take no position on the issue of prejudgment interest and attorney's fees [RT: (7/30/14) p. 195:19 – p. 196:3], and even if that tactical decision could be considered below the standard of care (there is no evidence that it was), it would not make the judgment the product of fraud and collusion.

Furthermore, the prejudgment interest and attorney fees Justice Trotter awarded were supportable under the law and were based upon Justice Trotter's independent review and analysis of the evidence and the law [RT: (7/30/14) p. 141:23 – p. 142:9].  As this court is well aware, attorneys' fees and prejudgment interest are issues that judges regularly decide based on their knowledge, experience and discretion.  Under California Code of Civil Procedure § 1036, Justice Trotter *was required* to award PLAINTIFFS reasonable attorneys' fees.  A determination as to the amount of reasonable of attorney's fees is a decision peculiarly within the knowledge and experience of judges.

In short, leaving the issue of attorneys' fees and prejudgment interest to the sound discretion of the trial judge cannot be considered evidence of fraud or collusion as a matter of law.

---

[6] This same rule has been applied in the *Cumis counsel* context when an insurer issues a reservation of rights letter that creates conflicting interests and entitles an insured to select independent counsel. While the insured is entitled to independent counsel, it is still the insurer's duty to make its own investigation and determinations.  The insurer can provide its own counsel for the insured and the insurer-appointed attorney is "allowed to participate in all aspects of the litigation."  *Assurance Co. of Am. v. Haven*, 32 Cal.App.4th 78, 90-91 (1995).  Where an insurer is entitled to, but chooses not to have its own lawyer involved in the litigation management, the insurer cannot avoid paying either the insured's losses or attorneys' fees incurred based upon the independent counsel's alleged negligence. *Id*. at 92.



17

**V.**     **THERE IS NO SUBSTANTIAL EVIDENCE OF A FRAUDULENT OR DECEITFUL AGREEMENT BETWEEN THE PLAINTIFFS AND THE YORBA LINDA WATER DISTRICT.**

Everest has proved no unlawful or deceitful agreement of any kind, much less an agreement to engage in a sham proceeding before Justice Trotter.

**A.**     **An "Agreement" Is Fraudulent Or Collusive Only If It Has An Unlawful Or Deceitful Purpose.**

Unless an agreement is entered into for a deceitful or fraudulent purpose it is not collusive.  In *Span, Inc. v. Associated Int'l. Ins. Co*., 227 Cal.App.3d 463, 484 (1991) the California court of Appeal defined such an agreement as follows:  (1) "a deceitful agreement or compact between two or more persons, for the one party to bring an action against the other for some evil purpose, as to defraud a third party of his right"; (2) "a secret arrangement between two or more persons, whose interests are apparently conflicting, to make use of the forms and proceedings of law in order to defraud a third person, or to obtain that which justice would not give them, by deceiving a court or its officers"; and (3) "a secret combination, conspiracy, or concert of action between two or more persons for fraudulent or deceitful purposes."

Here, Everest has presented no evidence of an agreement entered into by Plaintiffs and the Water District that had a deceitful or fraudulent purpose.

**B.**     **The Water District Owed No Duty To Keep A Non-Defending Excess Insurer Such As Everest Informed Of Settlement Negotiations.**

It is well established that an insured has no duty to provide notice of any kind to an insurer which has denied coverage.  *Samson v. Transamerica Ins. Co.*, 30 Cal.3d 220, 240 (1981).  Similarly, there is no duty to provide notice to a "follow form" excess carrier which knows of the primary carrier's denial of coverage and which has given no indication of a willingness to afford protection to its insured.  *Id.* at 241.  In fact, as stated in *Exec. Risk Indem., Inc. v. Jones*, 171 Cal.App.4th 319

18

(2009) a non-defending excess insurer is bound by a judgment against its insured as long as it had notice of the pending litigation and an opportunity to intervene and defend. *Id.* at 332 (citing *Home Indem. Co. v. King*, 34 Cal.3d 803, 815–816 (1983) (insurance company bound by stipulated judgment between injured person and insured even though insured failed to give insurance company notice of the underlying litigation or opportunity to defend the claim); *Kruger v. California Highway Indem. Exch.*, 201 Cal. 672, 675–676 (1927) (default judgment binding on insurer in the absence of fraud and collusion even though insurer was not a party to the action and had no notice of the action until after the judgment was rendered); *Belz v. Clarendon Am. Ins. Co.*,158 Cal.App.4th 615, 620 (2007) (absent a showing of actual prejudice from the insured's failure to provide notice of a third-party claim, insurer not allowed to avoid its obligation to indemnify its insured when default judgment was taken against insured contractor.)

In this case, Everest was given **actual notice** of the *Itani Action*, yet never intervened, never exercised its contractual right to participate in the defense, and never offered any money in settlement.  Everest was informed of the upcoming trial date and could easily have monitored the court file where the judicial reference was made a matter of public record.  Everest also knew that Plaintiffs were discussing a possible stipulated judgment.  Despite this knowledge, Everest elected to put its head in the sand and closed its file months before the Global Agreement was executed.  [SSUMF Nos. 7-8].  Under these circumstances, Everest cannot reasonably contend it was entitled to further "notice" of any kind.

### 1.     Everest Is Charged With Constructive Notice Of The Date, Time, And Location Of The Trial

Even if Everest was entitled to notice of trial, the undisputed evidence is that Everest had either actual or constructive notice of the date, time and place of the trial.

PLAINTIFFS' JOINT MOTION FOR PARTIALSUMMARY JUDGMENT ON EVEREST'S FRAUD AND COLLUSION DEFENSE

Where an excess insurer learns that underlying insurance has become unavailable to the insured, the excess carrier has "an increased duty to inquire" because it can no longer count on the lower level insurer to protect the insured. *Span, Inc. v. Associated Int'l. Ins. Co.*, 227 Cal.App.3d 463, 483 (1991). Accordingly, once the excess insurer learns that lower level insurers are no longer positioned to protect the insured, the excess insurer is "placed on inquiry notice of the contents of the superior court file" in the case that is pending against its insured. *Id*; *see also, Nat'l Union Fire Ins. Co. v. Gen. Star Indem. Co.*, 216 Fed.Appx. 273, 280 (3d Cir. 2007).

In or about February 2012, Everest received a letter from Linda Bauermeister giving notice of a May 14, 2012 trial date.  [Exhibit 1090]. If Everest had *any interest or concern* about the proceedings, it had the opportunity to monitor the proceedings, either in person or on line.   Everest could also have intervened in the action or retained counsel to associate in as attorney of record.  It elected not to do so.

On May 23, 2012, the parties filed an ex parte application and  joint stipulation to refer the *Itani Litigation* to Justice Trotter [Exhibit 106].  Again this was filed with the Superior Court and was a matter of public record. [*Id.*]. The Court order granting the request containing the parties and Justice Trotter's signatures and consent was filed on May 24, 2012 [Exhibit 107] and was also a matter of public record.

Thereafter, in preparation for the trial, the parties filed numerous trial briefs, motions in limine and other pre-trial pleadings with the Orange County Superior Court.  [Exhibit 1010].  These pre-trial documents contained the date, time and place of the trial, along with the name of Justice Trotter.  [See, e.g., Exhibits 1235-1243, 1257-1264, 1266].

Finally, the trial before Justice Trotter was open to the public, just like any other trial in the State of California.  The undisputed evidence is that Everest never

20

appeared or asked permission to appear.  Everest cannot reasonably be heard to say that the proceedings were secret or were concealed from them.  Under *Span, Inc. v. Associated Int'l. Ins. Co.,* 227 Cal.App.3d 463, 483 (1991), Everest had constructive notice of the trial before Justice Trotter as a matter of law.

> **2.**    **Even If Everest Would Ordinarily Have Been Entitled To Continuing Status Reports, Everest's Decision To Close Its File Conclusively Eliminates Any Causal Connection Between The Reports It Received (Or Did Not Receive) And the Judgment.**

It is undisputed that Everest was notified (1) of the pending *Itani* action [SSUMF No. 2]; (2) that the damages could potentially reach its layer of coverage [SSUMF No. 3]; (3) that Plaintiffs had proposed a stipulated judgment [SSUMF No. 4]; (4) that the Water District had exhausted its $1 million in primary coverage [SSUMF No. 5]; and (5) that the underlying insurers had denied coverage [SSUMF No. 6].

Despite such information, Everest stopped monitoring the litigation and formally closed its file more than four months prior to the trial.  [SSUMF No. 7-8].  Even if Everest would have normally have been entitled to further status reports, Everest's conduct prevents it from credibly arguing that the Water District's failure to provide it with notice of the trial **prejudiced it**.  Everest had all of the information it needed to step up and defend the Water District or, at the very least, retain counsel to monitor the litigation.  Having failed to do so, Everest cannot contend that it was deceived.

> **C.**    **The Global Agreement Does Not Give Rise To An Inference Of Fraud Or Collusion.**

The California Supreme Court decided almost forty years ago that an insured, in order to protect its interest against an uninsured excess judgment, may assign its right to the third party claimant in return for a covenant not to execute on the judgment.  *Johansen v. California State Auto. Assn. Inter-Ins. Bureau,* 15 Cal.3d 9,

21

20, 22, fn. 13 (1975); *Samson v. Transamerica Ins. Co.,* 30 Cal.3d 220, 240, 241 (1981). Such an assignment of right breaches no duty to the insurer. *Id.* Consequently, the rule in California is that neither an assignment of rights nor a covenant not to execute on the judgment constitutes evidence of fraud or collusion *as a matter of law*. *Samson v. Transamerica Ins. Co.,* 30 Cal.3d 220, 240 (1981)(summary judgment against the insurer on the issue). The simple rationale for this rule is that an insured which is threatened with a potentially uninsured judgment is not required to engage in "financial masochism." *Id.* at 241, *quoting Critz v. Farmers Ins. Group,* 230 Cal.App.2d 788, 801 (1964).

Here, the Water District was faced with enormous exposure to multiple lawsuits for inverse condemnation after their first and second layer insurers (ISOP and Lexington) denied coverage. Everest, with full knowledge that the underlying insurers had denied coverage, never offered to defend or to "drop down" and provide its insured with protection against potential liability. Under *Samson,* the Water District's decision to protect its financial assets by paying $10 million and (partially) assigning its rights in return for a covenant not to execute cannot be evidence of fraud or collusion as a matter of law.

### D.   An Agreement To Maintain The Confidentiality Of Settlement Negotiations Does Not Give Rise To An Inference Of Fraud And Collusion.

Everest contends that Plaintiffs' secrecy and their expressed concern for confidentiality of the settlement negotiations and, ultimately of the Global Agreement, give rise to an inference of fraud and collusion. This contention is frivolous.

The public policy of California is to encourage the settlement of disputes. *Kohn v. Jaymar-Ruby, Inc.,* 23 Cal.App.4th 1530, 1535 (1994). Settlement is encouraged by allowing the parties to communicate freely without fear that their communications may be used against them if settlement negotiations are not

PLAINTIFFS' JOINT MOTION FOR PARTIALSUMMARY JUDGMENT ON EVEREST'S FRAUD AND COLLUSION DEFENSE

successful. *Eisenberg v. Alameda Newspapers, Inc.,* 74 Cal.App.4[th] 1359, 1380-81 (1999). State and federal legislators have given teeth to this public policy by enacting statutes protecting a party's right to confidentiality. Cal.Evid.Code §§ 1119 (mediation privilege) and 1152(a) ("statements made in negotiation"); 28 U.S.C. 652(d) (confidentiality of dispute resolution communications). Many courts have taken the further step of adopting local rules which *prohibit* parties and their attorneys from filing documents which contain confidential settlement negotiations. *E.g.,* U.S District Court for the Central District of California, General Order 11-10 (9).

In light of this authority, Everest's contention that the secrecy of settlement negotiations between the Water District and the Plaintiffs in the *Itani* action should be viewed as evidence of fraud of collusions is simply frivolous.

## VI.   EVEREST WAIVED ANY CLAIM OF SURPRISE OR EXCUSABLE NEGLECT BY FAILING TO INTERVENE IN THE UNDERLYING ACTION AND FILE A MOTION UNDER C.C.P. §473 IN THE ORANGE COUNTY SUPERIOR COURT.

A judgment entered against an insured is binding on the insured's liability carrier where the insurer receives notice of the judgment entered against its insured but fails to assume control and management of the suit by filing a motion to set aside the judgment. *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 884-86 (1978) ("*Clemmer*"). In *Clemmer*, the insurer did not receive notice of a wrongful death action against its insured until the day before the hearing on a default judgment. *Id.* at 884. Within a few weeks thereafter the insurer denied coverage and asked to be advised of the insured's intentions. *Id.* At no time did the insurer seek to have the default judgment set aside on any ground. *Id.* at 885.

In the coverage action that followed the insurer sought to dispute the judgment entered against the insured in the wrongful death action. *Id.* at 884.

Despite the fact that the insurer had no opportunity to intervene into the case prior to the default judgment being entered, the Supreme Court nonetheless found that the insurer had ample opportunity to assume control and management of the suit *after the entry to judgment* by filing a motion to set aside the judgment under C.C.P. § 473. *Id.* at 884-85. The Court found that the insurer's failure to intervene and move to set aside the judgment precluded it from re-litigating the basis for the judgment entered against its insured. *Id.* at 884-86. *See also, Exec. Risk Indem., Inc. v. Jones*, 171 Cal.App.4th 319 (2009) (same rule applies to an excess insurer which has the right, but not the duty to defend).

In the present case:

• Everest was given notice of the *Itani action* long before the trial. [SSUMF No. 2];

• Everest was specifically informed by YLWD of the upcoming trial date in the case. [Exhibit 1092; SSUMF No. 12 ];

• Everest had constructive knowledge of the Stipulation of the parties and the Court's order referring the matter to Justice Trotter for a trial by reference, both of which were part of the public record. [SSUMF 9 ];

• Everest had constructive knowledge of the date, time and location of the trial by reference – all of which were a matter of public record [SSUMF 11-12];

• Everest was provided with a copy of the Judgment [Exhibits 241, 477-32 ].

Like the insurer in *Clemmer,* EVEREST is bound by the judgment in the *Itani Action* due to its tactical decision to remain silent and stand on its claim of non-coverage when it could have sought to protect itself by intervening and seeking the appropriate relief in a timely manner.

///

///

///

# VII.   <u>CONCLUSION</u>

Therefore, based on the evidence presented at the evidentiary hearing on July 29 to Aug. 1, 2014, and the legal arguments above, Plaintiffs jointly request partial summary judgment with respect to Everest's fraud and collusion defense.

Dated: August 22, 2014    Respectfully submitted,

           **MORRIS POLICH & PURDY** LLP


           By: <u>/s/ *Gary A. Hamblet*</u>
              Gary A. Hamblet
              Kevin M. Pollack
           Attorneys for Plaintiff-in-Intervention
           DAVID RAMOCINSKI